AYTAN Y. BELLIN
(admitted *pro hac vice*)
AYTAN.BELLIN@BELLINLAW.COM
BELLIN & ASSOCIATES LLC
85 Miles Avenue
White Plains, New York  10606
Telephone:  (914) 358-5345
Facsimile:   (212) 571-0284

JOSEPH R. COMPOLI, JR.
(admitted *pro hac vice*)
josephcompoli@sbcglobal.net
612 East 185th Street
Cleveland, Ohio  44119
Telephone:  (216) 481-6700
Facsimile:  (216) 481-1047

ROGER FURMAN (STATE BAR NO. 149570)
roger.furman@yahoo.com
7485 Henefer Avenue
Los Angeles, California  90045
Telephone:  (310) 568-0640
Facsimile:  (310) 694-9083

Attorneys for Plaintiffs Michael A.
Vandervort and U.S. Sample Services, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>       vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>              Defendant. | Case No.:  SACV 11-1578-JST(JPRx)<br>Hon. Josephine Staton Tucker<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION,**<br><br>Date:  October 5, 2012<br>Time:  2:30 P.M.<br>Judge: Hon. Josephine Staton Tucker |

1

## **TABLE OF CONTENTS**

2   I.    INTRODUCTION…………………………………………………………1

3   II.   STATEMENT OF FACTS……………...………………………………2

4   III.  THE PROPOSED CLASSES……………………………………...6

5   IV.   THE CLASSES SATISFY ALL OF THE REQUIREMENTS
        FOR CLASS CERTIFICATION..………………………………………6

6

7           A.   Rule 23(a)(1) – Numerosity………………………….....7

8           B.   Rule 23(a)(2) – Commonality – and Rule 23(b)(3) –
                 Common Questions of Law or Fact Predominate…………10

9                (1)    Plaintiff's Showing……………………..........10

10               (2)    Defendant's Contention that the Court must
                        Inquire About Existing Business Relationships
11                      and Express Invitation or Permission…..……...13

12          C.   Rule 23(a)(3) – Typicality…………………………………17

13          D.   Rule 23(a)(4) – Adequacy of Plaintiff
                 as Class Representative…………………………………..……19

14

15          E.   Rule 23(b)(3) – Class Action is Superior to Other
                 Available Methods of Resolving this Controversy…………20

16          F.   Rule 23(g) – The Attorneys Seeking to Represent the
                 Classes Satisfy the Requirements of Rule 23(g)……...……22

17  V.    CONCLUSION…………….…………………………………………..23

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrews v. Bechtel Power Corp.*,
  785 F.2d 124 (1st Cir. 1985) ........................................................... 19

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .......................................................... 10

*Blitz v. Agean, Inc.*,
  677 S.E.2d 1 (N.C. App. 2009) ...................................................... 14

*Brady v. LAC, Inc.*,
  72 F.R.D. 22 (S.D.N.Y. 1976) ........................................................ 20

*CE Design v. Beaty Const., Inc.*,
  2009 WL 192481 ............................................................................ 14

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*,
  387 F. Supp.2d 1084 ...................................................................... 15

*Collins v. Locks & Keys of Woburn, Inc.*,
  2009 TCPA Rep. 1936 (Mass. Super. 2009) ........................... 15, 16

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) .......................................................... 18

*Display South, Inc. v. Graphics House Sports Promotion, Inc.*,
  992 So.2d 510 (La. App. 2008) ...................................................... 14

*Eshagghi v. Hanley Dawson Cadillac Co.*
  214 Ill.App.3d 995, 574 N.E.2d 760 (Ill App. Ct. 1991) ............... 20

*Esplin v. Hirschi*,
  402 F.2d 94 (10th Cir. 1968) .......................................................... 22

*Evans v. United States Pipe & Foundry*,
  696 F.2d 925 (11th Cir. 1983) .......................................................... 7

*Franklin v. City of Chicago*,
  102 F.R.D. 944 (N.D. Ill. 1984) ...................................................... 11

iii

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987)............................................................. 10

*Gene & Gene LLC v. Biopay LLC*,
    541 F.3d 318 (5th Cir. 2008) .............................................................. 14

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969) .................... 21

*G.M. Sign, Inc. v 400 Freight Services, Inc.*,
    2010 TCPA Rep. 1934, *2 (Ill. Cir. 2010) ...................................... 15

*Haywood v. Superior Bank*,
    244 Ill.App.3d 326, 614 N.E.2d 461 (Ill. App. Ct. 1993) .............................. 10

*Heastie v. Community Bank of Greater Peoria*,
    125 F.R.D. 669 (N.D. Ill. 1989) .......................................................... 10

*Hertz v. Canrad Precision Industries, Inc.*,
    No. 69 CIV 174, 1970 U.S. Dist. LEXIS 13024 (S.D.N.Y. 1970) ................ 23

*In re Alcoholic Beverages Litigation*,
    95 F.R.D. 321 (E.D.N.Y. 1982)............................................................ 7

*In re Broadhollow Funding Corp.*,
    66 B.R. 1005 (Bankr. E.D.N.Y. 1986) ................................................ 23

*In re Folding Carton Antitrust Litigation*,
    75 F.R.D. 727 (N.D. Ill. 1977) .................................................... 21, 22

*In re Playmobil Antitrust Litigation*,
    35 F. Supp.2d 231 (E.D.N.Y. 1998)...................................................... 19

*Indiana Bell Tel. Co. v. McCarty*,
    362 F.3d 378 (7th Cir. 2004) .............................................................. 17

*Kavu, Inc. v. Omnipak Corporation*,
    246 F.R.D. 642 (W.D. Wash. 2007)...................................................... 14

*Ketch, Inc. v. Heubel Material Handling Inc.*,
    2011 WL 1807329 (W.D. Okla. 2011)...................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lampkin v. GGH, Inc.*,
   146 P.3d 847 (Okla. Ct. App. 2006) ................................................................. 14

*Landsman & Fink, PC v. Skinder-Strauss Associates,*
   640 F.3d 72 (3rd Cir. 2011), *portion of opinion reinstated en banc*, 2012
   WL 2052685 (3rd Cir. 2012) .............................................................................. 14

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) ......................................................................... 7

*McClendon v. Continental Group, Inc.*,
   113 F.R.D. 39 (D.N.J. 1986) ............................................................................. 10

*Medical West Ballas Pharmacy, Ltd v. Anda, Inc*.,
   2011 WL 1481007 (Mo. Cir. 2011) .................................................................. 15

