O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>Defendant. | CASE NO. 8:11-cv-1578-JST (JPRx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Docs. 40, 41, 42)** |

Plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc., (collectively, "Plaintiffs") filed their First Amended Complaint on November 23, 2011, asserting claims for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and California Business & Professions Code Section 17538.43. (First Am. Compl., Doc. 18.) On September 8, 2012, Plaintiffs filed a Motion for Class Certification. (Mot., Doc. 42.) Defendant Balboa Capital Corporation filed its Opposition on September 19, 2012. (Opp'n, Doc. 45.) Plaintiffs filed a Reply in support of the Motion for Class Certification on September 26, 2012. (Reply, Doc. 47.)

Having read the papers, reviewed the admissible evidence, and considered the arguments of Counsel at the hearing held on October 5, 2012, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Class Certification.[1]

## I. BACKGROUND

Defendant Balboa Capital Corporation ("Defendant" or "Balboa") provides equipment leasing and financing to its customers. (Mot. at 2.) Defendant employs a variety of marketing techniques, including—from 2008 through February 2011—fax marketing. (*Id.*) It is undisputed that Defendant no longer uses fax marketing. (*See id.*; Opp'n at 3.)

Defendant tracks its marketing activities in a database called CRM. If a contact returned a postcard or requested more information, that prospect would be assigned to a sales representative who would then make direct contact. (Opp'n at 4.) Contacts who had expressed an interest in Defendant's products or services

---

[1] In deciding this Motion, the Court did not consider inadmissible evidence. Specifically, the Court did not consider Exhibit 10 to the September 19, 2012, Barnes Declaration (Doc. 46-10) Defendant submitted in opposition to Plaintiffs' Motion.

through other means were also activated in CRM, as were customers who had previously engaged in transactions with Defendant. (*Id.*) Defendant also "cold called" contacts. (*Id.*) If one of those contacts expressed interest in learning more about Defendant's services, that contact would be activated in CRM. (*Id.*) After a fax advertisement was prepared, one of Defendant's employees—Jake Dacillo—prepared a list of activated contacts from CRM. (Mot. at 3-4.) This list comprised the recipient list for that new fax. (*Id.* at 4.) Defendant did not have a written policy requiring its account representatives to obtain explicit permission prior to sending faxes. (Opp'n at 6.)

While it engaged in fax marketing, Defendant employed ProFax, Inc. ("ProFax"), a fax-communication service in New York, to transmit the faxes and provide the opt-out language. (*Id.* at 4-5.) Aside from the opt-out language, Defendant prepared the content of the faxes. (Mot. at 2.) On or about May 21, 2010, Defendant sent Plaintiffs a single, unsolicited fax. (*Id.* at 5; Opp'n at 5.) Defendant had an existing business relationship with Plaintiffs prior to sending the fax. (Opp'n at 5.) After receiving the fax, Plaintiffs opted out of receiving any future faxes from Defendant by acting on the opt-out mechanism included in the fax. (*Id.* at 5-6.)

Plaintiffs allege that the opt-out notice contained in the fax they received did not satisfy the statutory and regulatory requirements by, *inter alia*, (1) failing to specify a fax number for faxing of opt-out requests, (2) lacking a provision stating that persons who previously consented to receiving faxes may in the future opt-out of such requests, and (3) lacking a provision informing recipients that they must include their own fax numbers in any opt-out request.[2] (Reply at 7-8.)

---

[2] The requirements for the opt-out notice are located at 47 C.F.R. § 64.1200(a)(4)(iii).

On the basis of the single 2010 fax, Plaintiffs seek certification of the following two classes for a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227:

> Class A
> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent an *unsolicited* facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.
>
> Class B
> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a *solicited or unsolicited* facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

(Mot. at 6.)

Plaintiffs seek certification of the following class for a violation of California Business & Professions Code Section 17538.43:

> Class C
> All persons in the United States from October 12, 2008 through November 23, 2011 whom Defendant, from California, sent or caused to be sent an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, without obtaining the persons' express invitation or permission.

