AYTAN Y. BELLIN
(admitted *pro hac vice*)
AYTAN.BELLIN@BELLINLAW.COM
BELLIN & ASSOCIATES LLC
85 Miles Avenue
White Plains, New York  10606
Telephone:  (914) 358-5345
Facsimile:  (212) 571-0284

JOSEPH R. COMPOLI, JR.
(admitted *pro hac vice*)
josephcompoli@sbcglobal.net
612 East 185th Street
Cleveland, Ohio  44119
Telephone:  (216) 481-6700
Facsimile:  (216) 481-1047

ROGER FURMAN (STATE BAR NO. 149570)
roger.furman@yahoo.com
7485 Henefer Avenue
Los Angeles, California  90045
Telephone:  (310) 568-0640
Facsimile:  (310) 694-9083

Attorneys for Plaintiffs Michael A.
Vandervort and U.S. Sample Services, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BALBOA CAPITAL CORPORATION, <br><br> Defendant. | Case No.:  SACV 11-1578-JST(JPRx) <br> Hon. Josephine Staton Tucker <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:  December 14, 2012 <br> Time:  2:30 P.M. <br> Judge: Hon. Josephine Staton Tucker |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………iii

I.     INTRODUCTION……………………………………………………………1

II.    STATEMENT OF FACTS…………...…………………………………….2

III.   PROCEDURAL HISTORY………...……………………………………. 5

IV.  BY FAILING TO INCLUDE ALL OF THE INFORMATION REQUIRED BY THE TCPA AND REGULATIONS PROMULGATED THEREUNDER ON ITS OPT-OUT NOTICES, BALBOA VIOLATED THE TCPA…..………………………………...7

       A.    Balboa's Opt-Out Notices Violate the TCPA in Three Separate Ways……………………………………………7

       B.    Balboa cannot escape the FCC regulation on opt-out notices or the decision in *Response Card* because of the Hobbs Act…………9

       C.    Balboa cannot avoid liability by asserting that it substantially complied with the opt-out notice requirements……………………10

V.   BY CAUSING PROFAX TO SEND PLAINTIFFS AN UNSOLICITED FAX ADVERTISEMENT, BALBOA VIOLATED CAL. BUS. & PROFS. CODE § 17538.43…..………………………….12

VI.  CONCLUSION……………..………………………………………………16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A Fast Sign Co. v. American Home Services, Inc.*
– S.E.2d --, 2012 WL 5381254 (Ga. November 5, 2012) ................................ 7

*Auer v. Robbins,*
519 U.S. 452 (1997) ................................................................................ 10, 12

*Bates v. Dow Agrosciences LLC,*
544 U.S. 431 (2005) ...................................................................................... 14

*Cammarano v. United States,*
258 U.S. 498 (1959) ...................................................................................... 10

*CE Design, Ltd. v. Prism Business Media, Inc.,*
606 F.3d 443 (7th Cir. 2010) .......................................................................... 9

*Chamber of Commerce of U.S. v. Lockyer,*
2006 WL 462482 (E.D. Cal. 2006) .................................................. 13, 14, 15

*Chevron U.S.A. Inc. v. Natural Resources Defense Council,*
467 U.S. 837 (1984) .................................................................................. 9, 12

*Cipollone v. Liggett Group, Inc.,*
505 U.S. 504 (1992) ...................................................................................... 14

*FCC v. ITT World Communications, Inc.,*
466 U.S. 463 (1984) ........................................................................................ 9

*Holster v. Gatco,*
618 F.3d 214 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2151, 179 L. Ed.2d
952 (2011) ...................................................................................................... 15

*Hovila v. Tween Brands, Inc.,*
2010 WL 1433417 (W.D. Wash. 2010) ........................................................ 15

*In the Matter of Response Card Marketing, Inc.,*
27 F.C.C.R. 3895 (April 10, 2012) ................................................. 8, 9, 11, 12

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

*In re NOS Communications*,
  495 F.3d 1052 (9th Cir. 2007)..........................................................14

*Ishikawa v. Delta Airlines, Inc.*,
  343 F.3d 1129 (9th Cir. 2003)..........................................................15

*Landsman & Funk, P.C. v. Lorman Business Center, Inc.*,
  2009 WL 602019 (W.D. Wis. 2009)................................................12

*Leckler v. Cashcall*,
  2008 WL 5000528 (N.D. Cal. 2008)..................................................9

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004)...........................................................................10

*Mahon v. Credit Bureau of Placer County, Inc.*,
  171 F.3d 1197 (9th Cir. 1999)............................................................7

*Matter of Rules and Regulations Implementing the Consumer Protection Act of 1991*,
  21 F.C.C.R. 3787 (April 6, 2006)..............................................10, 11

*Meilleur v. AT&T Inc.*,
  2011 WL 5592647 ...........................................................................15

