AYTAN Y. BELLIN
(admitted *pro hac vice*)
AYTAN.BELLIN@BELLINLAW.COM
BELLIN & ASSOCIATES LLC
85 Miles Avenue
White Plains, New York  10606
Telephone:  (914) 358-5345
Facsimile:  (212) 571-0284

JOSEPH R. COMPOLI, JR.
(admitted *pro hac vice*)
josephcompoli@sbcglobal.net
612 East 185th Street
Cleveland, Ohio  44119
Telephone:  (216) 481-6700
Facsimile:  (216) 481-1047

ROGER FURMAN (STATE BAR NO. 149570)
roger.furman@yahoo.com
7485 Henefer Avenue
Los Angeles, California  90045
Telephone:  (310) 568-0640
Facsimile:  (310) 694-9083

Attorneys for Plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>Defendant. | Case No.:  SACV 11-1578-JST(JPRx)<br>Hon. Josephine Staton Tucker<br><br>**PLAINTIFFS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  December 14, 2012<br>Time:  2:30 P.M.<br>Judge: Hon. Josephine Staton Tucker |

After considering the papers filed in support of and in opposition to Plaintiffs' motion for summary judgment against Defendant Balboa Capital Corporation ("Balboa"), and oral argument of counsel, the Court finds and rules as follows:

## UNCONTROVERTED/INCONTROVERTIBLE FACTS

*Violations of the TCPA and Cal. Bus. & Profs. Code § 17538.43(b)*

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 1. Balboa is in the business of, among other things, providing financing to companies that wish to purchase equipment for their businesses. | Bellin Decl., Exh. 5, pp. 120:12-121:17; Exh. 6, pp. 24:23-25:3 |
| 2. One of the marketing methods used by Balboa from October 12, 2007 through February, 2011 was advertising by fax. | Bellin Decl., Exh. 5, p. 24:13-16; Exh. 7, p. 78:5-18; Exh. 4, exhs. 1, 2, 3, 4 thereto. |
| 3. Balboa retained a fax broadcasting company, Profax, Inc., to transmit Balboa's fax advertisements. | Bellin Decl., Exh. 3, p. 12:1-6; Exh. 7, pp. 73:19-25, 77:14-78:3; Exh. 6, p. 10:14-22. |
| 4. Jake Dacillo, a Marketing Project Manager at Balboa, began managing the company's fax advertising program in November 2008. | Bellin Decl., Exh. 7, pp. 9:10-12, 9:16-10:17. |

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 5. Mr. Dacillo was responsible for writing the copy (other than the purported opt-out notice) and creating the art for the fax advertisements. | Bellin Decl., Exh. 7, pp. 10:18-11:1, 14:20-24; Exh. 6, p. 10:8-13. |
| 6. On the bottom of each of Balboa's fax advertisements was an opt-out notice, the exact wording for which was provided by Profax to Balboa and which was put on the fax advertisements by Profax before Profax transmitted them. | Bellin Decl., Exh. 7, pp. 14:2-15:9, 64:1-8; Exh. 3, p. 5:6-20; Exh. 4, pp. 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2. |
| 7. The language of the opt-out notice on all of Balboa's fax advertisements was identical from 2007 through 2011. | Bellin Decl., Exh. 7, 14:2-13, 15:10-24; Exh. 4, 116:24-117:16. |
| 8. The opt out notice on Balboa's fax advertisements from 2007 through 2011 read as follows: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN #1461 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and that failure to comply within 30 days is unlawful." | Bellin Decl., Exh. 8, exhs. C, D thereto; Exh. 7, pp. 70:1-11, 71:15-72:4 & exhs. A, B, C, D thereto; Exh. 14, first, second, third and last fax advertisements following copy of TCPA attached to complaint. |

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 9.  After Mr. Dacillo created a fax advertisement, he would provide it, along with a list of activated persons from Balboa's CRM system, to Erica Blundo, who also works at Balboa.  Ms. Blundo would then send the fax advertisement and the list to Profax for transmission of the fax advertisement. | Bellin Decl., Exh. 7, pp. 51:17-52:16, 59:2-8, 64:17-22, 84:12-16; Exh. 6, pp. 10:8-22, 13:11-16, 14:19-21, 15:16-16:9. |
| 10.  Ms. Blundo worked in the Irvine California headquarters of Balboa and directed Profax, from that California office, to transmit Balboa's fax advertisements. | Bellin Decl., Exh. 7, pp. 65:2-12; Exh. 6, pp. Blundo: 25:4-16; Exh. 5, p. 137:2-15. |
| 11.  Balboa caused Profax to send out thousands of fax advertisements on its behalf from 2008 through 2011. | Bellin Decl., Exh. 3, interrogatory response 19; Exh. 7, p. 77:10-22. |
| 12.  The fax sent to Plaintiffs and the three additional faxes that Plaintiffs identified were Balboa fax advertisements, and those fax advertisements contained identical opt-out notices to that contained on the fax advertisement that Plaintiffs received. | Bellin Decl., Exh. 7, pp. 13:17-14:1, 70:1-72:4 & exhs. A, B, C & D thereto. |

