Nancy M. Barnes, Esq.
(*admitted pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Tel: (216) 566-5578; Fax: (216) 566-5800
E-mail: Nancy.Barnes@thompsonhine.com

Lance A. Brewer, Esq. CBN 125759
BREWER & BREWER
4533 MacArthur Boulevard, Suite 707
Newport Beach, California 92660
Tel: (714) 424-6300; Fax: (714) 424-4313
E-mail: Lbrewer@brewer-brewer.com

Attorneys for Defendant
BALBOA CAPITAL CORPORATION

**THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all other similarly situated,

Plaintiffs,

vs.

BALBOA CAPITAL CORPORATION,

Defendant.

CASE NO. : SACV11-01578 JST(JPRx)

**DEFENDANT BALBOA CAPITAL CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Date: December 14, 2012
Time: 2:30 p.m.
Judge: Hon. Josephine Staton Tucker

# TABLE OF CONTENTS

Page

I. SUMMARY JUDGMENT STANDARD ..... 2

II. FACTS/PROCEDURAL HISTORY ..... 3

III. THE TCPA AND JFPA ..... 7

IV. LEGAL ANALYSIS ..... 9

A. Balboa Is Entitled to Summary Judgment Because Its Opt Out Is Effective And Substantially Complies With The Regulation ..... 9

B. Members Of The Class Who Are Recipients Of Solicited Faxes Have No Claim Under The TCPA ..... 16

1. The TCPA does not restrict solicited faxes. ..... 16

2. There is no private right of action under the Regulations for solicited faxes because there is no violation of the statute. ..... 19

C. Plaintiffs Have No Claim Under California Law ..... 21

V. CONCLUSION ..... 23

Page

# TABLE OF AUTHORITIES

## Cases

*Anthony v. Poteet Hous. Auth.*, 306 Fed. Appx. 98 (5th Cir. 2009) .......... 18-19

*Black & Decker Corp. v. Comm'r.*, 986 F.2d 60 (4th Cir. 1993) .......... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 2

*Chamber of Comerce of the U.S. v. Lockyer*, 2006 U.S. Dist. LEXIS 8324 (E.D. Cal. Feb. 27, 2006) .......... 21-22

*Cicero v. U.S.Four, Inc.*, Franklin App. No. 07AP-310, 2007 Ohio 6600 .......... 16

*Cort v. Ash*, 422 U.S. 66 (2975) .......... 19-20

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) .......... 3

*Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 18114 (W.D. Wis. Mar. 9, 2009) .......... 10, 12, 15, 16, 17

*Magana Cathcart McCarthy v.CB Richard Ellis, Inc.*, 94 Cal. Rptr. 3d 109 (Cal. Ct. App. 2009) .......... 12

*Miller v. Painters Supply & Equip. Co.*, 2011 Ohio App. Lexis 3327 (8th Dist.) .......... 16

*MSG Jewelers, Inc. v. C & S Quality Printing, Inc.*, No. 07AC-028676 E CV, 2008 WL 6790582 (July 17, 2008) .......... 19

*Nack v. Walburg*, No. 4:10cv00478 AGF, 2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan. 28, 2011) .......... 16, 17, 18, 19

Page

*Neb. Pharmacists Ass'n., Inc. v. Neb. Dept. of Soc. Servs.*, 863 F. Supp. 1037 (D. Neb. 1994) .......... 18

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979) .......... 19

**Other Authorities**

28 U.S.C. §2342 .......... 20

47 C.F.R. §64.1200 .......... 9, 10, 13, 15, 16, 17

47 U.S.C. §227 .......... Passim

Cal. Bus. & Prof. Code §17538.43(b) .......... 1, 2, 21, 22

Fed. R. Civ. P. 56 .......... 2-3

In re Rules and Regulations Implementing the TCPA of 1991, 7 F.C.C.R. 8752 (1992) .......... 8

*Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967 (May 3, 2006) .......... 8, 11, 12, 14, 18