*Miller v. Painter's Supply Co.*,
   2011 WL 3557018 (Ohio App. 2011) ............................................................... 17

*Mims v. Arrow Financial Services*,
   -- U.S. --, 132 S. Ct. 740 (2012) ...................................................................... 15

*MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*,
   2008 WL 6970582 (Mo. Cir. 2008).............................................................. 15, 16

*Nack v. Walburg*,
   2011 WL 310429 (E.D. Mo. 2011) ................................................................... 17

*Patrykus v. Gomilla*,
   121 F.R.D. 357 (N.D. Ill. 1988) ....................................................................... 11

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ................................................................................ 18

*Robertson v. National Basketball Association*,
   389 F. Supp. 867 (S.D.N.Y. 1975) ................................................................... 19

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) .......................................................................... 19

*Shakhnes ex rel. Shakhnes v. Eggleston*,
   740 F. Supp.2d 602 (S.D.N.Y. 2010) ............................................................... 19

v

*Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-
    90 Transfer Binder], ¶ 94,943, p. 95,254 (N.D. Ill. 1990).

*Talk Am. Inc. v. Mich. Bell Tel. Co.*,
    131 S. Ct. 2254 (2011) ........................................................................ 16

*Talty v. Strada Capital Corp.*,
    2009 WL 3328042 (Ohio C.P. 2009) ............................................... 14

**STATUTES**

47 U.S.C. § 155(c)(1) ............................................................................. 17

47 U.S.C. § 227 ...................................................................................... 16

47 U.S.C. § 227(b) ......................................................................... passim

47 U.S.C. § 227(b)(1)(C)(i) .................................................................. 14

47 U.S.C. § 227(b)(1)(C)(ii) ................................................................. 14

47 U.S.C. § 227(b)(1)(C)(iii) ................................................................ 14

47 U.S.C. § 227(b)(2)(D) ........................................................ 14, 15, 17

47 U.S.C. § 227(b)(3) .................................................................... 15, 16

47 U.S.C. § 227(b)(3)(A) ...................................................................... 15

Cal. Bus. & Professions Code § 17538.43 .......................................... 17

Cal. Bus. & Professions Code § 17538.43(b) ........................................ 1

**OTHER AUTHORITIES**

47 C.F.R. § 0.5(c) ................................................................................... 17

47 C.F.R. § 0.141(a) ............................................................................... 17

47 C.F.R. § 0.361 ................................................................................... 17

47 C.F.R. § 64.1200(3) .......................................................................... 14

47 C.F.R. § 64.1200(a)(3)(i) .................................................................. 14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

47 C.F.R. § 64.1200(a)(3)(ii) ................................................................ 14

47 C.F.R. § 64.1200(a)(3)(iii) ............................................. 14, 15, 16, 17

47 C.F.R. § 64.1200(a)(3)(iv) ................................................ 15, 16, 17

2 *Newberg on Class Actions (3d ed. 1992)* § 4:35 ............................ 22

2 *Newberg on Class Actions (3d ed. 1992)* § 7.22.A ........................... 7

California Rule of Court 977(a) ......................................................... 15

Fed. R. Civ. P. 23 ............................................................. 1, 2, 6, 17, 23

Fed. R. Civ. P. 23(a) ......................................................................... 6

Fed. R. Civ. P. 23(a)(1) ..................................................................... 7

Fed. R. Civ. P. 23(a)(2) ................................................................... 10

Fed. R. Civ. P. 23(a)(3) ................................................................... 17

Fed. R. Civ. P. 23(a)(4) ................................................................... 19

Fed. R. Civ. P. 23(b)(3) .......................................................... 6. 10, 20, 21

Fed. R. Civ. P. 23(b)(3)(C) .............................................................. 21

Fed. R. Civ. P. 23(b)(3)(D) .............................................................. 21

Fed. R. Civ. P. 23 (g) ...................................................................... 22

Fed. R. Civ. P. 23(g)(l) ................................................................... 22

Fed. R. Civ. P. 23(g)(1)(A) ......................................................... 22, 23

Fed. R. Civ. P. 23(g)(l)(A)(ii) .......................................................... 23

Fed. R. Civ. P. 23(g)(l)(A)(iii) ......................................................... 23

Fed. R. Civ. P. 23(g)(1)(A)(iv) ........................................................ 23

Fed. R. Civ. P. 23(g)(1)(A) .............................................................. 22

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*In the Matter of the Junk Fax Prevention Act of 2005*,
      ___ FCCR___, 2012 WL 1548554 (May 2, 2012)................................... 16, 17

*In the Matter of Rules and Regulations Implementing the Telephone
      Consumer Protection Act of 1991*, 21 F.C.C.R. 3787 (2006) .......................... 8

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# I.    <u>INTRODUCTION</u>

This litigation involves Defendant Balboa Capital Corporation's ("Defendant") sending of tens of thousands of illegal fax advertisements to Plaintiffs Michael Vandervort and U.S. Sample Services, Inc. (collectively "Plaintiffs") and thousands of other businesses and individuals across the United States in violation of the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227(b) (the "TCPA") and Cal. Bus. & Professions Code § 17538.43(b). Plaintiff makes this motion to certify three Classes to which Defendant sent those junk faxes.

Each of the three Classes defined in Plaintiffs' Complaint satisfies the requirements for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure.  The Classes satisfy Rule 23's "numerosity" requirement because, the billing records from Profax, Inc., which Defendant admits reflect the number of Defendant's fax advertisements transmitted on Defendants' behalf throughout the United States, show that tens of thousands of such fax advertisements were sent during the period covered by this action.  The Classes satisfy Rule 23's "commonality" requirement because, among other things, one central common issue to all class members of Classes A and B is whether the opt-out notice that Defendant placed in its faxes complies with the requirements imposed by 47 U.S.C. § 227(b) and the regulations thereunder, and another common issue concerning Class C is whether Defendant's conduct violated Cal Bus. & Professions Code § 17538.43(b.)

The Classes also satisfy Rule 23's "typicality" requirement because the claims of the named Plaintiffs in this action – to whom Defendant sent an unsolicited junk fax with a defective opt-out notice – are sufficiently typical of the claims of all class members.  The Classes satisfy Rule 23's "adequacy" requirement because the named Plaintiffs have submitted evidence showing that they have an adequate knowledge of, and activity in this case, and because the

named Plaintiffs do not have any interests antagonistic to those of the Classes. The Classes satisfy Rule 23's "superiority" requirement because, among other things, the relatively small amount recoverable by each potential litigant and the lack of any similar claims currently being asserted by the class members against Defendant makes a class action the only practical means to enforce the junk fax statutes against Defendant.  Finally, because Plaintiff's attorneys have had extensive experience litigating complex class actions on behalf of plaintiffs as well as defendants, they will properly represent the classes.