(*Id.*)

## II. ASCERTAINABILITY

### A. Legal Standard

"Before a class may be certified, it is axiomatic that such a class must be ascertainable." *Peel v. BrooksAmerica Mortg. Corp.*, No. 8:11-cv-0079-JST (RNBx), 2012 WL 3808591, at *2 (C.D. Cal. Aug. 30, 2012). Hence, a class cannot be certified if a plaintiff has not "establish[ed] an objective way to determine" who is a class member. *Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (affirming denial of class certification for lack of ascertainability). "Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Espinoza v. 953 Assoc. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). A class must be ascertainable without inquiring into the merits of the case. *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008). Thus, some courts have held that a TCPA class is "indefinite and inappropriate because it requires the court to delve into issues of liability." *Id.*

### B. Discussion

#### 1. Class B

We begin with Class B, as it includes recipients of both solicited and unsolicited faxes. First, because Class B includes *all* recipients of fax advertisements, there is no need to determine whether a fax was solicited or unsolicited to determine membership in the class. Rather, classwide proof that each fax contained the same opt-out notice is sufficient for ascertainability. Second, the CRM system contains the entire universe of persons to whom a fax could have been sent. (*See* Barnes Decl. Ex. 4 (Dacillo Dep.) at 50:6-12, Doc. 46-4.) This case is therefore unlike other cases where no such universe existed. *Cf. Saf-T-Gard*, 251 F.R.D. at 315 ("there appears to be *no* list of numbers from which the parties (or the court) may reasonably assume class members could be

1 identified, even if the class members were only a subset of that universal list");
2 *Levitt v. Fax.com*, No. WMN-05-949, 2007 WL 3169078, at *4-*5 (D. Md. May
3 25, 2007). Plaintiffs have demonstrated ascertainability because the Class B
4 definition describes "a set of common characteristics sufficient to allow a
5 prospective plaintiff to identify himself or herself as having a right to recover
6 based on the description." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593
7 (C.D. Cal. 2008) (internal citation and quotation marks omitted); 1 Newberg on
8 Class Actions § 3:3 (5th ed. 2011) (same). Specifically, the common set of
9 characteristics are (1) whether a fax was sent, and (2) whether it contained an opt-
10 out identical to or substantially similar to Exhibit 1 to the Complaint.

### 2. Class A

Plaintiffs' description of Class A is co-extensive with that of Class B, with the sole exception that Class A includes only recipients of unsolicited fax advertisements. (*See* Mot. at 6.) Therefore, the Class A description raises the question of how to determine membership in the class. Defendant argues that the Court will have to inquire into whether each individual fax recipient consented to receiving the fax. (Opp'n at 8.) Plaintiffs argue that the class is ascertainable without individualized inquiry because the CRM database did not contain any fax recipients who consented to receiving faxes. This is a significant dispute because Class A cannot be certified if Plaintiffs have failed to "establish an objective way to determine" who is a class member. *Williams*, 468 F. App'x at 770; *see also Saf-T-Gard*, 251 F.R.D. at 314.

The evidence reflects that whether a fax recipient did or did not consent to fax advertising requires an individual inquiry. Defendant introduced evidence that at least some recipients of faxes who were cold called consented to receiving the fax advertisements. (*See* Barnes Decl. Ex. 4 (Dacillo Dep.) at 21:18-23.) Therefore, those who are in the CRM system because they received cold calls

1  cannot be included in Class A because doing so would require an individualized
2  inquiry to determine whether each member consented.  *See Gene and Gene LLC v.*
3  *BioPay, LLC*, 541 F.3d 318 (5th Cir. 2008); *see also Wal-Mart Stores, Inc. v.*
4  *Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2561 (2011) (holding that defendant would
5  "have the right to raise any individual affirmative defenses it may have").
6  Essentially, the Court would have to hold "mini-trials" to determine who received
7  an unsolicited fax advertisement and is therefore a class member.  *Cf.*
8  *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229-230 (S.D. Fla.
9  2002).

10  The evidence also reflects that nearly every person or entity in CRM who
11 was not put in the system through cold calling had an established business
12 relationship with Defendant.  An "established business relationship" for purposes
13 of sending a fax advertisement under the TCPA is defined as

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(6).

When asked how he selected fax recipients, Jake Dacillo testified that he selected, in part, "anybody or any business that has responded to any of our marketing efforts positively, meaning they submitted some form of communication to us saying that, 'We want more information.  We want to learn more about your product or service.'"  (Bellin Decl. Ex. 6 (Dacillo Dep.) at 18:22-19:6, Doc. 42-20.)  Yet the mere *sending* of an unsolicited fax advertisement to one with an established business relationship, without more, is not actionable under the TCPA.  *See* 47 U.S.C. 227(b)(1)(C)(i).  In other words, the claims of

7

many Class A members ultimately reduce to the opt-out-notice theory, which is the theory already encompassed by Class B.[3]

Thus, unlike Class B, there is no way to define Class A with "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description," *Parkinson*, 258 F.R.D. at 593 (internal citation and quotation marks omitted), because such a class definition would require a prospective class member to identify himself or herself as (1) being included in CRM as the result of a cold call, (2) having not consented to receiving fax advertisements, and (3) having received an unsolicited fax advertisement. There is no class definition that would enable a class member to accurately self-identify as being within the group for whom class-wide proof shows consent was not obtained and no established business relationship existed. Plaintiffs have failed to "establish an objective way to determine" who is a class member. *Williams*, 468 F. App'x at 770.