*Ransom v. F.I.A. Card Servs., N.A.*,
  131 S. Ct. 716 (2011)......................................................................10

*State ex rel. Stenehjem v. FreeEats.com, Inc.*,
  712 N.W.2d 828 (N.D.), *cert. denied*, 549 U.S. 953 (2006) ..........15

*TSA Stores Inc. v. Dept. of Agriculture and Consumer Servs.*,
  957 So.2d 25 (Fla. App. 2007)........................................................15

*U.S. West Communications, Inc. v. Hamilton*,
  224 F.3d 1049 (9th Cir. 2000)............................................................9

*Utah Div. of Consumer Protection v. Flagship Capital*,
  125 P.3d 894 (Utah 2005)...............................................................15

*Van Bergen v. State of Minn.*,
  59 F.3d 1541 (8th Cir. 1995)...........................................................15

iv

*Vandervort v. Balboa Capital Corp.*,
  -- F.R.D. --, 2012 WL 5248420 (C.D. Cal. 2012) (attached as Exh. 15 to
  the Bellin Decl.).................................................................................... 6

*Wyeth v. Levine*,
  555 U.S. 555 (2009).......................................................................... 14

## STATUTES

15 U.S.C. § 1692g(a) ............................................................................ 7

28 U.S.C. § 2342(1) .............................................................................. 9

47 U.S.C. § 227(b)........................................................................... 1, 7

47 U.S.C. §§ 227(b)(1)(C)(iii) ........................................................... 11

47 U.S.C. 227(b)(2)(D) ................................................................ 1, 12

47 U.S.C. § 227(b)(2)(D)(iii) ........................................................... 7, 8

47 U.S.C. § 227(b)(2)(D)(iv)(I) ........................................................... 7

47 U.S.C. § 227(b)(2)(E) ................................................................... 11

47 U.S.C. § 227 (b)(2)(E)(i)................................................................ 7

47 U.S.C. § 227(b)(2)(E)(iii)............................................................... 8

47 U.S.C. § 414 ................................................................................ 14

Cal. Bus. & Profs. Code § 17538.43 .............................12, 13, 15, 16

Cal. Bus. & Profs. Code § 17538.43(b)................................... passim

Cal. Bus. & Profs. Code § 17538.43(b)(1) .................................. 13, 2

Cal. Bus. & Profs. Code § 17538.43(b)(2)(A) ............................... 16

Cal. Bus. & Profs. Code § 17538.43(b)(2)(B) ............................... 16

Cal. Bus. & Profs. Code § 17538.43(b)(2)(C) ............................... 16

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200 ................................................................................... 7

47 C.F.R. § 64.1200(a)(3)(iii) .............................................. 1, 10, 11, 12

47 C.F.R. § 64.1200(a)(3)(iii)(A-D) .......................................................... 8

47 C.F.R. § 64.1200(a)(3)(iii)(C) .................................................... 8, 11

47 C.F.R. § 64.1200(a)(3)(iii)(D)(1) ........................................................ 7

47 C.F.R. § 64.1200(a)(3)(iv) .......................................................... 10

47 C.F.R. § 64.1200(a)(3)(v) ..................................................... 8, 9, 11

47 C.F.R. § 64.1200 (a)(3)(v)(A) ......................................................... 8

47 C.F.R. § 64.1200(a)(3)(vi) ......................................................... 11

## I. **INTRODUCTION**

This litigation involves Defendant Balboa Capital Corporation's sending thousands of fax advertisements containing the same faulty opt-out notice to a plaintiff-class of thousands of businesses and individuals across the United States, including plaintiffs Michael Vandervort and U.S. Sample Services, Inc. ("Plaintiffs"), in violation of the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227(b) (the "TCPA"). This litigation also concerns Balboa's sending one unsolicited fax advertisement to Plaintiffs in violation of Cal. Bus. & Profs. Code § 17538.43(b). Plaintiffs and the class make this motion for summary judgment on their TCPA claims, and Plaintiffs also move on an individual basis for summary judgment on their claims for violation of Bus. & Profs. Code § 17538.43(b).

It is undisputed that the opt-out notice on the fax advertisements sent on behalf of Balboa did not contain *all* the information and language required by section 227(b)(2)(D) of the TCPA and by 47 C.F.R. § 64.1200(a)(3)(iii), an FCC regulation promulgated pursuant to the TCPA.[1] Specifically, Balboa's notice (1) does not provide a fax number to which recipients can send opt-out requests; (2) does not inform fax recipients that they must include their own fax numbers in their opt-out requests; and (3) lacks a provision stating that persons who had previously consented to receiving fax advertisements may in the future opt out of receiving such advertisements. As an April 12, 2012 Order of the FCC underscored, and to which the courts must defer, a fax advertisement must contain *all* of the information required by 47 U.S.C. 227(b)(2)(D) and 47 C.F.R. § 64.1200(a)(3)(iii), and a party's failure to include all of that information in the opt-out notice is actionable under the TCPA.