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 13. The dates in the date field on Balboa's fax advertisements were the dates that Profax's system actually sent out the faxes. | Bellin Decl., Exh. 6, pp. 50:24-51:8, Exh. 7, p. 58:3-13. |
| 14. The dates in the "Released" and "Closed" fields on Profax's bills were the actual dates that the faxes for that particular fax job billed were transmitted. | Bellin Decl., Exh. 4, pp. 48:2-49:10; 75:12-17. |
| 15. The only faxes that Profax transmitted on behalf of Balboa from 2007 through 2011 were faxes that advertised Balboa's goods and/or services | Bellin Decl., Exh. 7, pp. 77:14-78:5. |
| 16. On March 17, 2010, Profax's bills to Balboa show that it caused to be sent at least 95,040 (2,581 plus 3,532 plus 44,462 plus 44,465) fax advertisements on behalf of Balboa, 61,865 (2,128 plus 2,481 plus 27,936 plus 29,320) of which were received. | Bellin Decl., Exh. 4, exh. 3 thereto, pp. PL-000392, PL000394-96; Exh. 7, pp. 69:23-25, 82:12-18, 83:8-20. |

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 17. In total, from 2007 through 2011, Balboa, from California, caused Profax to send 1,666,008 fax advertisements on Balboa's behalf, more than 95 percent of which were transmitted to persons throughout the United States, resulting in a total of 1,582,707 transmitted. 1,025,136 of those faxes were received, of which 973,879 were received in the United States. | Bellin Decl., Exh. 16 (containing a spreadsheet calculating the total number of faxes sent on all relevant dates based on Profax's bills (Exh. 4, bills attached as exhs. 1-4 thereto)); Exh. 7, pp. 68:21-69:25; 77:14-78:5, 82:12-18, 83:8-86:21 & exhs. A, B, C, H, I, J, K thereto (by stipulation (Exh. 9), exhs. H, I, J, K to this deposition are the same documents as exhs. 1-4 to the Barnett deposition (Exh. 4)); Exh. 5, pp. 79:25-80:9, 81:5-23, 83:5-9, 95:24-98:23, 137:2-138:3 & exhs. H, I, J, K thereto (by stipulation (Exh. 9), exhs. H, I, J, K to this deposition are the same documents as exhs. 1-4 to the Barnett deposition (Exh. 4)); Exh. 4, pp. 34:13-23, 42:7-44:20, 49:11-50:5, 54:20-55:11, 59:22-60:4, 63:16-65:5, 66:17-67:17, 73:11-74:24, 76:12-17 & exhs. 1, 2, 3, 4 thereto. |

| Uncontroverted/Incontrovertible Fact | Supporting Evidence |
|---|---|
| 18.  Among the fax advertisements that Balboa, from California, caused to be transmitted by Profax in 2010, was the unsolicited fax advertisement ("the Junk Fax") received at Sample's fax machine at Sample's office in Geneva, Ohio concerning Balboa's leasing services. | Bellin Decl., Exh. 8, pp. 36:14-17, 37:8-13, 67:4-10, 108:19-22, 114:17-116:5 & exhs. C, D thereto; Exh. 10, p. 1, ¶ 4; Exh. 1, exh. 1 thereto. |
| 19.  The Junk Fax, which was designed by Mr. Dacillo, contained the name "Michael Vandervort" in the "To:" field, "U.S. Sample Services, Inc." in the "Company:" field under Vandervort's name, and Sample's fax number under that. | Bellin Decl., Exh. 8, pp. 21:10-14, 22:8-18 & exhs. C, D thereto; Exh. 7, pp. 13:15-14:1, 15:25-16:25; Exh. 1, exh. 1 thereto. |
| 20.  The opt-out notice on the bottom of the Junk Fax was the same as the opt-out notice on all of the other fax advertisements from 2007 through 2011 that Balboa caused to be sent out to other persons. | Bellin Decl., Exh. 8, pp. exhs. C, D thereto; Exh. 7, pp. 14:2-13, 15:10-24 & exhs. A, B, C, D thereto; Exh. 4, pp. 116:24-117:16. |

# CONCLUSIONS OF LAW

### A.   Plaintiffs' and the Class's Claims Under the TCPA

1. Federal Rule of Civil Procedure 56(c) authorizes any party to move for summary judgment "on all or part of the claim" it is asserting. Fed. R. Civ. P. 56(b).