S.Rep. 109-76, 2005 W.L. 3751936 (June 7, 2005) .......... 8

Plaintiffs Michael Vandervort ("Vandervort") and U.S. Sample Services, Inc. (collectively, "Plaintiffs") have filed a class action against Defendant Balboa Capital Corporation ("Balboa") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and California Bus. & Prof. Code § 17538.43(b). These claims arise from the fact that Plaintiffs (who had an existing business relationship with Defendant) received a single fax from Balboa on May 21, 2010 ("the Fax"), (which was attached as Exhibit 1 to the Amended Complaint) (Dkt. 18). On October 23, 2012, the Court entered an Order granting, in part, and denying in part, Plaintiffs' Motion for Class Certification (Dkt. 54) and defining the relevant class with respect to the TCPA claim as:

> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a solicited or unsolicited facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

In that same order, the Court declined to certify a class with respect to Plaintiffs' California Claim (Counts IV and V). Uncontroverted Facts, "UF," 1.

The contents of the Fax are undisputed, including the fact that it did contain conspicuous opt-out language on the bottom of the first page which read: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885. The recipient may make a request to the sender not to send

any future faxes and failure to comply with the request within 30 days is unlawful" (the "Opt-Out"). UF 2.

First, Plaintiffs seek statutory damages under the TCPA because they claim that the Opt-Out did not include every single requirement outlined in the FCC Regulations.[1] Second, Plaintiffs individually seek damages under Cal. Bus. & Prof. Code § 17538(b) because they claim that they did not provide express permission or consent to receive fax advertisements as the statute requires. Because there are no genuine issues of material fact with respect to the Class's TCPA claim or Plaintiffs' individual California claim, Balboa respectfully requests that the Court grant this Motion, dismiss this case in its entirety, and enter judgment in its favor.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if Balboa shows that there is no genuine dispute as to any material fact and Balboa is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Balboa has the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to Plaintiffs to "cite to particular parts of materials in the record" supporting their assertion that a fact is "genuinely disputed." Fed. R.

[1] These damages are also sought on behalf of the Class, which includes recipients of both solicited and unsolicited fax advertisements. As set forth below, recipients of solicited facsimiles have no claim under the TCPA or the FCC regulations. Thus, in the alternative, Balboa seeks partial summary judgment with respect to the claims of recipients of solicited faxes.

Civ. P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

## II. FACTS/PROCEDURAL HISTORY

Balboa is a company that provides equipment leasing and financing to its customers. UF 3. As a part of its marketing efforts, it uses a number of methods to identify potential customers that might be interested in its products and services. UF 4. These methods include the use of direct mail, cold calls, and referrals from vendors who sell equipment. UF 5. In the past, Balboa used fax marketing to target communications to its active database. UF 6. The active database is defined as those companies who had either done business with Balboa, had submitted an application and therefore who were in the process of attempting to do business with Balboa, or had expressed interest in doing business with Balboa in the future. UF 7.

Balboa no longer uses fax marketing. UF 8. Although Balboa did engage in a fax marketing campaign at one time, UF 9, contrary to Plaintiffs' spurious characterizations, these campaigns were not "blast fax" campaigns. Rather, they were specifically targeted communications to clients or active prospects in Balboa's database. UF 10. At no time did Balboa ever acquire or use "a cold fax list." UF 11. Moreover, Balboa never sent faxes to anyone who was not either: 1) an existing customer; or 2) had submitted an application and therefore who were in

the process of attempting to do business with Balboa; or 3) had expressed interest in doing business with Balboa in the future. UF 12.

As a part of its marketing efforts, Balboa tracks its activities in a CRM database called SalesLogix. UF 13. If a prospect expressed interest in doing business with Balboa either immediately or in the future through Balboa's direct mail, or cold calling efforts, the prospect would be entered into the "active" SalesLogix CRM database. UF 14. During these communications, Balboa employees did not follow a set script, but they did sometimes ask prospects for permission to fax. UF 15. Moreover, Jake Dacillo specifically testified about obtaining consent for faxing.

> 5 Q. Let me ask you this, were the people to
> 6 whom you caused the faxes to be sent, were they ever
> 7 specifically asked whether they gave permission for you
> 8 to send them fax advertisements?
> 9 A. I'm sorry, would you repeat that again?
> 10 Q. Well, each time you wanted to send out a
> 11 fax advertising, you'd help put together a list of
> 12 people to send the fax to; correct?
> 13 A. Correct.
> 14 Q. And prior to the time you sent them the
> 15 fax, the fax advertisement at issue, were those people
> 16 on the list that you created ever called and asked for
> 17 permission to send them a fax advertisement?
> 18 A. Yes.