## II.    STATEMENT OF FACTS

Defendant is in the business, of among other things, providing financing to companies who wish to purchase equipment for their businesses (Byrne: 120:12-121:17; Blundo: 24:23-25:3).[1]  One of the marketing methods used by Defendant from 2008 through February 2011, was advertising by fax (Byrne: 24: 13-16; Dacillo: 78:5-18; Barnett: Exhibits 1, 2, 3, 4).  Defendant retained a fax broadcasting company, Profax, Inc., to transmit Defendant's fax advertisements. *See, e.g.,* Defendant Balboa Capital Corporation's Response to Plaintiffs' First Set of Interrogatories ("First Inter. Resp.") at 12:1-6; Dacillo: 73:19-25, 77:14-78:3; Blundo: 10:14-22).[2]

Jake Dacillo, a Marketing Project Manager for Defendant, began managing Defendant's fax advertising program on or about November of 2008 (Dacillo: 9:10-12, 9:16-10:17).  Dacillo was responsible for writing the copy (other than the purported opt-out notice) and creating the art for the fax advertisements

_____

[1] References in parentheses to last names followed by numbers are to minutes of depositions.  Copies of the pages cited from the depositions of Andrew Barnett, Patrick Eugene Byrne, Erica Inez Blundo, Jake Dacillo, Daniel Horwich, Peter Nguyen, Jered Takeuchi and Michael Vandervort are attached as hereto as Exhibits 3, 4, 5 6, 7, 8 9 and 16, respectively, to the Declaration of Aytan Y. Bellin in Support of Plaintiffs' Motion for Class Certification ("Bellin Decl.").
[2] A Copy of Defendant Balboa Capital Corporation's Response to Plaintiffs' First Set of Interrogatories is attached as Exhibit 2 to the Bellin Decl.

(Dacillo: 10:18-11:1, 14:20-24; Blundo: 10:8-13).

On the bottom of each of the fax advertisements was a purported opt-out notice, the exact wording for which was provided by Profax to Balboa and which was put on each of the fax advertisement by Profax before Profax transmitted it (Dacillo: 14:2-15:9, 64:1-8; First Inter. Resp. at 5:6-20; Barnett: 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2).  The language of the purported opt-out notice stayed the same from 2008 through 2011; In fact, the last time Profax changed the language of the opt-out notice it provided to clients was in 2006, when the FCC changed the rules regarding opt-out notices (Dacillo: 15:10-24; Barnett: 116:24-117:16).

Dacillo decided to whom to send fax particular advertisements (Dacillo: 18:22-24).  There were two groups of persons to whom Balboa sent fax advertisements.  One group was persons who contacted Balboa in response to Balboa's marketing efforts, other than cold calling, and indicated that they wanted to learn more information about Balboa's products or services ("the Marketing Group") (Dacillo: 18:25-19:6).  The other group was persons that Balboa sales representatives cold called and who, during the cold call, indicated (a) an interest in Balboa's products/services; (b) an equipment type that they are looking to finance or an equipment price they had in mind; and (c) a time frame in which they anticipated making the equipment purchase ("the Cold Call Group") (Dacillo: 19:7-22).  The members of both groups were "activated," i.e., marked as active in Balboa's database known as CRM (Dacillo: 38:3-20)

Balboa did not request or obtain permission to send fax advertisements to persons in the Marketing Group, but would send those persons fax advertisements merely because they expressed interest in Balboa's products or services (Dacillo: 21:24-23:13).  Jered Takeuchi and Peter Nguyen, who were two of the three branch Managers who oversaw cold calling for Balboa from 2008 through 2011, were not aware prior the instant lawsuit that Balboa had ever been involved in fax

advertising, and all three branch managers (the third being Dan Horwich) were not aware of any policy in which the cold callers had been instructed to ask for permission for Balboa to send fax advertisements (Takeuchi: 7:16-22; 27:11-15; Nguyen: 21:9-15, 29:17-30:5, 31:16-24; Horwich: 22: 4-11; 38: 11-20, 70: 4-10). However, cold callers were instructed to and sometimes did ask for permission to fax over a credit application to persons they contacted (Nguyen: 32:6-12; Horwich: 69:1-25).

After Dacillo completed creating a fax advertisement, he would cause it to be sent, along with a list of activated persons from the CRM system to Erica Blundo, who also works at Balboa. Blundo would then send the fax advertisement and the list to Profax for transmission of the fax advertisement (Dacillo: 51:17-52:16, 59:2-8, 64:17-22, 84:12-16; Blundo: 10:8-22, 13:11-16, 14:19-21, 15:16-16:9). Blundo would give Profax a time deadline within which to transmit the fax and Profax would usually transmit the fax advertisement within one to five days of receiving it from Blundo (Dacillo: 59:9-61:5, 64:23-65:1; Blundo: 19:3-9, 20:1-7). Blundo worked in the Irvine California office of Balboa and directed Profax, from that California office, to transmit the fax advertisements (Dacillo: 65:2-12; Blundo: 25:4-16; Byrne: 137:2-15).

From 2008 through 2011, Balboa, from California, caused Profax to transmit tens of thousands of fax advertisements on Balboa's behalf, over ninety-five percent of which were transmitted to persons throughout the United States (Dacillo: 68:21-69:25; 77:14-78:5, 82:12-18; 83:8-:86-21, Exhibits A, B, C, H, I, J, K; Byrne: 79:25-80:9, 81:5-23, 83:5-9, 95:24-98:23, 137:2-138:3, Exhibits H, I, J, K; Barnett: 34:13-23, 42:7-44:20, 49:11-50:5, 54:20-55:11, 59:22-60:4, 63:16-65:5, 66:17-67:17, 73:11-74:24, 76:12-17, Exhibits 1, 2, 3, 4).[3]

_____

[3] By a stipulation, attached to the Bellin Decl. as Exhibit 12, Exhibits H, I, J and K to the Dacillo and Byrne depositions, which are copies of Profax bills to Balboa, are deemed identical to Exhibits 1, 2, 3 and 4 to the Barnett deposition,