For these reasons, the Court denies the Motion as to proposed Class A.

### 3. Class C

Class C, like Class A, concerns only unsolicited fax advertisements. (*See* Mot. at 6.) For the reasons discussed in the preceding subsection, this Class is not ascertainable. The Court therefore denies the Motion as to Class C.

## III. CERTIFICATION OF CLASS B UNDER RULE 23

### A. Legal Standard for Class Actions under Rule 23

As the Supreme Court recently reaffirmed, "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the

---

[3] Plaintiffs' counsel made clear at the hearing that Plaintiffs were seeking certification of Class A only in case the Court determined that opt-out notices were not required on fax advertisements sent to those with whom Defendant had an established business relationship.

8

individual named parties only." *Dukes*, 131 S. Ct. at 2550 (citation omitted). "Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds as recognized in Melendres v. Arpaio*, --- F.3d ----, No. 12-15098, 2012 WL 4358727, *4 (9th Cir. Sep. 25, 2012). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S. Ct. at 2550. Under Rule 23(a), the party seeking certification must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Here, Plaintiffs seek certification of the class under Rule 23(b)(3), which permits maintenance of a class action if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### B. Class B Meets All Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The undisputed evidence reveals that "Defendant caused to be sent tens of thousands of fax advertisements throughout the United States." (Mot. at 7.) Numerosity is plainly met here.

#### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks and citation omitted). The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

The claims of Class B are aimed at the opt-out notices, and not whether Defendant had permission to send the faxes in the first place. Accordingly,

1  Defendant's focus on the fact that it had an established business relationship with,
2  possibly, every single recipient is immaterial to the real issue.  (*See* Opp'n at 8-9.)
3  The issue is whether the opt-out notices on the faxes were deficient.  In other
4  words, the trial of this case as to Class B will not require Defendant to put on
5  evidence of the existence of an established business relationship or consent as to
6  each recipient.  *Cf. Gene and Gene*, 541 F.3d at 327 ("predominant issue of fact is
7  undoubtedly one of *individual* consent"); *Dukes*, 131 S. Ct. at 2561 (holding that
8  defendant would "have the right to raise any individual affirmative defenses it
9  may have").  That is because Plaintiffs' claims allege that the opt-out notice on the
10 faxes was deficient; Plaintiffs do not allege that sending the faxes *per se* violated
11 the statute, as was the situation the Fifth Circuit faced in *Gene and Gene*, 541 F.3d
12 at 321.
13        In this case, Plaintiffs have demonstrated the existence of common proof
14 that would obviate the need for the presentation of individual defenses.  Balboa's
15 marketing manager, Jake Dacillo, admitted in his deposition that the opt-out
16 notice in Exhibit 1 to the Complaint—the opt-out notice on which the class
17 definition relies—was on all the faxes during the time he was the supervisor of fax
18 advertising, beginning around 2008. (Reply at 17.)  Moreover, ProFax's
19 deponent, Andrew Barnett, testified that ProFax recalled changing its opt-out
20 notice one time—after the FCC made rule changes in 2006. (*Id.*)  Accordingly,
21 Plaintiffs have put forth common proof—i.e., proof that each of the opt-out
22 notices on faxes sent during the class periods was the same as the opt-out notice
23 found on Exhibit 1 to the Complaint.
24        The parties dedicate several pages to whether a cause of action lies for a
25 deficient opt-out notice on a fax sent to a recipient with whom the sender has an
26 established business relationship.
27
28

11

The statute is clear that there are three requirements for sending an *unsolicited* fax advertisement:

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> (ii) the sender obtained the number of the telephone facsimile machine through [one of two permissible methods]; *and*
> (iii) the unsolicited advertisement contains [the requisite opt-out notice.]

47 U.S.C. § 227(b)(1)(C)(i)-(iii) (emphasis added). The statute therefore unambiguously requires a compliant opt-out notice on an unsolicited fax, notwithstanding the existence of an established business relationship.

The FCC's TCPA regulation now also prohibits sending *solicited* fax advertisements without the requisite opt-out notice: "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements" set forth in the regulation. 47 C.F.R. § 64.1200(a)(3)(iv). The regulation is thus also unambiguous: *solicited* advertisements require opt-out notices, as well. While this requirement is found in the regulation and not the statute, the statute provides for a private right of action "based on a violation of . . . the regulations prescribed" under the TCPA. 47 U.S.C. § 227(b)(3)(A). *See also Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for a violation of the FCC's implementing regulations.").