---

[1] Although the numbering of the regulation recently changed, Plaintiffs are using the numbering of the regulation as it existed during the class period. Plaintiffs used the same numbering on their motion for class certification.

Plaintiffs also should be granted summary judgment on their individual claims against Balboa for violation of Bus. & Profs. Code § 17538.43(b) simply because it is undisputed that Balboa, from California, caused Profax, Inc. ("Profax"), Balboa's fax broadcaster, to send Plaintiffs an unsolicited fax advertisement.  By its plain terms, section 17538.43(b)(1) prohibits an "entity . . . located within California [to] cause another person or entity to use [any telephone facsimile machine, computer, or other device] to send an unsolicited fax advertisement to a telephone facsimile machine."  That is exactly what happened here.

## II.   <u>STATEMENT OF FACTS</u>

Balboa is in the business of, among other things, providing financing to companies that wish to purchase equipment for their businesses.  (Bellin Decl., Exh. 5, pp. 120:12-121:17; Exh. 6, pp. 24:23-25:3).  One of the marketing methods Balboa used during the period from October 12, 2007 through February 2011 was advertising by fax.  (Bellin Decl., Exh. 5, p. 24: 13-16; Exh. 7, p. 78:5-18; Exh. 4, exhs. 1, 2, 3, 4 thereto).  Balboa retained a fax broadcasting company, Profax, to transmit Balboa's fax advertisements.  (*E.g.,* Bellin Decl., Exh. 3, p. 12:1-6; Exh. 7, pp. 73:19-25, 77:14-78:3; Exh. 6, p. 10:14-22).

Jake Dacillo, a Marketing Project Manager at Balboa, began managing the company's fax advertising program in November 2008.  (Bellin Decl., Exh. 7, pp. 9:10-12, 9:16-10:17).  Mr. Dacillo was responsible for writing the copy and creating the art for the fax advertisements (Bellin Decl., Exh. 7, pp. 10:18-11:1, 14:20-24; Exh. 6, p. 10:8-13).  On the bottom of each of the fax advertisements was an opt-out notice, the exact wording for which was provided by Profax to Balboa and which was put on the fax advertisements by Profax before Profax transmitted them.  (Bellin Decl., Exh. 7, pp. 14:2-15:9, 64:1-8; Exh. 3, p. 5:6-20; Exh. 4, pp. 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2).  The language of the purported opt-out notice stayed the same from 2007 through 2011, as the last time

Profax changed the language of the opt-out notice it provided to clients was in 2006, when the FCC changed the rules regarding opt-out notices (Bellin Decl., Exh. 7, p. 15:10-24; Exh. 4, pp. 116:24-117:16), and Balboa's Dacillo admitted in his deposition that the same opt-out notice was on all of the faxes from approximately the beginning of 2008 through 2011.  (Bellin Decl., Exh. 7, p. 14:2-13).  That opt-out notice read:

> To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN #1461 or call 877-284-7885.  The recipient may make a request to the sender not to send any future faxes and that failure to comply within 30 days is unlawful.

(Bellin Decl., Exh. 1, exh. 1 thereto; Exh. 8, exhs. C & D thereto; Exh. 7, pp. 70:1-11, 71:15-72:4 & exhs. A, B, C, D thereto; Exh. 14 (first, second, third and last fax advertisements following copy of TCPA attached to complaint)).

After Mr. Dacillo created a fax advertisement, he would cause it to be sent, along with a list of activated persons from the CRM system to Erica Blundo, who also works at Balboa.  Ms. Blundo would then send the fax advertisement and the list to Profax for transmission of the fax advertisement.  (Bellin Decl., Exh. 7, pp. 51:17-52:16, 59:2-8, 64:17-22, 84:12-16; Exh. 6, pp. 10:8-22, 13:11-16, 14:19-21, 15:16-16:9).  Ms. Blundo worked in the Irvine California headquarters of Balboa and directed Profax, from that California office, to transmit the fax advertisements.  (Bellin Decl., Exh. 7, pp. 65:2-12; Exh. 6, p. 25:4-16; Exh. 5. p. 137:2-15).