2. Plaintiffs have satisfied their burden on this summary judgment motion, and Balboa has failed to come forward with any specific, admissible facts showing there is a genuine issue for trial on the Plaintiffs' and the class's causes of action under the Telephone Consumer Protection Act (the "TCPA"), codified at 47 U.S.C. § 227(b).

3. An opt-out notice violates the TCPA if it "does not satisfy *all* of the statutory and regulatory requirements [of the TCPA]." *In the Matter of Response Card Marketing, Inc.*, 27 FCCR 3895, 3897, ¶ 6 (April 10, 2012) (emphasis added) ("section 64.1200(a)(3)(iii)(A-D) of the Commission's rules set forth the specific requirements that an opt-out notice *must* contain.").

4. This opt-out notice on all of Balboa's fax advertisements in this case does not satisfy 47 U.S.C. § 227(b) or 47 C.F.R. § 64.1200 because:

   (1) the notice does not provide a fax number to which recipients can fax opt-out requests (47 U.S.C. § 227(b)(2)(D)(iv)(I), 47 C.F.R. § 64.1200(a)(3)(iii)(D)(1));

   (2) the notice does not inform recipients that they must include their own fax numbers in their opt-out requests (47 U.S.C. § 227(b)(2)(D)(iii) & (b)(2)(E)(i), 47 C.F.R. § 64.1200(a)(3)(iii)(C) & (a)(3)(V)(A)); and

   (3) the notice does not contain a provision stating that persons who have previously consented to receiving fax advertisements may subsequently opt out of receiving such

advertisements (47 U.S.C. § 227 (b)(2)(D)(iii) & (b)(2)(E)(iii), 47 C.F.R. § 64.1200(a)(3)(iii)(C) & (a)(3)(v)(C)).

5.      Balboa cannot challenge either the FCC regulations setting forth the requirements for opt-out notices, or the FCC's Order in *Response Card* confirming that *all* of those requirements must be in opt-out notices because the Hobbs Act, 28 U.S.C. § 2342(1), deprives this court of jurisdiction to invalidate the regulations or the FCC's Order.  *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals"); *U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054,-1055 (9th Cir. 2000) (same); *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-450 (7th Cir. 2010) (same in the TCPA context); *Leckler v. Cashcall*, 2008 WL 5000528, *3 (N.D. Cal. 2008) (same in the TCPA context).

6.      Even if this Court did have the jurisdiction to review the correctness of the FCC's interpretation of the TCPA's requirements in *Response Card* – which the Hobbs Act plainly forecloses – the FCC's interpretation would still have to be upheld because under *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), the FCC's interpretation is consistent with the TCPA and the Constitution, and is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  Similarly, the FCC's interpretation of the opt-out notice requirements contained in the FCC's own regulations, 47 C.F.R. §§ 64.1200(a)(3)(iii), 64.1200(a)(3)(iv), would also have to be upheld because that interpretation is not "plainly erroneous or inconsistent with the regulation[s]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

7.      Balboa may be held liable for violating the TCPA even if its opt-out notices "substantially complied" with the opt-out notice requirements of the TCPA and the regulations promulgated thereunder.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787,

8
PLAINTIFFS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

3801 (April 6, 2006); 47 U.S.C. §§ 227(b)(1)(C)(iii); 227(b)(2)(D), (b)(2)(E); 47 C.F.R. § 64.1200(a)(3)(iii), (a)(3)(v).

8. One of the reasons for the requirement that all fax advertisements, whether solicited or not, contain all of the opt-out notice information detailed in the statute and the regulations is to allow persons to whom such fax advertisements were sent to avoid receiving future unwanted fax advertisements. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 ¶ 48 (April 6, 2006). If an opt-out notice does not contain all of the information required by the statute and the regulations, individuals who receive fax advertisements, whether solicited or not, would remain forever unaware of the detailed content required for an effective opt-out request that would require the sender to cease sending fax advertisements. *See* 47 C.F.R. § 64.1200(a)(3)(iii)(C), (a)(3)(v), (a)(3)(vi) (detailing required content of request to opt out of receiving future fax and indicating that opt-out requests that do not contain this content do not have to be honored by senders); 47 U.S.C. § 227(b)(2)(E) (same).