UF 16.

While it cannot be determined that everyone who was entered into the active database gave explicit permission to receive communication by way of a fax, it is

quite clear that these customers and prospective customers of Balboa were at least implicitly giving permission to receive communication, including faxes, from Balboa. UF 17.

During the time that it did fax marketing, Balboa relied upon ProFax, Inc., a fax communication service located in New York, to transmit the faxes and provide opt-out language. UF 18. Balboa retained ProFax as a reputable firm in the fax communication industry. UF 19. ProFax was well-versed in the requirements of the TCPA and it kept abreast of developments in TCPA laws and regulations and changed its practices to ensure compliance with the law. UF 20. Balboa relied upon ProFax to provide it with compliant opt-out language and to ensure compliance with the TCPA. UF 21. For its part, ProFax transmitted faxes to the clients or prospects that Balboa identified. UF 22. While it appeared that the opt-out language on the Fax Plaintiffs received was provided by ProFax, ProFax could not confirm that the notice on the Fax was substantially similar to other faxes that were sent by Balboa. UF 23. Moreover, ProFax admitted that its opt out language evolved over time. UF 24.

In order to ensure compliance with the TCPA, Balboa maintained a filter within its SalesLogix CRM database that prevented customers or prospects from receiving faxes if they had opted out or indicated that they did not want to receive faxes. UF 25. ProFax assisted with this opt out process and provided Balboa with lists of people who had opted out through the opt-out mechanisms it provided. UF

26. In addition, account representatives who were notified by customers that they did not wish to receive faxes would indicate that fact in the customer's record in the SalesLogix CRM database. UF 27.

Plaintiffs bring this action based upon receipt of a single-page fax dated May 21, 2010. The Fax was sent because Balboa had an Existing Business Relationship ("EBR") with Plaintiffs, and who were thus in the active SalesLogix CRM database. UF 28. In addition, after Plaintiffs received the Fax, they took advantage of the opt-out mechanism identified on the Fax. UF 29.

Plaintiffs make no effort to dispute the fact that they had an EBR with Balboa. UF 30. Balboa's records demonstrate that Plaintiff responded to a direct mail inquiry, was assigned to a sales representative who made repeated calls to Plaintiff, and was activated in the database based on his inquiry. UF 31. Plaintiffs cannot refute that evidence.[2] While Vandervort does not specifically recall the phone calls with Balboa that occurred in 2006, unsurprisingly, he cannot deny that they occurred since the calls were made more than five years ago. UF 33. In addition, Balboa's business records include contemporaneous notations of three phone calls as well as Plaintiffs' response to a direct mail inquiry requesting information about Balboa services. UF 34. In addition, Vandervort admitted that he provided his fax number to vendors if asked. UF 35.

[2] Moreover, Plaintiffs' fax number is readily available to anyone who wants it: it is displayed on the Internet on their company website; in industry directories; and on company letterhead and business cards. UF 32.

The Fax Plaintiffs received contained the Opt-Out. UF 36. The Opt-Out provided a toll-free mechanism that was available 24 hours a day and seven days a week. UF 37. Balboa's records indicate that Vandervort opted out of receiving faxes on June 16, 2010. UF 38. A notation was promptly made on Plaintiffs' account of the opt out request. UF 39. Plaintiffs admit that they received no additional faxes after opting out. UF 40. Furthermore, Plaintiffs cannot identify any putative class member who ever received a fax after opting out. UF 41. The opt-out process was simple. A recipient could call the toll free number or go to the website, either of which would prompt them to simply enter their fax number and the PIN contained in the opt-out notice. UF 42. A recipient could also fax an opt-out request directly to Balboa at the number provided on the fax. Byrne Dep. 113:8-114:14. These methods were available 24 hours a day. UF 44. By following the simple instructions, recipients would be able to opt out of receiving future faxes. UF 45.

## III. THE TCPA AND JFPA

The TCPA of 1991 prohibited, inter alia, the sending of an "unsolicited advertisement" via a fax machine. An "unsolicited" fax advertisement was defined as one transmitted without the recipient's "prior express invitation or permission." In 1992, the FCC, in adopting rules to implement the TCPA, concluded that fax advertisements "from persons or entities who have an established business relationship [EBR] with the recipient can be deemed to be invited or permitted by

the recipient." In re Rules and Regulations Implementing the TCPA of 1991, 7 F.C.C.R. 8752, 8779 n. 87 (1992). In July 2003, the FCC issued new junk fax provisions, in which the FCC reversed its prior position on the effect of an EBR, "effectively eliminating the EBR exception to the general prohibition on unsolicited fax advertisements. Instead, the FCC concluded that a recipient's express invitation or permission must be in writing . . . ." S. Rep. 109-76, 2005 WL 3751936, at *2 (June 7, 2005).

In response to the FCC's announced intention essentially to eliminate the EBR exception, Congress, in 2005, enacted the Junk Fax Protection Act ("JFPA"), which amended the TCPA and codified the EBR exception that the FCC had adopted prior to 2003. Section 227(b)(1)(C), now makes it unlawful:

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless —
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; [and]
>
> * * *
>
> (iii) the unsolicited advertisement contains a notice meeting the requirement under 2(D) [clear and conspicuous notice on the first page of the unsolicited advertisement, with said notice stating that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements].

Subsection 227(b)(3) provides for a private right of action as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that state —
> (A) an action **based on a violation of this subsection** or the regulations prescribed under this subsection **to enjoin such violation**,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.

*Id.* (emphasis added).

In 2006, to implement the 2005 amendments to the statute, the FCC amended its regulations under the TCPA. The regulation relevant here, 47 C.F.R. § 64.1200, provides as follows:

(a) No person or entity may:

* * *

(3) Use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless —
(i) The unsolicited advertisement is from a sender with an [EBR] with the recipient; and
(ii) The sender obtained the number of the telephone facsimile machine through [certain specified ways]; and
(iii) The advertisement contains [an opt-out notice meeting certain specified requirements].
(iv) A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section. . . .

*Id.* (emphasis added).

## IV. LEGAL ANALYSIS

### A. Balboa Is Entitled to Summary Judgment Because Its Opt Out Is Effective And Substantially Complies With The Regulation.

Balboa's Motion for Summary Judgment should be granted with respect to the claims of the Class because the Fax's Opt-Out, on which the claim is based, is

sufficient under the TCPA as a matter of law.[3] When it promulgated regulations to address the new opt-out notice requirement, the FCC announced:

> The Commission is persuaded that rules specifying the font type, size and wording of the notice might interfere with fax senders' ability to design notices that serve their customers. However, the Commission makes some additional determinations about the opt-out notice so that facsimile recipients have the information necessary to avoid future unwanted faxes.

*Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25,969 (May 3, 2006) (to be codified at 47 CFR pt. 64) (emphasis supplied). The only federal court to address the issue of strict compliance with the wording of the regulation at issue here relied on this very language in finding that "[t]he commission's comments make it clear that a proper opt-out notice need not contain any specific wording." *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 18114, *13 (W.D. Wis. Mar 9, 2009).

Furthermore, Congress and the FCC have outlined the requirements pertaining to the required opt-out notice to be placed on unsolicited faxes but have declined to require inclusion of specific wording. *See* 47 U.S.C. § 227 (b)(1)(C); 47 C.F.R. § 64.1200(a)(3)(iii). The FCC states that notice on an unsolicited fax "must include a domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender and . . . at least one cost-free mechanism for transmitting an opt-out request." *Id.* (stating that a toll-free

---

[3] As will be discussed below, an Opt-Out is not even required on solicited fax ads.

number qualifies as a cost-free opt-out mechanism); *see also* 47 U.S.C. § 227 (b)(1)(D)(ii). The notice must also be clear and conspicuous on either the top or bottom of the first page of the fax transmission so that the notice is "apparent to a reasonable consumer." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005, 71 FR 25967-01, 25,969 (May 3, 2006); *see also* 47 U.S.C. § 227 (b)(1)(D)(i).

The notice and the language at the bottom of the Fax contain all the necessary components required by § 227 (b)(1)(C) and § 64.1200(a)(3)(iii) and achieve the objectives of the requirement – namely, making the opt-out process "apparent to a reasonable consumer." *Id.* Specifically, the bottom paragraph on the first page of the Fax states, "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful." UF 2. Just above this language is the fax number for Balboa.[4] UF 1.

As required by the FCC, Balboa's notice serves the purpose of the statute by giving recipients of a fax an easy mechanism for avoiding future faxes. *See* 71 Fed. Reg. at 25,969. The notice on the Fax was at the bottom of the page and

---

[4] Nothing in the Regulations or the TCPA states that all information must be contained in a single paragraph

included a toll free number to contact as an opt-out mechanism and was conspicuous and easily readable. UF 1-2. Just above the notice was a fax number at which the Plaintiffs also could have opted out of receiving the faxes. UF 1. Finally, the notice clearly lays out how a reasonable consumer can opt-out of receiving faxes and therefore satisfies the intentions and requirements of the statute.

In *Landsman & Funk*, the plaintiff challenged the wording of the opt-out provision on the defendant's fax as insufficient, because it did not contain the precise wording used in the regulations regarding compliance within 30 days. While the court agreed that the opt-out notice did not replicate the regulation's language, it also held that despite this technical deficit, the notice was sufficient to satisfy the TCPA's substantive concerns and granted the motion to dismiss. *Id.* at *15-16. Similarly, this Opt-Out substantially complies with requirements of the regulations. *See Magana Cathcart McCarthy v. CB Richard Ellis, Inc.*, 94 Cal. Rptr. 3d 109, 112 (Cal. Ct. App. 2009) (noting trial court's ruling that "substantial compliance is a defense to a claim of failure to comply with the opt-out mechanisms of the statute"). The Opt-Out both satisfies the purpose of the regulations -- which is to allow recipients of faxes an opportunity to decline to receive more faxes—and is effective in that it prevents the sending of future faxes to people who opt out -- which Mr. Vandervort did in fact do. UF 38.

Furthermore, Plaintiff has no evidence that he or any other person received additional faxes after calling the toll-free number or logging on to the website. UF 40-41. Although it is true the last paragraph did not include a fax number within its immediate text, it was located one inch above the text at the bottom of the page. UF 1. Nothing in the regulations indicates that all of the information needs to be in a single paragraph.

The language also did not recite step-by-step instructions for opting out of future faxes, but if recipients followed the directions provided (as Mr. Vandervort did), they would be prompted to provide their fax number and PIN. UF 42. There is no question that the mechanisms provided offered recipients a meaningful and reasonable opportunity both to revoke any consent that was given and to stop receiving faxes in the future. The recipient could revoke consent simply by calling a toll-free number, going to an Internet website and following the instructions provided, or faxing in the request. UF 42-43.

Taken to its logical extreme, Plaintiffs' requested language would end up dominating the content of the entire fax. Section 47 C.F.R. § 64.1200 (a)(3)(v) reads as follows:

> (v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if-
> (A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

> (B) The request is made to the telephone number, facsimile number, Web site address or e-mail address identified in the sender's facsimile advertisement; and
> (C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

Should the notice include this further detailed information, the opt-out notice would come to dominate any fax sender's message – taking up nearly a half page in space, and hinder the sender's ability to design advertisements that serve their customers, contrary to the interpretation of the FCC. *See* 71 FR 25967-01, 25,969. Moreover, the FCC was clear that it was not dictating the contents or wording of the notice. Specifically, the FCC states:

> Under the new rules, senders of facsimile advertisements <u>must include a notice describing the procedures for opting out of future faxes</u>. The notice must be clear and conspicuous and located on the first page of the advertisement. The rules require that an opt-out notice include a cost-free mechanism for the recipient to request not to receive future faxes. The cost-free mechanism must include a toll-free telephone number, toll-free facsimile number, Web site address, <u>or</u> e-mail address. If the recipient makes a request not to receive future fax advertisements, the sender must honor that request within the shortest reasonable time, not to exceed 30 days.

71 FR 25967-01, 25,974 (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(3)(iii) (emphasis added). Balboa's Opt-Out complies with each and every requirement set forth above.

Defendant's notice lists a website and a toll free number where a recipient can send an opt-out request. UF 2. Defendant's notice further states, "[T]he

recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful." UF 2. Plaintiff contends that these two sentences fail to inform recipients that any opt-out request must be made in a specific form for defendant to be obligated to honor the request. Plaintiff's contention is an unpersuasive game of semantics. Balboa's notice on the Fax provides a toll free phone number, a website and full contact information for Balboa, including its fax and phone number. UF 1. This information is clear and readable and all contained on the single page document. Moreover, it fully complied with the requirements outlined on the FCC's own website. UF 46. Defendant's notice makes it clear that a recipient has to use the specified mechanisms, and enter a PIN. UF 2. It is common sense that the recipient will have to follow the prompts and enter required information when opting out. Thus, Balboa's Opt-Out satisfies 47 C.F.R. § 64.1200(a)(3)(iii)(C) by sufficiently setting forth the requirements of a proper opt-out request. *See Landsman & Funk, P.C.*, 2009 U.S. Dist. LEXIS 18114 at *17-18. Because there are no genuine issues of material fact with respect to the TCPA claims, the Court should grant summary judgment on this claim as to Plaintiffs and the Class.

**B. Members Of The Class Who Are Recipients Of Solicited Faxes Have No Claim Under The TCPA.**

**1. The TCPA does not restrict solicited faxes.**

If a fax is "solicited" or there is otherwise consent to receive it, there cannot be a TCPA violation. 47 U.S.C. § 227(b)(1)(C) (making it unlawful for a person to "use any telephone facsimile machine" to send an "unsolicited advertisement"); *see also Nack v. Walburg*, No. 4:10cv00478 AGF, 2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan. 28, 2011) ("This Court concludes, however, that 47 C.F.R. §64.1200(a)(3)(iv) does not apply to the facts of this case, which does not involve an "unsolicited" fax advertisement."); *Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114, *16 ("the statute refers to unsolicited fax advertisements, not solicited fax advertisements like the fax advertisements defendant sent to plaintiff"); *Cicero v. U.S. Four, Inc.*, Franklin App. No. 07AP-310, 2007 Ohio 6600, ¶ 42 (TCPA only applies to unsolicited faxes). Likewise, "the [federal regulation] in question, 47 C.F.R. § 64.1200(a)(3)(iv), purports, on its face, to apply only to unsolicited faxes." *Nack*, 2011 U.S. Dist. LEXIS 8266, *11 (rejecting assertion that all faxes, whether solicited or unsolicited, must contain opt-out language). "Simply put, the above provisions, and the opt-out notice requirements thereunder, do not apply to fax transmissions unless they constitute unsolicited advertisements." *Miller v. Painters Supply & Equip. Co*, 2011 Ohio App. Lexis 3327, ¶19 (8th Dist.).

The only federal court to decisively address the question presented here: namely,w hether the FCC's opt-out requirements applied to *solicited* facsimiles came to the conclusion that no TCPA violation could be asserted by recipients of solicited facsimiles. *Nack*, 2011 U.S. Dist. LEXIS 8266 at *15-16. In *Nack*, the uncontroverted facts showed that the defendant's general practice was for its employees to make cold calls and obtain permission to send a fax before transmitting it. *Id.* at *2-3. Additionally, there was specific evidence that the defendant called the plaintiff's office, spoke to his answering service, and received permission to fax material to the plaintiff. *Id.* at *3. At the summary judgment stage, the plaintiff conceded that the defendant sent him the fax at issue with his permission. *Id.* at *3-4. Accordingly, his only remaining claim was that the fax violated the statute because it lacked a notice provision -- a claim that the court dismissed. *Id.* at *9-10. Because Plaintiff could not show lack of consent, the court rightfully dismissed the plaintiff's entire case under the TCPA. *See also Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114, *4 (finding that the plaintiffs had consented to receive the fax and that the fax was therefore not covered by the TCPA: "By sending its fax number to defendant, plaintiff cannot assert that the fax advertisements it received from defendant were 'unsolicited,' so as to fall within the category of fax advertisements regulated under 47 U.S.C. § 227.").

The *Nack* court interpreted 47 C.F.R. § 64.1200(a)(3)(iv) to harmonize with the statute by finding that subsection (iv), on its face, applies only to unsolicited

faxes. *Id.* at *11. The *Nack* court quoted the May 3, 2006 Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967 (May 3, 2006), in which the FCC states several times that its rule requiring an opt-out notice applies to all unsolicited fax advertisements. *Id.* at *12 (citing 71 Fed. Reg. at 25970, 25976). Additionally, the FCC had stated: "[t]he Commission notes that the opt-out notice requirement only applies to communications that constitute unsolicited advertisements." *Id.* (citing and quoting 71 Fed. Reg. at 25971). Because the opt-out notice regulation only applies to an "unsolicited" fax, those members of the Class who received solicited faxes have no claim, and the Motion for Summary Judgment should be granted as to members of the class who received solicited facsimile. *Id.* at *15-16.

The regulations issued by the FCC, 47 C.F.R. § 64.1200(a)(3), clearly do not apply to recipients of solicited fax advertisements. "When a court construes an administrative regulation, the normal tenets of statutory construction are generally applied." *Neb. Pharmacists Ass'n, Inc. v. Neb. Dep't of Soc. Servs.*, 863 F. Supp. 1037, 1046 (D. Neb. 1994) (citing *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 65 (4th Cir. 1993)). "Additionally, the regulation must of course be 'interpreted so as to <u>harmonize with</u> and further <u>and not to conflict with</u> the objective of the statute it implements.'" *Id.* (citations omitted)(emphasis added). A "regulation should be interpreted in a manner that effectuates its central purposes." *Anthony v. Poteet*

*Hous. Auth.*, 306 Fed. Appx. 98, 101 (5th Cir. 2009) (citation omitted). As set forth above, the controlling statute only applies to unsolicited facsimiles.

The only case law cited or found addressing whether, under 47 C.F.R. § 64.1200(a)(3), an invited fax advertisement must include an opt-out notice is a Missouri state trial court case, *MSG Jewelers, Inc. v. C & S Quality Printing, Inc.*, No. 07AC-028676 E CV, 2008 WL 6790582 (July 17, 2008). The court there concluded that where a party "previously consented to be sent advertising faxes," a fax advertisement sent to the party still had to contain an opt-out notice, pursuant to the above-noted FCC regulation. *Id.* at 2. While the language of the holding in that case is broad, it is not binding on this Court and fails to go through a detailed analysis of the statute and the regulations, which is required here. *Cf. Nack.*

**2. There is no private right of action under the Regulations for solicited faxes because there is no violation of the statute.**

The question of whether a statute creates a private cause of action is one of statutory construction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). In determining whether the TCPA, as amended by the JFPA, creates a private right of action against a person who sent an advertising fax with the recipient's specific express permission, a court should consider such factors as whether the plaintiff falls within the class the statute sought to benefit, whether there is legislative intent to create a private right of action, and whether the cause of action is consistent with the legislative scheme. *Cort v. Ash*, 422 U.S.

66, 78 (1975). In this case, the claims asserted on behalf the recipients of solicited faxes do not meet this test. Rather, under the TCPA, as amended by the JFPA, Congress created a private cause of action in favor of those parties who receive an "unsolicited fax advertisement" and against fax senders who send "unsolicited fax advertisements." Specifically, a cause of action exists for violating the statutory subsection (which only applies to unsolicited faxes) and the regulations set forth and prescribed under subsection (b) that enjoin violations of that subsection of the statute. Again, the statute on its face is limited to "unsolicited fax advertisements." 47 U.S.C. § 227(b)(3)(A)-(C) (2005). Accordingly, even if the Court finds that the regulations were violated by Balboa, the private right of action is limited to regulations that enjoin violations of the statute. Nothing in the TCPA gave the FCC the right to create a private right of action with respect to solicited facsimiles an area that Congress itself did not choose to restrict.

Finally, the Hobbs Act has no application to this analysis.[5] Balboa is not asking the Court to enjoin, set aside or suspend the FCC regulation at issue. Rather, Balboa is asking the Court to simply hold that the regulation, while wholly

[5] The Hobbs Act, 28 U.S.C. § 2342, establishes the jurisdiction of the federal courts of appeals, stating, "[t]he court[s] of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of — (1) all final orders of the [FCC] made reviewable by section 402(a) of title 47." Title 47 U.S.C. § 402(a), in turn, states, "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."

valid, does not apply to the facts of this case with respect to recipients of solicited facsimiles.

### C. Plaintiffs Have No Claim Under California Law.

Plaintiffs cannot prevail on a claim under Cal. Bus. & Prof. Code, sec. 17538.43(b), which provides that:

> It is unlawful for a person or entity, if either the person or entity or the recipient is located within California, to use any telephone facsimile machine, computer, or other device to send, or cause another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine.

While this state law is more restrictive than the TCPA, its scope and application are severely limited such that Plaintiffs have no cognizable claim.

It is undisputed that ProFax, Inc. sent the Fax from New York. UF 47. Because the Fax was not transmitted from California[6] to a California resident, there is no violation of the state statute with respect to Plaintiffs.[7] *See Chamber of Commerce of the U.S. v. Lockyer*, 2006 U.S. Dist. LEXIS 8324 (E.D. Cal. Feb. 27, 2006). Specifically, the *Lockyer* court examined the question of whether California's state fax law was preempted by the TCPA and ruled that the law's application was limited solely to intrastate fax transmission. *Id.* at *23. Moreover, the court found that, "to the extent California attempts to regulate the interstate transmission of unsolicited facsimile advertisements through SB 833, it has

[6] There is no dispute that Balboa is located in California.

[7] Even if the Court finds that the faxes were sent from a California entity, it is undisputed that Plaintiffs are located in Ohio.

exceeded its jurisdiction rendering that portion of the statute violative of the Supremacy Clause and, therefore, constitutionally infirm." *Id.*

Vandervort has admitted that he is not a resident of California (UF 49); that the Fax was not received in California (UF 50); that U.S. Sample Services is not incorporated in California (UF 51); it has no offices in California (UF 52); and it is not licensed to do business in California (UF 53). As a result, Plaintiffs have no claim under California law. Plaintiffs have previously suggested to the Court that it should disregard the only California federal court decision which addresses the constitutionality of applying Cal. Bus & Prof. Code § 17538.43(b) to <u>interstate</u> facsimile transmissions because – in Plaintiffs' opinion – the decision "was wrongly decided." In the six years that have passed since the case was decided, there does not appear to be a single reported case in which a California court questioned or overturned the analysis of *Lockyer.*

As laid out in *Lockyer*, the federal scheme permits a party to transmit unsolicited facsimile advertisements to recipients with whom they have an "established business relationship" provided those advertisements bear an opt-out alternative. The California statute omits the established business relationship exception and, instead, requires a sender to obtain express prior consent before transmitting any facsimile advertisements into or out of California.

As a result, the California law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress because it eliminates

the established business relationship exception that Congress expressly codified in the Junk Fax Protection Act and nullifies Congress's decision that unsolicited facsimile advertisements be governed by an "opt-out" rather than an "opt-in" scheme. As a result, Plaintiffs' claim under California law should be dismissed with prejudice because the law does not apply to the Fax – which is indisputably an interstate – rather than intrastate – fax.

## V. CONCLUSION

For the reasons set forth herein and as supported by the papers filed herewith and the authorities cited herein, Defendant Balboa respectfully requests that the Court grant this Motion in its entirety and dismiss all claims against it and award such other relief as it deems appropriate.

Dated: November 16, 2012

THOMPSON HINE, LLP

/s/ Nancy M. Barnes
NANCY M. BARNES
Attorney for Defendant
BALBOA CAPITAL CORPORATION

# PROOF OF SERVICE

STATE OF OHIO, COUNTY OF CUYAHOGA

I am employed in the aforesaid County, and State of Ohio; I am over the age of eighteen years and not a party to the within action; my business address is 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114.

On November 16, 2012, I served the following documents:

**DEFENDANT BALBOA CAPITAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

_XX___ BY ELECTRONIC SERVICE: by electronic filing with the Clerk of the Court using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an email address of record who have filed a Notice of Consent to Electronic Service in this action.

upon all interested parties as follows:

Aytan Y. Bellin, Esq.
Bellin & Associates, LLC
85 Miles Avenue
White Plains, NY 10606

Roger Furman, Esq.
7485 Henefer Avenue
Los Angeles, CA 90045

Joseph Compoli, Esq.
612 East 185th Street
Cleveland, OH 44119

Lance A. Brewer, Esq.
Brewer & Brewer
4533 MacArthur Boulevard
Suite 707
Newport Beach, CA 92660

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under the penalty of

perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 16, 2012, at Cleveland, Ohio.

By: *s/Nancy M . Barnes*
Nancy M Barnes
Declarant