4

Among the fax advertisements that Balboa, from California, caused to be transmitted by Profax in 2010, was an unsolicited fax advertisement ("the Junk Fax") to Sample's fax machine at Sample's office in Geneva, Ohio concerning Balboa's leasing services (Vandervort: 36:14-17, 37:8-13, 67:4-10, 108:19-22, 114:17-116:5, Exhibits C, D; Declaration of Michael A. Vandervort in Support of Plaintiffs' Motion for Class Certification ("Vandervort Decl.")(attached to the Bellin Decl. as Exhibit 15)  at 1 ¶ 4; First Amended Complaint (attached as Exhibit 1 to the Bellin Decl.), Exhibit 1).  The fax advertisement, which was designed by Dacillo, contained the name "Michael Vandervort" in the "To:" field ,"U.S. Sample Services, Inc." in the "Company:" field under Vandervort's name, and Sample's fax number under that (Vandervort: 21:10-14, 22:8-18, Exhibit C, D; Dacillo: 13:15-14:1, 15:25-16:25, Exhibit A; First Amended Complaint, Exhibit 1).  The purported opt out notice on the bottom of the fax advertisement reads as follows: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN #1461 or call 877-284-7885.  The recipient may make a request to the sender not to send any future faxes and that failure to comply within 30 days is unlawful." (Vandervort: Exhibits C, D; Dacillo: Exhibit A)

Other fax advertisements that Dacillo designed for Balboa that Balboa caused to be transmitted during the period of time covered by this case had the exact same opt-out language, but used other than the pin numbers (Dacillo: 70:1-11, 71:15-72:4, Exhibits B, C, D; Certified Copy of 2010 Complaint in the Cuyahoga County Court of Common Pleas in 2010 (First, Second, Third and Last Fax Advertisements Following Copy of TCPA attached to the Complaint. )).[4]

---

respectively.  All references to Exhibits H, I, J and K of the Dacillo and Byrne Depositions are deemed references to Exhibits 1, 2, 3 and 4 of the Barnett deposition, respectively.

[4] A copy of the Certified Copy of 2010 Complaint in the Cuyahoga County Court of Common Pleas in 2010  is attached to the Bellin Decl. as Exhibit 13.

## III.  __THE PROPOSED CLASSES__

The Classes that Plaintiffs request approval to represent are as follows:

Class A:  All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent an *unsolicited* facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

Class B: All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a *solicited or unsolicited* facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

Class C:  All persons in the United States from October 12, 2008 through November 23, 2011 whom Defendant, from California, sent or caused to be sent an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, without obtaining the persons' express invitation or permission.

## IV.  THE CLASSES SATISFY ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION

The three proposed Classes should be certified under Fed. R. Civ. P. 23 because they meet the requirements of (a) numerosity (23(a)(1)), (b) commonality (23(a)(2)), (c) typicality (23(a)(3)), (d) adequacy of Plaintiff as class representative (23(a)(4)), and (e) superiority (23(b)(3)).[5]  In addition, Plaintiff's attorneys will competently represent the Classes.

---

[5] Fed. R. Civ. P. 23(a) & (b)(3).

## A.     Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[6]  "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient."[7]  It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class."[8]  The court may "make common sense assumptions in order to find support for numerosity."[9]  "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."[10]  In the instant case, Classes A, B and C easily satisfy the numerosity requirement.

As discussed in the Statement of Facts above, the Defendant caused to be sent tens of thousands of fax advertisements throughout the United States that had the identical or substantially similar opt-out notices to those on the fax Defendant sent to Plaintiffs.  Indeed, the Profax bills to Balboa, which Dacillo admitted indicate the number of Balboa's fax advertisements Balboa caused to be sent from 2008 through 2011, reflect the tens of thousands of fax advertisements Profax attempted to transmit and successfully transmitted on behalf of Balboa throughout the United States from 2008 through 2011 (Dacillo: 68:21-69:25; 77:14-78:5, 82:12-18; 83:8-:86-21, Exhibits A, B, C, D, H, I, J, K; Byrne: 79:25-80:9, 81:5-23, 83:5-9, 95:24-98:23, 137:2-138:3, Exhibits H, I, J, K; Barnett:

---

[6] Fed. R. Civ. P. 23(a)(1).

[7] *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).

[8] *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).

[9] *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983).

[10] 2 *Newberg on Class Actions (3d ed. 1992)*, § 7.22.A.

34:13-23, 42:7-44:20, 49:11-50:5, 54:20-55:11, 59:22-60:4, 63:16-65:5, 66:17-67:17, 73:11-74:24, 76:12-17, Exhibits 1, 2, 3, 4).

In addition, the evidence shows that all of the fax advertisements contained the same opt out notice language.  Balboa admitted and Profax confirmed that Balboa obtained the language for its opt out notices from Profax and that Profax actually put that language on Balboa's fax advertisements (Dacillo: 14:2-15:9, 64:1-8; First Inter. Resp. at 5:6-20; Barnett: 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2).   Profax admitted that the last time it had changed the opt out language it provided to customers was when the FCC last issued its regulations regarding the opt-out notice, which was in 2006 (Barnett: 116:24-117:16).  Jake Dacillo admitted that he had never changed the opt-out language, was never told by Profax that the opt-out language had changed and that Profax would not have contacted anyone other than him to discuss such a change (Dacillo: 15:10-24). *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3819-3821 (2006)(reflecting the latest FCC amendments to opt out notice requirements in the Code of Federal Regulations were made in 2006). Moreover, the additional fax advertisements in the record that Dacillo admitted to designing for Balboa during the time period at issue in this case, all contain the identical opt-out notice other than the pin numbers (Dacillo: 70:1-11, 71:15-72:4, Exhibits B, C, D; Certified Copy of 2010 Complaint in in the Cuyahoga County Court of Common Pleas in 2010 (First, Second, Third and Last Fax Advertisements Following Copy of TCPA attached to the Complaint. )).

As is apparent from the above two paragraphs, numerosity in Class B is clearly met, since Balboa was responsible for the transmission of tens of thousands of fax advertisements, whether solicited or not, that contained the same or substantially similar opt-out notice.

The numerosity requirement is also met as to classes A and C, which concern Balboa causing the transmission of unsolicited faxes.  As discussed in detail in the Statement of Facts above, Balboa neither requested nor obtained permission to send fax advertisements to  persons in the Marketing Group, which was one of two groups to whom Balboa cause the transmission of fax advertisements (Dacillo: 21:24-23:13).

Although there is no specific statement in the record as to the number of persons who were in the Marketing Group, it is a reasonable assumption that there are well over 40 persons in that group.  That is because Balboa caused to be transmitted tens of thousands of fax advertisements during the period at issue in this case, and the Marketing Group was one of only two groups to whom Balboa caused to be transmitted fax advertisements.

In addition, the evidence shows that Balboa never requested permission from persons in the Cold Call Group to send them fax advertisements.  After all, none of the branch managers for Balboa's three branches from 2008 through 2011 were aware of any policy in which the cold callers had been instructed to ask for such permission from persons in the Cold Call Group.  This is in stark contrast to the recollections of two of the three branch managers that cold callers were instructed to and sometimes did ask for permission to fax over a credit application to persons in the Cold Call Group,  Moreover, two of the three branch Managers were not even aware, prior the instant lawsuit, that Balboa had ever been involved in fax advertising.  Accordingly, it is plain that Balboa's cold callers never requested permission form persons in the cold call group to send them fax advertisements.

Although there is no specific statement in the record as to the number of persons who were in the Cold Call Group, it is a reasonable assumption that there are well over 40 persons in that group.  That is because Balboa caused to be transmitted tens of thousands of fax advertisements during the period at issue in

9

this case, and the Cold Call Group was one of only two groups to whom Balboa caused to be transmitted fax advertisements.

Finally, as discussed in the Statement of Facts, Erica Blundo was the person who, from California, sent Profax the fax advertisements and the fax lists and instructed Profax as to the dates by which the transmit the fax advertisements. Accordingly, it is clear that Class , which requires that the fax advertisement transmissions be caused form the State of California, satisfied the numerosity requirement as well.

**B.      Rule 23(a)(2) – Commonality – and Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

**(1)      Plaintiffs' Showing**

Rules 23(a)(2) requires that the court determine whether there are questions of law or fact common to the class.  Rule 23(b)(3) similarly requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation.[11]  Similarly, common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.[12]  The "common questions" may be the existence and legality of a standard business practice.[13]  Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of

---

[11] *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).

[12] *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder], ¶ 94,943, p. 95,254 (N.D. Ill. 1990).

[13] *Haywood v. Superior Bank*, 244 Ill.App.3d 326, 614 N.E.2d 461, 464 (Ill. App. Ct. 1993); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 774 (N.D. Ill. 1989).

operative facts is typically presented, and the commonality requirement . . . is usually met."[14]

In the instant case, there are questions of law and fact common to Class A that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendant's conduct of sending and/or causing to be sent to Plaintiffs and the members of Class A fax advertisements without Plaintiffs' and members of Class A's express invitation or permission, which advertised the commercial availability or quality of any property, goods, or services and which contained an opt-out notice that was substantially similar or identical to the opt-out notice contained in the Junk Fax, by facsimile, computer or other device violated 47 U.S.C. § 227(b) and/or the regulations thereunder;

(b) whether the purported opt-out notices that in Defendant's fax advertisements comport with the requirements of 47 U.S.C. § 227(b)(2)(D) and/or 47 C.F.R. § 64.1200(a)(3)(iii)

(c) Whether Defendant's conduct of sending and/or causing to be sent to Plaintiffs and the members of Class A unsolicited fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which contained an opt-out notice that was substantially similar or identical to the opt-out notice contained in the Junk Fax, by facsimile, computer or other device, was knowing or willful;

(d) Whether Plaintiffs and the members of Class A are entitled to statutory damages, triple damages and costs pursuant to 47 U.S.C. § 227(b)(3) for Defendant's acts and conduct; and

---

[14] *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

(e) Whether Plaintiffs and the members of Class A are entitled to a permanent injunction 47 U.S.C. § 227(b) enjoining Defendant from continuing to engage in its unlawful conduct.

There are parallel questions of law and fact common to Class B that predominate over any questions affecting only individual class members.  The predominant common questions include, but are not limited to:

(a) Whether Defendant's conduct of sending and/or causing to be sent to Plaintiffs and the members of Class B fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which contained an opt-out notice that was substantially similar to the opt-out notice contained in the Junk Fax, by facsimile, computer or other device violated 47 U.S.C. § 227(b);

(b) whether the purported opt-out notices that in Defendant's fax advertisements comport with the requirements of 47 U.S.C. § 227(b)(2)(D) and/or 47 C.F.R. § 64.1200(a)(3)(iii)

(c) Whether Defendant's conduct of sending and/or causing to be sent to Plaintiffs and the members of Class B fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which contained an opt-out notice that was substantially similar or identical to the opt-out notice contained in the fax attached hereto as exhibit A, by facsimile, computer or other device, was knowing or willful;

(d) Whether Plaintiffs and the members of Class B are entitled to statutory damages, triple damages and costs 47 U.S.C. § 227(b)(3) for Defendant's acts and conduct; and

(e) Whether Plaintiffs and members of Class B are entitled to a permanent injunction 47 U.S.C. § 227(b) enjoining Defendant from continuing to engage in its unlawful conduct.

There are similar questions of law and fact common to Class C that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendant's conduct of sending and/or causing to be sent to Plaintiffs and the members of Class C fax advertisements, without Plaintiffs' and Class C's express invitation or permission, which advertised the commercial availability or quality of any property, goods, or services, by facsimile, computer or other device violated Conn. Gen. Stat. Ann. § 52-570c(a);

(b) Whether Plaintiffs and the members of Class C are entitled to statutory damages pursuant to Conn. Gen. Stat. Ann. § 52-570c(d) for Defendant's acts and conduct; and

(c) Whether Plaintiffs and members of Class C are entitled to a permanent injunction pursuant to Conn. Gen. Stat. Ann. § 52-570c(d) enjoining Defendant from continuing to engage in its unlawful conduct.

### (2)   Defendant's Contention that the Court must Inquire About Existing Business Relationships and Express Invitation or Permission

To challenge commonality, Defendant will likely contend that the Court will have to engage in an individualized inquiry as to whether each class member in Classes A and B had an existing business relationship with Defendant or whether each class member in Classes A and C had provided express invitation or permission to Defendant authorizing the transmission of facsimile advertisements. That argument is unavailing for a variety reasons.

With respect to all Classes A and C, numerous courts have held that the defense of prior express invitation or permission, i.e., consent, is insufficient to defeat class certification.  *See*, *e.g.*, *Landsman & Fink, PC v. Skinder-Strauss Associates,* 640 F.3d 72, 95 (3rd Cir. 2011), *portion of opinion reinstated en banc*, 2012 WL 2052685, *1 (3rd Cir. 2012); *CE Design v. Beaty Const., Inc.,* 2009 WL 192481 **8-9 (N.D. Ill. 2009) (citing cases); *Display South, Inc. v. Graphics House Sports Promotion, Inc.*, 992 So.2d 510, 520-21 (La. App. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847, 855 (Okla. Ct. App. 2006).

In addition, numerous other courts have ruled that common proof applicable to the class can defeat such a defense.  *See, e.g*, *Landsman, supra*, 640 F.3d at 94 , *portion of opinion reinstated en banc*, 2012 WL 2052685, *1 (3rd Cir. 2012);  *Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642, 647 (W.D. Wash. 2007); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 327-328 (5th Cir. 2008); *Blitz v. Agean, Inc.*, 677 S.E.2d 1, 9-10 (N.C. App. 2009).  In the instant case, as discussed in IV(A) above Balboa admits that it did not request or obtain permission or invitations to send fax advertisements to the Marketing Group, and strong circumstantial evidence proves that Balboa did not obtain permission or invitation to send fax advertisement to the cold call group.  This common proof clearly defeats any defense of prior express invitation or permission.

Moreover, with respect to Class A specifically, if this Court determines that the purported opt-out notices that appear in Defendant's unsolicited fax advertisements do not comport with the requirements of 47 U.S.C. § 227(b)(2)(D) and/or 47 C.F.R. § 64.1200(a)(3)(iii), Defendant will have violated the statute and 47 C.F.R. § 64.1200(3) *irrespective of whether or not it had an existing business relationship* with the person to who it caused to be sent those advertisements.  *See* 47 U.S.C. § 227(b)(1)(C)(i), (b)(1)(c)(ii), (b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(3)(i), (a)(3)(ii), (a)(3)(iii ); *Talty v. Strada Capital Corp.*, 2009 WL 3328042, *1 (Ohio C.P. 2009) (unsolicited fax advertisements without opt-out

notice as required by 47 U.S.C. § 227(b)(2)(D) actionable under the TCPA under 47 U.S.C. § 227(b)(3)); *G.M. Sign, Inc. v 400 Freight Services, Inc.*, 2010 TCPA Rep. 1934, *2 (Ill. Cir. 2010) (attached as Exhibit 10 to the Bellin Decl.[15]); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 at 1-2 (Mass. Super. 2009) (defense of prior existing business relationship are inapplicable when the faxes at issue do not contain the opt-out notice required by § 227(b)(2)(D) (attached as Exh. 11 to the Bellin Decl.).

Similarly, the defenses of explicit invitation or permission, i.e., consent, and existing business relationship are simply not applicable to Class B, that complains simply of receiving fax advertisements that do not contain the opt out notice required by 47 C.F.R. § 64.1200(a)(3)(iii). Solicited fax advertisements sent on or after August 1, 2006 that do not contain the opt-out notice described in 47 C.F.R. § 64.1200(a)(3)(iii) violate 47 C.F.R. § 64.1200(a)(3)(iv) – and that violation is actionable pursuant to 47 U.S.C. § 227(b)(3). *See* 47 U.S.C. § 227(b)(3)(A) (a private right of action may be brought for, among other things, "a violation . . . of the regulations prescribed under [47 U.S.C. § 227(b)]"); *Mims v. Arrow Financial Services*, -- U.S. --, 132 S. Ct. 740, 744, 746 (2012) (recognizing that Congress explicitly authorized a private right of action for violations of the regulations promulgated by the FCC pursuant to the TCPA); *Ketch, Inc. v. Heubel Material Handling Inc.,* 2011 WL 1807329, *1 (W.D. Okla. 2011) (fax advertisements are actionable under the TCPA, whether or not solicited, if the fax advertisements do not contain the opt-out notice required by the 47 U.S.C. § 227(b) and the regulations promulgated thereunder); *Medical West Ballas Pharmacy, Ltd v. Anda, Inc.*, 2011 WL 1481007 (Mo. Cir. 2011) (same); *MSG*

---

[15] TCPA Reports is a topical reporter available free to judges and their clerks at www.tcpalaw.com.  It is proper to cite such unpublished state court decisions in federal court.  *E.g., Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp.2d 1084, 1103 n.7 (N.D. Cal. 2005) ("Although California Rule of Court 977(a) prohibits citation or reliance by a court of an unpublished California Court of Appeal decision.  However, the rule is not binding in the federal courts.") (citations omitted).

1   *Jewelers, Inc. v. C & C Quality Printing, Inc.*, 2008 WL 6970582 (Mo. Cir. 2008)

2   (failure by the defendant to include opt-out notice required by 47 C.F.R. §§

3   64.1200(a)(3)(iii) on fax advertisement sent to a person who had previously

4   consented to receiving fax advertisements from the defendant, was actionable

5   under the TCPA under 47 C.F.R. § 64.1200(a)(3)(iv) and 47 U.S.C. § 227(b)(3));

6   *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 at 1-2 (Mass.

7   Super. 2009) (defenses of consent and prior existing business relationship are

8   inapplicable when the faxes at issue do not contain the opt-out notices of required

9   by 47 C.F.R. § 64.1200(a)(3)(iii)); FCC Amicus Brief in *Nack v. Walburg*, No.

10   11-1460 dated February 24, 2012 ("FCC Amicus") (same), attached to the Bellin

11   Decl. as Exhibit 17; *Talk Am. Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2261

12   (2011)(courts must defer to an agency's interpretation of its own regulations in an

13   amicus brief).[16]

14       Indeed, *In the Matter of the Junk Fax Prevention Act of 2005*, ___

15   FCCR___, 2012 WL 1548554 (May 2, 2012), the FCC once again confirmed that

16   a private cause of action exists under the TCPA against persons who send

17   solicited fax advertisements without the proper opt-out notice.  In *Matter of Junk*

18   *Fax*, a party petitioned the FCC to issue a declaratory judgment concerning the

19   statutory basis for 47 C.F.R. § 64.1200(a)(3)(iv).  *See Id.* at *1, para. 4. The FCC

20   dismissed the petition for a variety of reasons not germane to the instant case.  *Id.*

21   at *2, paras. 5-6.  However, the FCC went on to hold that it had the authority to

22   issue 47 C.F.R. § 64.1200(a)(3)(iv) under that portion of 47 U.S.C. § 227 which

23   details the requirements of the opt-out notice, which is 47 U.S.C. § 227(b). *Id.* at

24   *2, para. 7. By confirming that 47 C.F.R. § 64.1200(a)(3)(iv) was promulgated

25   pursuant to 47 U.S.C. § 227(b), the FCC made clear that there is a private cause

26   of action for the violation of that regulation, because, as noted above, 47 U.S.C. §

27

28   [16] *See MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*, 2008 WL 6970582 (Mo. Cir. 2008) (same); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 (Mass. Super. July 3, 2009) (same).

227(b)(3) specifically states that there is a private cause of action for violations of the regulations promulgated pursuant to 47 U.S.C. § 227(b).[17]

To the extent that the district court opinion in *Nack v. Walburg*, 2011 WL 310429 (E.D. Mo. 2011) or the Ohio court's opinion in *Miller v. Painter's Supply Co.*, 2011 WL 3557018 (Ohio App. 2011) held the contrary, those holdings are no longer good law (which they never were), in light of the FCC's interpretation of 47 C.F.R. § 64.1200(a)(3)(iv) in its February 24, 2012 amicus brief and the FCC's Order in *In The Matter of the Junk Fax, Prevention Act of 2005*, ___ FCCR___, 2012 WL 1548554 (May 2, 2012).  In fact, the FCC submitted the amicus brief for the very purpose of urging the Eighth Circuit to reverse the *Nack* district court opinion.  *See* FCC Amicus at 11, 24.

Accordingly, whether the faxes at issue are solicited or unsolicited makes no difference to Class B.  In both situations, faxes that do not contain the opt-out notice described in 47 U.S.C. 227(b)(2)(D) and/or 47 C.F.R. § 64.1200(a)(3)(iii) violate the TCPA.  *See*, *e.g.*, *Collins, supra*, 2009 TCPA Rep. 1936 at 1-2.

Further, the Defense of existing business relationship is not applicable to Class C, since Cal. Bus. & Professions Code § 17538.43 does not provide for such a defense.

**C.	Rule 23(a)(3) – Typicality**

Rule 23 requires that the claims of the named Plaintiff to be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or
> practice or course of conduct that gives rise to the claims of other
> class members and his or her claims are based on the same legal

---

[17] The fact that *In The Matter of the Junk Fax, Prevention Act of 2005* was issued by the Acting Chief of the FCC's Consumer and Governmental Affairs Bureau ("the Bureau"), rather than the FCC as a whole, is also irrelevant.  That is because the FCC has delegated authority to the Bureau to adjudicate in this area.  *See*, *e.g.*, 47 U.S.C. § 155(c)(1); 47 C.F.R. §§ 0.5(c), 0.141(a). 0.361 *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004).

theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named Plaintiff and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.[18]

This inquiry "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as claims of the class at large."[19]

In this case, typicality is inherent in the way Plaintiff has defined Class A. By definition, each of Class A's members has been subjected to the same practice as the named Plaintiffs – namely they are each persons to whom Defendant sent an unsolicited fax advertisement containing a purported opt-out notice substantially similar or identical to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

Similarly, typicality is inherent in Class B's definition. By definition, each of Class B's members has been subjected to the same practice as the named Plaintiffs, namely they are each persons to whom Defendant sent a fax advertisement containing a purported opt-out notice substantially similar or identical to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

Similarly, typicality is inherent in Class C's definition.  By definition, each of Class C's members has been subjected to the same practice as the named Plaintiffs, namely they are each persons to whom Defendant, from California sent or caused to be sent, an unsolicited fax advertisement.

---

[18] *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

[19] *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 597 (7th Cir. 1993).

**D.      Rule 23(a)(4) – Adequacy of Plaintiff as Class Representative**

Determining the adequacy of a proposed class plaintiff's representation of a class involves two factors: (a) whether the proposed representative is credible and has an adequate knowledge of and activity in the case;[20] and (b) the plaintiff must not have interests antagonistic to those of the class.[21]

At this juncture, it is clear that Plaintiffs are credible and have an adequate knowledge of and activity in this case.  (*See* Vandervort Decl. ¶ 5; Declaration of Joseph Compoli, Jr. (attached to the Bellin Decl. as Exhibit 14):  ¶ 4).  Plaintiffs sought out legal representation, obtained experienced counsel in this matter, and have been actively involved in discussing the facts underlying this case with counsel and in reviewing the Complaint and First Amended Complaint.  (*See* Vandervort Decl. ¶ 5; Compoli Decl., ¶ 4.  Plaintiffs have provided counsel with materials supporting Plaintiffs' claims and have discussed strategy with counsel concerning this case.  (*See* Vandervort Decl. ¶ 5; Compoli Decl., ¶ 4).

Moreover, Plaintiffs' interests are not in any way antagonistic to, or in conflict with, those of the Classes' members.  Plaintiffs' declaration indicates that Plaintiff has no known conflicts with any of the class members and have no ownership interests in Defendant.  (See Vandervort Decl. ¶ 6).  Given the identical claims of Plaintiffs and the members of the Classes, Plaintiffs' interests

---

[20] See *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp.2d 602, 626-27 (S.D.N.Y. 2010) (*citing Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).

[21] *Andrews v. Bechtel Power Corp.*, 785 F.2d 124, 130 (1st Cir. 1985); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *In re Playmobil Antitrust Litigation*, 35 F. Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'") (*quoting Guarantee Ins. Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D. Ill. 1972)).  Furthermore, such conflict must be real and not speculative.  *Robertson v. National Basketball Association*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975).

19

1  and those of the Classes are one and the same.  In sum, Plaintiffs are adequate

2  class representative.

3  **E.**  **Rule 23(b)(3) – Class Action is Superior to Other Available**

4  **Methods of Resolving this Controversy**

5  Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is

6  superior to other available methods for the fair and efficient adjudication of the

7  controversy, which includes:

8  (A) the interest of members of the class in individually controlling

9  the prosecution or defense of separate actions; (B) the extent and

10  nature of any litigation concerning the controversy already

11  commenced by or against members of the class; (C) the desirability

12  or undesirability or concentrating the litigation of the claims in the

13  particular forum; (D) the difficulties likely to be encountered in the

14  management of the class action.

15  A class action is clearly the superior method for fairly and efficiently

16  adjudicating this controversy.  The interest of class members in individually

17  controlling the prosecution of separate claims is small because, generally, class

18  members are unaware of their rights and have damages such that it is not feasible

19  for them to bring individual actions. "[O]ne of the primary functions of the class

20  suit is to provide a device for vindicating claims which, taken individually, are

21  too small to justify legal action but which are of significant size if taken as a

22  group."[22]  Moreover,

23  [a] class action permits a large group of claimants to have their

24  claims adjudicated in a single lawsuit. This is particularly

25  _____

26  [22] *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976); *Eshagghi v. Hanley*
*Dawson Cadillac Co.* 214 Ill.App.3d 995, 1004, 574 N.E.2d 760, 766 (Ill App.
27  Ct. 1991) ("The alternatives to the class action-private suits or governmental
actions-have been so often found wanting in controlling consumer frauds that not
28  even the ardent critics of class actions seriously contend that they are truly
effective").

1   important where, as here, a large number of small and medium

2   sized claimants may be involved. In light of the awesome costs of

3   discovery and trial, many of them would not be able to secure

4   relief if class certification were denied . . . .[23]

5    Because Plaintiffs know of only approximately 8 class members who have

6  brought similar claims in one action that has been settled, and no other claims

7  have been filed with this Court (*see* Vandervort Decl., ¶ 7; Compoli Decl., ¶ 5),

8  the second and third factors in Rule 23(b)(3) – pre-existing litigation by or against

9  class members, and whether litigation of all claims should be concentrated in one

10  forum – do not come into play.  Moreover, even if the recipients of Defendant's

11  fax advertisements realize that they have claims against Defendant, should this

12  class action does not proceed the result could well be a "multiplicity and

13  scattering of suits with the inefficient administration of litigation which follows in

14  its wake."[24]  It would be more desirable to have all of the claims concentrated in a

15  single forum.[25]

16    The final factor in considering predominance and superiority is whether

17  there would be difficulty managing the class.[26]  Though the Classes appear to

18  number in the tens of thousands, Plaintiffs' attorneys' experience in suits of this

19  kind speaks to their ability to manage the Classes.  (*See* Section IV(F), *infra*).  To

20  the extent that this is considered a management difficulty, "[i]t should be kept in

21  mind that management difficulties, like other superiority factors, must be judged

22  in comparison to the fairness and efficiency of other available methods for

23  adjudicating the controversy.  Because [ascertainment of class members is]

24

25  [23] *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977)
26  (citations omitted).

[24] *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395
27  U.S. 977 (1969).

28  [25] Rule 23(b)(3)(C).

[26] Rule 23(b)(3)(D).

unique to class actions, any management difficulties in connection with class notice must be viewed not in isolation, but rather from the perspective of whether such [superiority problems] negate the advantages of unitary adjudication from a class action."[27]

The only real alternative to a class action in this case involving small claims by thousands of Junk Fax recipients is for there to be no adjudication of these claims whatsoever. It is not just the superior means of adjudication, but practically, it is the only means. Indeed, the Court should resolve any doubt regarding the propriety of class certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing.[28]

## F.  Rule 23(g) – The Attorneys Seeking to Represent the Classes Satisfy the Requirements of Rule 23(g)

If the Court certifies the proposed Classes, the Court must also appoint counsel pursuant to Rule 23(g)(l). In pertinent part, the rule requires consideration of (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)

In this case, attorney Compoli has discussed the case with Plaintiffs and attorney's Bellin and Furman have researched possible claims by Plaintiffs and the Classes. (*See* Compoli Decl., ¶ 4; Bellin Decl., ¶ 7). Attorneys Bellin and Furman have drafted the Complaint and First Amended Complaint, Attorney Bellin drafted the instant motion for class certification, Attorneys Bellin and

---

[27] 2 *Newberg on Class Actions, supra*, § 4:35 (discussing difficulties in notifying the class members as a potential management difficulty).

[28] *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); *accord, In re Folding Cartons Antitrust Litigation, supra*, 75 F.R.D. at 732.

22

Furman drafted the various discovery requests, Attorneys Bellin, Furman and Compoli drafted discovery responses, attorney Bellin conducted 6 depositions, attorney Furman conducted one deposition and attorney Compoli  defended Plaintiffs' deposition.  (*See* Bellin Decl., ¶ 7; Compoli Decl., ¶ 4).  Thus, attorneys Bellin, Furman and Compoli have already done significant work and committed substantial time and resources in identifying and investigating potential claims in this action and in litigating this action.  Accordingly, attorneys Bellin, Furman and Compoli satisfy the requirements of Rule  23(G)(1)(A) and Rule 23(G)(1)(A)(iv).

In addition, Attorneys Bellin and Furman have considerable experience in complex litigation and in representing plaintiffs and defendants in class actions in federal courts.  (*See* Bellin Decl., ¶¶ 4-8).  And, attorneys Bellin, Furman and Compoli have significant experience in TCPA litigation and do not have any interests which might cause them to not vigorously pursue this action.  (*See* Bellin Decl. ¶¶ 4-5, 8]; Compoli Decl. ¶¶ 3, 6).  Accordingly, attorneys Bellin, Furman and Compoli satisfy the requirements of Rule 23(g)(l)(A)(ii) and (A)(iii), in that they have the ability to prosecute a class action and have a grasp of the applicable law.

Finally, because there is a general presumption of competence for all members of the bar in good standing unless evidence to the contrary is adduced,[29] it is plain that Attorneys Bellin, Furman and Compoli are more than adequate to be class counsel in this case.  Accordingly, Attorneys Bellin, Furman and Compoli merit the Court's appointment as the Classes' counsel in this matter.

## V.   **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this action be certified as a class action under Rule 23 using the Class definitions proposed

---

[29] *Hertz v. Canrad Precision Industries, Inc.*, No. 69 CIV 174, 1970 U.S. Dist. LEXIS 13024, *3 (S.D.N.Y. 1970); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr. E.D.N.Y. 1986).

above, that Aytan Y. Bellin of Bellin & Associates LLC. Roger Furman and Joseph Compoli be appointed as counsel for the Classes, and that Plaintiffs be appointed the representatives of the Classes.

Dated:  September 7, 2012

/s/ Aytan Y. Bellin
AYTAN Y. BELLIN, ESQ.
BELLIN & ASSOCIATES

ROGER FURMAN, ESQ.

JOSEPH R. COMPOLI, JR., ESQ.

Attorneys for plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc., on behalf of themselves and all others similarly situated