Accordingly, the single determination as to whether the opt-out notice complied with the statute and regulations promulgated thereunder "will resolve an issue that is central to the validity of each one of the [class members'] claims in *one stroke*." *Dukes*, 131 S. Ct. at 2551 (emphasis added).

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted).

Plaintiffs' claims are typical of the putative class members. Class B consists of those who received solicited fax advertisements and those who received unsolicited fax advertisements. The question is whether the opt-out notices on those solicited or unsolicited faxes complied with the TCPA. Hence, Plaintiffs' claims are typical of those to be asserted by Class B members.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

First, the Court considers whether Plaintiffs have any conflicts with the proposed class. Plaintiffs' claims appear to be virtually co-extensive with the class members, and Defendant does not challenge their adequacy. The Court therefore concludes that Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Second, as to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Here, the declarations of putative class counsel disclose sufficient class-action experience. (*See* Bellin Decl. ¶¶ 4-5, 8, Doc. 42-2; Compoli Decl. ¶¶ 3, 6, Doc. 42-28.) Defendant does not challenge Plaintiffs' counsel's adequacy. The Court concludes that Plaintiffs' counsel is adequate.

### C. Class B Meets All Rule 23(b) Requirements

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3). (Mot. at 20.) For the reasons set forth below, the Court holds that certification of Class B is appropriate under Rule 23(b)(3).

#### 1. Rule 23(b)(3)

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphases added). When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

14

(D) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3). The Court finds that Plaintiffs' proposed Class B satisfies both the predominance and superiority requirements.

### a. Predominance

The Supreme Court has explained that the predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 597, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1778 (2d ed.1986)).

As discussed above, the common issues predominate in the litigation of Class B's claims. Because the inquiry will be limited to the opt-out notice on the faxes, the trial will not require determining whether each class member consented to receiving a fax or had an established business relationship with Defendant. Thus, predominance is satisfied. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (reversing district court's denial of certification where the "fact-finder will focus on the standardized written materials given to all plaintiffs").

### b. Superiority

The Court further finds that a class action would be a superior method of adjudicating Plaintiffs' claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing


1  a claim individually would burden the judiciary and run afoul of Rule 23's focus
2  on efficiency and judicial economy.  *See Vinole v. Countrywide Home Loans, Inc.*,
3  571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial
4  by class representation would further the goals of efficiency and judicial
5  economy.").  Further, litigation costs would likely exceed potential recovery if
6  each class member litigated individually.  "Where recovery on an individual basis
7  would be dwarfed by the cost of litigating on an individual basis, this factor
8  weighs in favor of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*,
9  617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).
10         Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the
11 Court finds that class members' potential interests in individually controlling the
12 prosecution of separate actions and the potential difficulties in managing the class
13 action do not outweigh the desirability of concentrating this matter in one
14 litigation.  *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D).  The Court is not aware of
15 any litigation concerning the controversy already commenced by or against
16 members of the class.  *See* Fed. R. Civ. P. 23(b)(3)(B).  Therefore, the Court finds
17 that the class may be certified under Rule 23(b)(3).

### D. Rule 23(g) – Appointment of Class Counsel

19        Under Rule 23(g), "a court that certifies a class must appoint class
20 counsel."  Fed. R. Civ. P. 23(g)(1).  As previously stated in this Order, the Court
21 is satisfied that Plaintiffs' counsel is adequate and thus may be appointed as Class
22 Counsel in this case.

### IV. CONCLUSION

24        For the reasons set forth above, the Court GRANTS IN PART and
25 DENIES IN PART Plaintiffs' Motion for Class Certification as set forth below.
26        (1) The following Rule 23(b)(3) class is CERTIFIED under the Telephone
27            Consumer Protection Act:
28

16

<u>Class B</u>
All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a solicited or unsolicited facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

(2) Plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc. are APPOINTED as class representatives.

(3) Aytan Y. Bellin, Esq.; Roger Furman, Esq.; and Joseph Compoli, Esq. are APPOINTED as class counsel.

(4) The Court directs the parties to meet and confer, and to submit an agreed-on form of class notice that will advise class members of, among other things, the relief sought and their rights to intervene, opt out, submit comments, and contact class counsel.  The parties shall also jointly submit a plan for dissemination of the proposed notice.  The parties shall work together to generate a class list to be used in disseminating class notice. The proposed notice and plan of dissemination shall be filed with the Court on or before **December 14, 2012**.

DATED: <u>October 23, 2012</u>

_____
    JOSEPHINE STATON TUCKER
    UNITED STATES DISTRICT JUDGE