It is undisputed that through this process, Balboa caused Profax to send out thousands of fax advertisements on its behalf from 2008 through 2011.  (E.g., Bellin Decl., Exh. 3, response 19; Exh. 7, p. 77:10-22; Exh. 4, exh. 3 thereto). Balboa's Dacillo also has acknowledged that the fax sent to Plaintiffs and the three additional faxes that Plaintiffs identified were Balboa fax advertisements, and that those fax ads contained identical opt-out notices to that contained on the

3

fax advertisement that Plaintiffs received. (Bellin Decl., Exh. 7, pp. 13:17-14:1, 70:1-72:4 & exhs. A-D thereto). Moreover, it is undisputed that the dates in the date field on the fax advertisements were the dates when Profax's system actually sent out the faxes (Bellin Decl., Exh. 6, pp. 50:24-51:8, Exh. 7, p. 58:3-13), and that the dates on the Profax bills in the "Released" and "Closed" fields were the actual dates that the faxes for that particular fax blast job billed were transmitted. (Bellin Decl., Exh. 4, pp. 48:2-49:10; 75:12-17). In addition, it is undisputed that the only faxes that Profax transmitted on behalf of Balboa during the period covered by this case were faxes that advertised Balboa's goods and/or services. (Bellin Decl., Exh. 7, pp. 77:14-78:5).

By way of example, on just one of those dates, March 17, 2010, Profax's bills to Balboa show that it caused to be sent at least 95,040 (2,581 plus 3532 plus 44,462 plus 44,465) fax advertisements for Balboa, 61,865 (2128 plus 2481 plus 27,936 plus 29,320) of which were received. (Bellin Decl., Exh. 4, exh. 3 thereto, pp. PL-000392, PL000394-96; Exh. 7, pp. 69:23-25, 82:12-18, 83:8-20).

In total, from 2007 through 2011, Balboa, from California, caused Profax to send 1,666,008 fax advertisements on Balboa's behalf, over 95 percent of which were transmitted to persons throughout the United States, resulting in a total of 1,582,707 transmitted; 1,025,136 of those faxes were received, of which 973,879 were received in the United States. (Bellin Decl., Exh. 16 (containing a spreadsheet calculating the total number of faxes sent on all relevant dates); Exh. 4, exh. 3 thereto; Exh. 7, pp. 68:21-69:25, 77:14-78:5, 82:12-18; 83:8-:86-21, & exhs. A, B, C, H, I, J, K thereto; Exh. 5, pp. 79:25-80:9, 81:5-23, 83:5-9, 95:24-98:23, 137:2-138:3 & exhs. H, I, J, K thereto; Exh. 4, pp. 34:13-23, 42:7-44:20, 49:11-50:5, 54:20-55:11, 59:22-60:4, 63:16-65:5, 66:17-67:17, 73:11-74:24, 76:12-17 & exhs. 1, 2, 3, 4 thereto.[2]

---

[2] By stipulation (Bellin Decl., Exh. 9) exhibits H, I, J and K to the Dacillo (Exh. 7) and Byrne (Exh. 5) depositions, which are copies of Profax bills to Balboa, are

Among the fax advertisements that Balboa, from California, caused to be transmitted by Profax in 2010, was the unsolicited fax advertisement ("the Junk Fax") received at Sample's fax machine at Sample's office in Geneva, Ohio concerning Balboa's leasing services.  (Bellin Decl., Exh. 8, pp. 36:14-17, 37:8-13, 67:4-10, 108:19-22, 114:17-116:5, & exhs. C, D thereto; Exh. 10, p. 1, ¶ 4; Exh. 1, exh. 1 thereto).  The fax advertisement, which was designed by Mr. Dacillo, contained the name "Michael Vandervort" in the "To:" field ,"U.S. Sample Services, Inc." in the "Company:" field under Vandervort's name, and Sample's fax number under that.  (Bellin Decl., Exh. 8, pp. 21:10-14, 22:8-18, & exhs. C, D thereto; Exh. 7, pp. 13:15-14:1, 15:25-16:25 & exh. A thereto; Exh. 1, exh. 1 thereto).  The opt-out notice on the bottom of the fax advertisement was the same as the purported opt-out notice on all of the other fax advertisements from 2007 through 2011 that Balboa caused to be sent out to other persons. (Bellin Decl., Exh. 8, exhs. C, D thereto; Exh. 7, exh. A thereto).

## III.   **PROCEDURAL HISTORY**

Plaintiffs filed their Amended Class Action Complaint against Balboa on November 23, 2011 (Bellin Decl., Exh. 1), and Balboa filed its Answer to that pleading on December 8, 2011.  (Bellin Decl., Exh. 2).  Subsequently, the parties engaged in extensive written discovery, including discovery from Profax, Balboa's non-party fax broadcaster.  Plaintiffs then conducted seven depositions, including the depositions of senior employees of Balboa and a representative of Profax.  Balboa took the deposition of Plaintiff Michael Vandervort in his individual capacity and as a representative of Plaintiff U.S. Sample Services, Inc., and also obtained written discovery from Plaintiffs.  (Bellin Decl., ¶ 2).

---

deemed identical to Exhibits 1, 2, 3 and 4 to the Barnett deposition (Exh. 4), respectively.  All references to Exhibits H, I, J and K of the Dacillo and Byrne Depositions are therefore deemed references to Exhibits 1, 2, 3 and 4 of the Barnett deposition, respectively.

On September 8, 2012, Plaintiffs filed their motion for class certification, which Balboa opposed.  On October 23, 2012, this Court issued an opinion and order ruling, among other things, that there is a cause of action under the TCPA against senders of both solicited and unsolicited fax advertisements bearing opt-out notices that do not comply with the requirements of the TCPA and the regulations promulgated thereunder.  *Vandervort v. Balboa Capital Corp.*, -- F.R.D. --, 2012 WL 5248420, *6 (C.D. Cal. 2012) (attached as Exh. 15 to the Bellin Decl.).  Having found common proof that Balboa caused to be sent tens of thousands of facsimile advertisements, and that all of the fax advertisements that Balboa caused to be sent contained the same opt-out notice, this Court certified the following class:

> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a solicited or unsolicited facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

*Id.* at *5-*6, *9.

## IV.   BY FAILING TO INCLUDE ALL OF THE INFORMATION REQUIRED BY THE TCPA AND REGULATIONS PROMULGATED THEREUNDER ON ITS OPT-OUT NOTICES, BALBOA VIOLATED THE TCPA

### A.   Balboa's Opt-Out Notices Violate the TCPA in Three Separate Ways

As quoted above, the opt-out notice on all of the fax advertisements Balboa caused Profax to send to persons in the United States from October 12, 2007 through February 23, 2011 states:

> To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN #1461 or call 877-284-7885.  The recipient may make a request to the sender not to send any future faxes and that failure to comply within 30 days is unlawful. [3]

This opt-out notice does not satisfy 47 U.S.C. § 227(b) or 47 C.F.R. § 64.1200 because:

(1) the notice does not provide a fax number to which recipients can fax opt-out requests (47 U.S.C. § 227(b)(2)(D)(iv)(I), 47 C.F.R. § 64.1200(a)(3)(iii)(D)(1));

(2) the notice does not inform recipients that they must include their own fax numbers in their opt-out requests (47 U.S.C.

---

[3] As noted above of these 1,582,707 fax advertisements that Defendant caused to be sent throughout the United States, 973,879 were received.  Defendant is liable under the TCPA for all of the fax advertisements that it sent without the proper opt-out notice, not just those that were received because the TCPA only requires proof that fax advertisements were sent, not that they were received as one of the elements for liability.  *See , e.g., A Fast Sign Co. v. American Home Services, Inc.* – S.E.2d --, 2012 WL 5381254, *1 (Ga. November 5, 2012) (citing numerous cases and holding that under the TCPA although a plaintiff must prove that a Defendant sent a fax  "[t]he statute does not make actual receipt of a fax an element of a private right of action.").  *Cf. Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) (because the plain language of 15 U.S.C. § 1692g(a) only requires that a debt collector "send" a validation notice, the debt collector does not need to establish that the validation notice was actually received).

§ 227(b)(2)(D)(iii) & (b)(2)(E)(i), 47 C.F.R. § 64.1200(a)(3)(iii)(C) & (a)(3)(v)(A)); and

(3)  the notice does not contain a provision stating that persons who have previously consented to receiving fax advertisements may subsequently opt out of receiving such advertisements (47 U.S.C. § 227 (b)(2)(D)(iii) & (b)(2)(E)(iii), 47 C.F.R. § 64.1200(a)(3)(iii)(C) & (a)(3)(v)(C)).

Whether analyzed individually or together, these omissions in Balboa's opt-out notices violate the TCPA.  As the FCC recently underscored, an opt-out notice violates the TCPA if it "does not satisfy *all* of the statutory and regulatory requirements [of the TCPA]."  *In the Matter of Response Card Marketing, Inc.*, 27 FCCR 3895, 3897, ¶ 6 (April 10, 2012) (emphasis added) ("section 64.1200(a)(3)(iii)(A-D) of the Commission's rules set forth the specific requirements that an opt-out notice *must* contain.").

In many respects similar to the opt-out request in this case, the opt-out notice on the fax at issue in *Response Card* stated: "Fax removals are easy! 24 hour automated service, call 1-888-662-2677 and enter your reference ID . . . and you will be removed immediately."  *Id.* at 3898, ¶ 8.  The decision emphasized each and every requirement that the opt-out notice on the fax did not satisfy and why each one was individually critical, i.e.,

(1) the opt-out notice was not on the first page (*id.* at 3897-98, ¶ 7);

(2) the opt-out notice did not specify that failure to comply with an opt-out request within 30 days was unlawful (*id.* at 3898, ¶ 8);

(3) the opt-out notice did not include all of the requirements for making an opt-out request as specified in 47 C.F.R. § 64.1200(a)(3)(v), *i.e.,* that the request identify the particular telephone number of the facsimile machine to which the request relates; that the request must be made to the telephone number, facsimile machine, website or e-mail address identified in the sender's fax; and that the

8

recipient has not, subsequent to his or her request, authorized the sender to send a fax to him or her at the number indicated in the request (*id.*, ¶ 9); and

(4) the opt-out notice did not contain a facsimile number to which the opt-out notice directed a recipient could send an opt-out request (id. at 3899, ¶ 10). The FCC concluded that because the opt-out notice "did not meet **all** of the [] requirements of the opt-out notice under the established business relationship exception," the sender could not rely on that exception to shield it from TCPA liability of $9,000. *Id.*, ¶ 12 (emphasis added).

**B.    Balboa cannot escape the FCC regulation on opt-out notices or the FCC decision in *Response Card* because of the Hobbs Act**

Balboa cannot challenge either the FCC regulations setting forth the requirements for opt-out notices, or the FCC's Order in *Response Card* confirming that *all* of those requirements must be in opt-out notices, because the Hobbs Act, 28 U.S.C. § 2342(1), deprives this court of jurisdiction to invalidate the regulation and the FCC's Order.  *See, e.g., FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals"); *U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054-55 (9th Cir. 2000) (same); *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-450 (7th Cir. 2010) (same in the TCPA context); *Leckler v. Cashcall*, 2008 WL 5000528, *3 (N.D. Cal. 2008) (same in the TCPA context).

Moreover, even if this Court did have the jurisdiction to review the correctness of the FCC's interpretation of the TCPA's requirements in *Response Card* – which the Hobbs Act plainly forecloses – the FCC's interpretation would still have to be upheld because under *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), the FCC's interpretation is consistent with the TCPA and the Constitution, and is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.   Similarly, the FCC's

9

interpretation of the opt-out notice requirements contained in the FCC's own regulations, 47 C.F.R. §§ 64.1200(a)(3)(iii), 64.1200(a)(3)(iv), would also have to be upheld because that interpretation is not "plainly erroneous or inconsistent with the regulation[s]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Indeed, a contrary interpretation would render the sections of the statute and regulations that list the specific information that must be conveyed in the opt-out notice as superfluous, a result which is impermissible under well-accepted rules of statutory and regulatory construction. *See, e.g., Ransom v. F.I.A. Card Servs., N.A.,* 131 S. Ct. 716, 724 (2011); *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute whenever possible."); *Cammarano v. United States*, 258 U.S. 498, 505 (1959) (refusing to read language in a regulation as surplusage). As discussed above, the opt-out notice on the fax advertisements at issue in this case simply does not convey all of the information required by the TCPA and the regulations thereunder, and therefore does not satisfy those requirements.

## C.    Balboa cannot avoid liability by asserting that it substantially complied with the opt-out notice requirements

Balboa has repeatedly asserted that, notwithstanding the unequivocal description in the TCPA and the regulations promulgated thereunder of the information that must be conveyed in an opt-out notice, its opt-out notice "substantially complied" with the requirements of the TCPA and the regulations promulgated thereunder, and therefore satisfies the TCPA. In support of that argument, Balboa has pointed to language in an FCC Order that states that "rules specifying the font type, size and wording of the notice might interfere with fax senders' ability to design notices to serve their customers." *Matter of Rules and Regulations Implementing the telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3801 (April 6, 2006). That argument is unavailing for several reasons.

1   First Balboa's substantial compliance argument is flatly contradicted by the
2   FCC's controlling interpretation in *Response Card* that "all" of the information
3   required by the regulation must appear in Balboa's opt-out notices.

4   Second, Balboa's argument ignores the sentence immediately following the
5   sentence about font size and the like in the order quoted above: "*However*, we
6   make some additional determinations about the opt-out notice so that facsimile
7   recipients have the information necessary to avoid future unwanted faxes."
8   *Matter of Rules and Regulations*, 21 F.C.C.R. at 3801 (emphasis added).   Indeed,
9   some of those "additional determinations" are discussed in the text of the order.
10  *Id.*  And other specific information (apart from exact wording, font type and size)
11  required to be conveyed in the opt-out notice is detailed in 47 U.S.C. §§
12  227(b)(1)(C)(iii);  227(b)(2)(D),  (b)(2)(E);  47  C.F.R.  §  64.1200(a)(3)(iii),
13  (a)(3)(v), and must *all* be contained in the opt-out notices required by the TCPA.

14  Third, one of the reasons for the requirement that all fax advertisements,
15  whether solicited or not, contain all of the opt-out notice information detailed in
16  the statute and the regulations is to allow persons to whom such fax
17  advertisements were sent to avoid receiving future unwanted fax advertisements.
18  *See In re Rules and Regulations Implementing the Telephone Consumer*
19  *Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 ¶ 48 (April 6, 2003).  If an opt-
20  out notice does not contain all of the information required by the statute and the
21  regulations, individuals who receive fax advertisements, whether solicited or not,
22  would remain forever unaware of the detailed content required for an effective
23  opt-out request that would require the sender to cease sending fax advertisements.
24  *See* 47 C.F.R. § 64.1200(a)(3)(iii)(C), (a)(3)(v), (a)(3)(vi) (detailing required
25  content of request to opt out of receiving future fax and indicating that opt-out
26  requests that do not contain this content do not have to be honored by senders); 47
27  U.S.C. § 227(b)(2)(E) (same).  Indeed, the failure of Balboa's purported opt-out
28  notice in the instant case to convey that persons who wish to opt out must submit

their own fax numbers as part of the opt-out request means that Balboa would not be required, under the statute and the regulations, to honor opt-out requests that provide the very information that Balboa's opt-out notice tells the persons to provide.

Fourth and finally, even if "substantial compliance" with the opt-out notice requirements were sufficient under the TCPA, which it is not, Balboa would still be liable under the TCPA because the significant deficiencies of which it is guilty in all of its fax advertisements do not in fact show substantial compliance. Accordingly, any argument that Balboa's purported opt-out notice "substantially complies" with the TCPA is unsupportable.[4]

\*        \*        \*

In sum, the opt-out notice on the fax advertisements that Balboa caused to be sent to Plaintiffs and the class do not satisfy the requirements of 47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. §§ 64.1200(a)(3)(iii). 64.1200(a)(3)(iv). Accordingly, under the TCPA, Balboa is liable to Plaintiffs and the class in the amount of $500 or each of the fax advertisements Balboa caused to be sent to them, and this Court should enjoin Balboa from continuing to violate the TCPA.

## V.    BY CAUSING PROFAX TO SEND PLAINTIFFS AN UNSOLICITED FAX ADVERTISEMENT, BALBOA VIOLATED CAL. BUS. & PROFS. CODE § 17538.43

During counsels' meet-and-confer discussions, Balboa asserted that Plaintiffs' individual claim under Cal. Bus. & Profs. Code § 17538.43(b) fails

---

[4]  In support of its substantial compliance argument, Balboa has cited *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019 (W.D. Wis. 2009). To the extent that the *Landsman* court ruled that an opt-out notice that conveys anything less than all of the opt-out notice information required by the TCPA and the regulations promulgated thereunder satisfies the TCPA, that ruling was incorrect because it is in direct conflict with the FCC's controlling interpretation in *Response Card*, which was decided after *Landsman*, the deference owed to the FCC interpretation under *Chevron* and *Auer*, the plain meaning of the statute and the regulations, and the well-settled rules of statutory construction discussed above.

12

1    because Profax and Plaintiffs are not located in California, and that hence the

2    California statute is not applicable.   Balboa's argument is meritless because it

3    ignores the fact that Balboa itself is in California.

4         California Bus. & Profs. Code § 17538.43(b)(1) provides:

5         It is unlawful for a person or entity, if the person or entity . . . is

6         located within California . . . to . . . cause another person or entity to

7         use [a telephone facsimile machine, computer, or other device] to

8         send an unsolicited advertisement to a telephone facsimile machine.

9         It is undisputed that Balboa itself is incorporated and headquartered in

10   California.   (Bellin Decl., Exh. 2, ¶ 5).   It is also undisputed that Balboa, from

11   California, caused Profax to send fax advertisements on its behalf.   (Bellin Decl.,

12   Exh. 7, pp. 64:17-65:12; Exh. 6, p. 25:4-16; Exh. 5, p. Byrne: 137:2-15).   Finally,

13   it is undisputed that among the fax advertisements that Balboa from California

14   caused Profax to send was the fax advertisement sent to Plaintiffs, and that

15   Plaintiffs did not provide Balboa with express permission or invitation to do so

16   (Bellin Decl. Exh. 8, pp. 36:14-17, 37:8-13, 67:4-10, 108:19-22, 114:17-116:5, &

17   exhs. C, D thereto; Exh. 10, p. 1, ¶ 4; Exh. 1, exh. 1 thereto).   Accordingly,

18   Balboa is an "entity . . . located within California [that] cause[d] another person

19   or entity [, i.e., Profax] to use such a device to send an unsolicited fax

20   advertisement to a telephone facsimile machine," i.e., Plaintiffs' telephone

21   facsimile machine, and hence is liable under Bus. & Profs. Code § 17538.43(b).

22        Balboa also has argued that Bus.& Profs. Code § 17538.43's interstate

23   application is preempted by the TCPA, citing a single unreported district court

24   case, *Chamber of Commerce of U.S. v. Lockyer*, 2006 WL 462482 (E.D. Cal.

25   2006).   Based on that single decision, Balboa has asserted that § 17538.43(b) may

26   only be applied to intrastate fax advertisements transmitted from California to a

27   California resident, and that as a result, the prohibitions of § 17538.43(b) cannot

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  be applied to the fax advertisement Profax transmitted from New York on behalf

2  of Balboa to Plaintiffs in Ohio.  This argument also lacks any merit.

3      First, one of the bases for the *Lockyer* court's 2006 ruling was that the

4  traditional presumption *against* preemption — providing that federal law should

5  not supersede the historic police powers of the States unless that is the clear,

6  manifest and unambiguous purpose of Congress[5] — did not apply to the TCPA

7  because "there has been a history of significant federal presence" in the area of

8  interstate communications.  *Lockyer, supra*, 2006 WL 462482  at \*6-\*7.  In 2009,

9  however, the U.S. Supreme Court rejected a virtually identical argument,

10  reasoning that "[t]hat argument misunderstands the principle:  We rely on the

11  presumption because respect for the States as independent sovereigns in our

12  federal systems leads us to assume that Congress does not cavalierly pre-empt

13  state-law causes of action.   The presumption thus accounts for the historic

14  presence of state law but does not rely on the absence of federal regulation."

15  *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009); *see also In re NOS*

16  *Communications*, 495 F.3d 1052, 1057-58 (9th Cir. 2007) (ruling that Congress

17  did not preempt all state causes of action within the scope of the Federal

18  Communications Act).

19      Second, *Lockyer* failed to recognize that the Federal Communications Act,

20  of which the TCPA is a part, contains its own savings clause preserving state

21  court remedies:   "[n]othing in this chapter [ ] shall in any way abridge or alter the

22  remedies now existing at common law or by statute."  47 U.S.C. § 414.  The

23  savings clause recognizing state remedies is completely incompatible with the

24  notion that the presumption against preemption does not apply in the TCPA

25  context and that the TCPA may preempt the California statute.  *See In re NOS*

26  *Communications, supra*, 495 F.3d at 1058.  Indeed, this savings clause, in and of

27

28      [5] *E.g., Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

itself, is a sufficient basis to conclude that the TCPA does not preempt Bus. & Profs. Code § 17538.43(b).

Third, to the extent that *Lockyer* reasoned that the TCPA preempts state law because the TCPA's savings clause expressly states that it is preserving the "intrastate" application of state telemarketing laws and therefore Congress must *also* have meant that the TCPA preempts the interstate application of such state telemarketing laws, that reasoning is faulty.  A savings clause does not carry a "negative pregnant that other state law [not mentioned in the savings clause] is preempted."  *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1132 (9th Cir. 2003).

Fourth, and most importantly, for all these reasons courts throughout the United States have overwhelmingly rejected *Lockyer's* reasoning, ruling that the presumption against preemption does apply in the TCPA context, and that the TCPA therefore does not preempt the interstate application of state anti-junk-fax/anti-telemarketing laws.  *E.g., Holster v. Gatco*, 618 F.3d 214, 218 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2151, 179 L. Ed.2d 952 (2011); *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1547-48 (8th Cir. 1995); *Meilleur v. AT&T Inc.*, 2011 WL 5592647, **3-6 (W.D. Wash. 2011); *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, **6-11 (W.D. Wash. 2010); *TSA Stores Inc. v. Dept. of Agriculture and Consumer Servs.*, 957 So.2d 25, 27-29 (Fla. App. 2007); *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 712 N.W.2d 828, 836, 839-40 (N.D.), *cert. denied*, 549 U.S. 953 (2006); *Utah Div. of Consumer Protection v. Flagship Capital*, 125 P.3d 894, 900, 901 (Utah 2005).

Accordingly, Balboa's legal challenge to Plaintiffs' claim under Bus. & Profs. Code § 17538.43 is untenable, and Plaintiffs' motion for summary judgment on this claim should be granted as well. Plaintiffs should be awarded individual damages of $500 against Balboa, and this Court should enjoin Balboa from continuing to violate Bus. & Profs. Code § 17538.43.  *See* Bus. & Profs. Code § 17538.43(b)(2)(A), (B), (C).

## VI.    CONCLUSION

Plaintiffs' and the class's motion for summary judgment on their TCPA claims should be granted, this Court should enter judgment against Balboa in the amount of $500 for each of the 1,582,707 fax advertisements (95 percent in the United States of the 1,666,008 total worldwide) that Balboa caused to be sent to Plaintiffs and the class, and this Court should enjoin Balboa from continuing to violate the TCPA.  In addition, Plaintiffs' motion for summary judgment on their individual Cal. Bus. & Profs. Code § 17538.43(b) claims should be granted, this Court should enter judgment against Defendant for $500, and this Court should enjoin Balboa from continuing to violate Cal. Bus. & Profs. Code § 17538.43(b).

Dated:  November 16, 2012

/s/ Aytan Y. Bellin
AYTAN Y. BELLIN, ESQ.
BELLIN & ASSOCIATES

ROGER FURMAN, ESQ.

JOSEPH R. COMPOLI, JR., ESQ.

Attorneys for plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc., on behalf of themselves and all others similarly situated