9. Even if "substantial compliance" with the opt-out notice requirements were sufficient under the TCPA, which it is not, Balboa would still be liable under the TCPA because the several deficiencies of which it is guilty in hundreds of thousands of faxes do not demonstrate substantial compliance.

10. Because the opt-out notice on the fax advertisements Balboa sent to Plaintiffs and the class violates the TCPA and the regulations promulgated thereunder, Plaintiffs' and the class's motion for summary judgment on their TCPA claims should be granted, this Court should enter judgment against Balboa in the amount of $500 for each of the 1,582,707 fax advertisements (95 percent in the United States of the 1,666,008 total worldwide) that Balboa caused to be sent to Plaintiffs and the class, and this court should enjoin Balboa from continuing to violate the TCPA.

### B.    Plaintiffs' Claims Under Cal. Bus. & Profs. Code § 17538.43

11.    Plaintiffs have satisfied their burden on this summary judgment motion, and Balboa has failed to come forward with any specific, admissible facts showing there is a genuine issue for trial on Plaintiffs' individual causes of action under Cal. Bus. & Profs. Code § 17538.43(b).

12.    Cal. Bus. & Profs. Code § 17538.43(b)(1) provides:  "It is unlawful for a person or entity, if the person or entity . . . is located within California . . . to . . . cause another person or entity to use [a telephone facsimile machine, computer, or other device] to send an unsolicited advertisement to a telephone facsimile machine."

13.    Balboa is an "entity . . . located within California [that] caused[d] another person or entity [, i.e., Profax] to use [a telephone facsimile machine, computer, or other device] to send an unsolicited fax advertisement to a telephone facsimile machine," i.e., Plaintiffs' telephone facsimile machine.  For that reason, Balboa violated Bus. & Profs. Code § 17538.43(b).

14.    Balboa cannot avoid liability under Bus. Profs. Code § 17538.43 by arguing that *Chamber of Commerce of U.S. v. Lockyer*, 2006 WL 462482 (E.D. Cal. 2006) stands for the proposition that § 17538.43's interstate application is preempted by the TCPA, and that therefore, Balboa cannot be held liable for the fax advertisement it caused Profax, from New York to fax to Plaintiffs in Ohio. *Lockyer* was incorrectly decided, and courts throughout the United States have overwhelmingly rejected *Lockyer's* reasoning, ruling that the presumption against preemption does apply in the TCPA context, and that the TCPA does not preempt the interstate application of state anti-junk-fax/anti-telemarketing laws.  *E.g., Holster v. Gatco*, 618 F.3d 214, 218 (2nd Cir. 2010), *cert. denied*, 131 S. Ct. 2151, 179 L. Ed.2d 952 (2011); *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1547-48 (8th Cir. 1995); *Meilleur v. AT&T Inc.*, 2011 WL 5592647, **3-6 (W.D. Wash. 2011); *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, **6-11 (W.D. Wash.

2010); *TSA Stores Inc. v. Dept. of Agriculture and Consumer Servs.*, 957 So.2d 25, 27-29 (Fla. App. 2007); *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 712 N.W.2d 828, 836, 839-40 (N.D.), *cert. denied*, 549 U.S. 953 (2006); *Utah Div. of Consumer Protection v. Flagship Capital*, 125 P.3d 894, 900, 901 (Utah 2005).

15. Accordingly, Balboa's legal challenge to Plaintiffs' claims under Bus. & Profs. Code § 17538.43 is untenable, Plaintiffs' motion for summary judgment on these claims should be granted as well. Plaintiffs should be awarded individual damages of $500 against Balboa, and this Court should enjoin Balboa from continuing to violate Bus. & Profs. Code § 17538.43. *See* Bus. & Profs. Code § 17538.43(b)(2)(A), (B), (C).

Dated: November 16, 2012

/s/ Aytan Y. Bellin
AYTAN Y. BELLIN, ESQ.
BELLIN & ASSOCIATES

ROGER FURMAN, ESQ.

JOSEPH R. COMPOLI, JR., ESQ.

Attorneys for plaintiffs Michael A. Vandervort and U.S. Sample Services, Inc., on behalf of themselves and all others similarly situated

PLAINTIFFS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT