Nancy M. Barnes, Esq.
(*admitted pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Tel: (216) 566-5578; Fax: (216) 566-5800
E-mail: Nancy.Barnes@thompsonhine.com

Lance A. Brewer, Esq.  CBN 125759
BREWER & BREWER
4533 MacArthur Boulevard, Suite 707
Newport Beach, California 92660
Tel: (714) 424-6300; Fax: (714) 424-4313
E-mail: Lbrewer@brewer-brewer.com

Attorneys for Defendant
BALBOA CAPITAL CORPORATION

## THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all other similarly situated,<br><br>        Plaintiffs,<br>vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>        Defendant. | CASE NO. : SACV11-01578 JST(JPRx)<br><br>**DEFENDANT BALBOA CAPITAL CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 11, 2013<br>Time:  2:30 p.m.<br>Judge: Hon. Josephine Staton Tucker |

# TABLE OF CONTENTS

I.     SUMMARY JUDGMENT STANDARD ............................................ 2

II.    FACTS/PROCEDURAL HISTORY ............................................... 2

III.   THE TCPA AND JFPA ............................................................... 6

IV.   LEGAL ANALYSIS .................................................................... 8

     A.      The Application of the Opt Out Regulation
to Solicited Facsimiles Is Outside the
Scope of the TCPA, And Therefore Plaintiffs'
Motion Should Be Denied As A Matter of Law ........................... 8

          1.      The *Chevron* Standard ................................................. 8

          2.      Congressional Intent Is Clear and Unambiguous .............. 9

          3.      There Is No Private Right Of Action Under
The Regulations For Solicited Faxes Because
There Is No Violation Of The Statute ............................... 14

     B.      Balboa's Opt-Out Substantially Complies With The
Regulation ...................................................................... 15

          1.      No Specific Wording Is Required ..................................... 16

          2.      Substantial Compliance is Sufficient ............................... 17

          3.      Including All Information Demanded
by Plaintiffs Would Undermine the
Finding of the FCC ...................................................... 19

     C.      The Hobbs Act Has No Application Here Because
Balboa Is Not Seeking To Invalidate the FCC
Regulation or Order ......................................................... 20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

D.    Plaintiffs Have No Claim Under
      California Law ........................................................ 20

      1.    The VFPA Preempts The California
            Fax Law........................................................ 22

      2.    The California Law Is Preempted
            By The Savings Clause ............................... 23

      3.    The FCC  Believes That State
            Laws Are Preempted .................................. 23

V.    CONCLUSION ......................................................... 24

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*A Fast Sign Co. v. American Home Servs., Inc.,*
    2012 WL 5381254 (Ga., Nov. 21, 2012) ..................................................... 7

*All Am. Painting LLC v. Financial Solutions,*
    315 S.W. 3d. 719 (Mo. 2010) ................................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 2

*Chamber of Commerce of the U.S. v. Lockyer,*
    2006 U.S. Dist. LEXIS 8324
    (E.D. Cal. Feb. 27, 2006) ...................................................... 21, 22, 23

*Charvat v. Telelytics, LLC,*
    2006 Ohio 4623 (10th Dit. 2006) .......................................................... 22

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
    467 U.S. 837 (1984) ......................................................................... 8, 9

*Cicero v. U.S. Four, Inc.*, Franklin App. No.
    07AP-310, 2007 Ohio 6600) ............................................................... 13

*Cincinnati Tel. Co. v. Public Utilities Comm'n of Ohio,*
    466 N.E.2d. 848 (Ohio 1984) ............................................................. 20

*Civil Design Solutions, Inc. v. Olympia Funding, Inc.,*
    207 Pa. Dist. & Ct. Dec. LEXIS 346
    (All. Cty. Aug. 2, 2007) ...................................................................... 8

*Cort v. Ash*, 422 U.S. 66 (1975) ........................................................................ 15

*Davis v. Michigan Dep't of Treasury,*
    489 U.S. 803 (1989) ............................................................................ 9

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ............................................................................ 9

iii

*FEC v. Democratic Senatorial Campaign Committee*,
   454 U.S. 27 (1981) ................................................................. 8

*Fackelman v. Micronix*, 2012 Ohio 5513
   (Cuy. Cty. Nov. 29, 2012) ................................................. 13, 14

*Gwaltney of Smithfield, Ltd. v.*
   *Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) ....................................... 9

*Holster v. Gatco*, 618 F.3d. 214 (2d Cir. 2010) ................................................. 21

*Hovila v. Tween Brands, Inc.*,
   2010 WL 1433417 (W.D. Wash. 2010) ................................................. 22

*In re NOS Communications*,
   495 F.3d. 1052 (9th Cir. 2007) ................................................. 23

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................. 2

*In re Response Card Marketing, Inc.*,
   27 FCCR 3895 (April 10, 2012 ................................................. 17

*Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702
   (D.D.C. June 15, 2007) ................................................. 3

*Landsman v. Funk*, 2009 U.S. Dist. LEXIS 18114 ..................... 13, 14, 16, 18

*Leavitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143
   (D. Md. May 25, 2007) ................................................. 8

*Magana Cathcart McCarthy v.*
   *CB Richard Ellis, Inc.*, 94 Cal. Rptr. 3d 109
   (Cal. Ct. App. 2009) ................................................. 17

*Meilleur v. AT&T, Inc.*, 2011 WL 5592647
   (W.D. Wash. 2011) ................................................. 22

*Miller v. Painters Supply & Equip. Co.*,
   2011 Ohio App. LEXIS 3327 (8th Dist.) ................................................. 13

iv

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*Nack v. Walburg*, No. 4:10cv00478 AGF,
   2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan 28, 2011) ...................... 13, 14

*Patriotic Veterans Inc. v. State of Indiana*,
   821 F. Supp. 2d. 1074 (S.D. Ind. 2011) ................................... 22

*Perrin v. United States*, 444 U.S. 37 (1979) ............................... 9

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ............................................ 12

*Siding & Insulation Co. v. Beachwood
   Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012) ..................... 8

*State ex rel. Stenehjem v. FreeEats.com, Inc.*,
   712 N.W.2d 828 (N.D. 2006) ............................................. 22

*TSA Stores Inc. v. Dept. of Agriculture and
   Consumer Servs.*, 957 So.2d. 25
   (Fla. App. 2007) ....................................................... 22

*Transamerica Mortgage Advisors, Inc. (TAMA)
   v. Lewis*, 444 U.S. 11 (1979) ........................................14-15

*U.S. v. Laerdal Mfg. Corp.*, 73 F.3d 852 (9th Cir. 1995) .................... 3

*Utah Div. of Consumer Protection v. Flagship Capital*,
   125 P.3d 894 (Utah 2005) ............................................... 22

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
   2012 U.S. Dist. LEXIS 133567
   (W.D. Mich. Sept. 19, 2012 .............................................. 8

*Wilderness Soc'y v. U.S. Fish & Wildlife Service*,
   353 F.3d 1051 (9th Cir. 2003) ........................................... 9

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..................................... 22

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Zimmerman v. State of Ore. Dept. of Justice,*
    170 F.3d 1169 (9th Cir. 1999) ............................................................ 8-9

**Other Authorities**

18 FCC Fcd 14014 (FCC 2003) ............................................... 23-24, 25

28 U.S.C. § 2342 . ....................................................................... 20

47 C.F.R. § 64.1200 ........................................... 7, 8, 13, 16, 19

47 U.S.C. § 402(a) ....................................................................... 20

71 Fed. Reg. 25967 ............................................................... 19

71 Fed. Reg. at 25,969 .................................................... 16-17, 19

Cal. Bus. & Prof. Code § 17538.43(b) ............................ 1, 2, 20, 21

Fed. R. Civ. P. 56 .............................................................. 2

*In re Rules and Regulations Implementing the TCPA*
    *of 1991*, 7 F.C.C.R. 8752 (1992) ........................................ 6

Junk Fax Protection Act of 2005 ................................ 6, 9-10, 14, 16

Sen. Rep. 109-076 (June 7, 2005) ............................... 6, 10-11

Telephone Consumer Protection  Act,
    47 U.S.C. § 227 ....................................................Passim

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Michael Vandervort ("Vandervort") and U.S. Sample Services, Inc. (collectively, "Plaintiffs") filed a class action against Defendant Balboa Capital Corporation ("Balboa") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Cal. Bus. & Prof. Code § 17538.43(b) ("the California Code"). These claims arise from the fact that Plaintiffs (who had an existing business relationship with Defendant) received a single fax from Balboa on May 21, 2010 ("the Fax"), (attached as Exh. 1 to the Am. Compl.) (Dkt. 18). On October 23, 2012, the Court entered an Order granting, in part, and denying in part, Plaintiffs' Motion for Class Certification (Dkt. 54) and defining the relevant class with respect to the TCPA claim ("the Class") as:

> All persons in the United States from October 12, 2007 through November 23, 2011 to whom Defendant sent or caused to be sent a solicited or unsolicited facsimile advertisement that advertised the commercial availability or quality of any property, goods, or services, and contained an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit 1 to the First Amended Complaint.

In that same order, the Court declined to certify a class with respect to Plaintiffs' California Claim (Counts IV and V).

The contents of the Fax are undisputed, including the fact that it did contain conspicuous opt-out language on the bottom of the first page which read: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful" (the "Opt-Out"). (Dkt. 18, Exh. 1.)

Plaintiffs have moved for summary judgment on the basis of two arguments. First, they contend that Balboa violated the TCPA and its regulations with respect to each member of the Class as the result of its allegedly deficient opt-

1

out notice.  Second, they argue that Balboa violated the California Code with respect to Vandervort's individual claim because it sent a facsimile without Vandervort's express consent.  For the reasons set forth herein, Plaintiffs' arguments fail as a matter of law.  In addition, their Motion should be denied because genuine issues of material fact exist which prevent the Court's entry of summary judgment at this time.[1]

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is only proper if Plaintiffs show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Plaintiffs have the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to Balboa to "cite to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

## II.     FACTS/PROCEDURAL HISTORY

Balboa provides equipment leasing and financing to its customers.  DS1.[2] In the past, Balboa used fax marketing to target communications to its active database.  DS 2, 26.  The active database is defined as those companies who had either done business with Balboa, had submitted an application and therefore were in the process of attempting to do business with Balboa, or had expressed interest in doing business with Balboa in the future.  DS 27.

---

[1] For the most part, both parties' Motions for Summary Judgment are dependent on issues of law.  Nevertheless, Plaintiffs have included some misstatements of the record and other factual allegations which remain in dispute.

[2] "DS" refers to Defendant's Statement of Genuine Issues of Fact in Opposition to Plaintiff's Motion for Summary Judgment, filed herewith.

2

Balboa no longer uses fax marketing.[3] DS 2, DS 28.  Although Balboa did engage in a fax marketing campaign at one time, these communications were specifically targeted to clients or active prospects in Balboa's database.  DS 30.  At no time did Balboa <u>ever</u> acquire or use "a cold fax list."  DS 31.  Moreover, Balboa <u>never</u> sent faxes to anyone who was not either: 1) an existing customer; or 2) someone who had submitted an application; or 3) someone who had expressed interest in doing business with Balboa in the future.  DS 32.  There is no record of who received the faxes at issue or where those recipients were located.  DS 17.

As a part of its marketing efforts, Balboa tracks its activities in a CRM database called SalesLogix.  DS 33.  During these communications with prospects, Balboa employees did not follow a set script, but they did sometimes ask prospects for permission to fax.  DS 35.  Moreover, Jake Dacillo specifically testified about obtaining consent for faxing.

```
 5    Q. Let me ask you this, were the people to
 6    whom you caused the faxes to be sent, were they ever
 7    specifically asked whether they gave permission for you
 8    to send them fax advertisements?
 9    A. I'm sorry, would you repeat that again?
10    Q. Well, each time you wanted to send out a
11    fax advertising, you'd help put together a list of
12    people to send the fax to; correct?
13    A. Correct.
14    Q. And prior to the time you sent them the
15    fax, the fax advertisement at issue, were those people
16    on the list that you created ever called and asked for
17    permission to send them a fax advertisement?
```

[3] This fact is undisputed.  Accordingly, Plaintiffs claim for injunctive relief in this regard is without merit.  *U.S. v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995) (A district court cannot issue an injunction unless "there exists some cognizable danger of recurrent violation."  The determination that such danger exists must "be based on appropriate findings supported by the record.") (citations omitted); *see also Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702, *7 (D.D.C. June 15, 2007) (denying injunctive relief where record was silent with respect to ongoing activities).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

18     A. Yes.

DS 36.  While it cannot be determined that everyone who was entered into the active database gave explicit permission to receive faxes, it is quite clear that these customers and prospective customers of Balboa were at least implicitly giving permission to receive communications, including faxes, from Balboa.  DS 37.

During the time that it participated in fax marketing, Balboa relied upon ProFax, Inc., a fax communication service located in New York, to transmit the faxes and provide opt-out language.  DS 3, DS 38.  Balboa retained ProFax as a reputable firm in the fax communication industry.  DS 39.  ProFax was well-versed in the requirements of the TCPA, and it kept abreast of developments in TCPA laws and regulations and changed its practices to ensure compliance with the law.  DS 40.  Balboa relied upon ProFax to provide it with compliant opt-out language and to ensure compliance with the TCPA.  DS 41.  For its part, ProFax transmitted faxes to the clients or prospects that Balboa identified.  DS 3, 42.  While it appeared that the opt-out language on the Fax was provided by ProFax, ProFax could not confirm that the opt-out notice on the Fax was substantially similar to other faxes that ProFax sent for Balboa.  DS 43.  Moreover, ProFax admitted that its opt out language evolved over time.  DS 44.  There is no evidence regarding what opt out language was used on each fax between 2007 and 2011.[4]  DS 7-8, 20, 43 and 44.  In fact, Jake Dacillo never saw some of the opt-out language that was applied by ProFax.  DS 6-8.

In order to ensure compliance with the TCPA, Balboa maintained a filter within its SalesLogix CRM database that prevented customers or prospects from receiving faxes if they had opted out or indicated that they did not want to receive

---

[4] Mr. Dacillo was not even working on fax marketing at Balboa until November 2008 and thus has no personal knowledge regarding any faxes that were sent prior to that time.  DS 4-5.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

faxes. DS 45. ProFax assisted with this opt out process and provided Balboa with lists of people who had opted out through the mechanisms it provided. DS 46.

Plaintiffs bring this action based upon receipt of a single-page fax dated May 21, 2010. DS 48. The Fax was sent because Balboa had an Existing Business Relationship ("EBR") with Plaintiffs, who were thus in the active SalesLogix CRM database. *Id.* In addition, after Plaintiffs received the Fax, they took advantage of the opt-out mechanism identified on the Fax. DS 49.

The Fax Plaintiffs received contained the Opt-Out. DS 56. The Opt-Out provided a toll-free mechanism that was available 24 hours a day and seven days a week. DS 57. Balboa's records indicate that Vandervort opted out of receiving faxes on June 16, 2010. DS 58. A notation was promptly made on Plaintiffs' account of the opt out request. DS 59. Plaintiffs admit that they received no additional faxes after opting out. DS 60. Furthermore, Plaintiffs cannot identify any putative class member who ever received a fax after opting out. DS 61. The opt-out process was simple. Recipients could call the toll free number or go to the website, either of which would prompt them to simply enter their fax number and the PIN contained in the opt-out notice. DS 62. Recipients could also fax an opt-out request directly to Balboa at the number provided on the fax. DS 63. These methods were available 24 hours a day. DS 64. By following the simple instructions, recipients would be able to opt out of receiving future faxes. DS 65. Plaintiffs have produced no evidence that shows that any recipient of a facsimile ever continued to receive faxes from Balboa after attempting to opt out of receiving future faxes. DS 61. Accordingly, there is no evidence that the opt-out system provided by Balboa was anything but effective and met the purpose of the TCPA.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## III. THE TCPA AND JFPA

The TCPA of 1991 prohibits, *inter alia*, the sending of an "**unsolicited advertisement**" via a fax machine. An "unsolicited" fax advertisement was defined as one transmitted without the recipient's "prior express invitation or permission." In 1992, the FCC, in adopting rules to implement the TCPA, concluded that fax advertisements "from persons or entities who have an established business relationship [EBR] with the recipient can be deemed to be invited or permitted by the recipient." *In re Rules and Regulations Implementing the TCPA of 1991*, 7 F.C.C.R. 8752, 8779 n. 87 (1992). In July 2003, the FCC issued new junk fax provisions, in which the FCC reversed its prior position on the effect of an EBR, "effectively eliminating the EBR exception to the general prohibition on unsolicited fax advertisements. Instead, the FCC concluded that a recipient's express invitation or permission must be in writing . . . ." Sen. Rep. 109-076 at 3 (June 7, 2005) (attached as Exh. 15 to Barnes Decl.).

In response to the FCC's announced intention essentially to eliminate the EBR exception, Congress, in 2005, enacted the Junk Fax Protection Act ("JFPA"), which amended the TCPA and codified the EBR exception that the FCC had adopted prior to 2003. Section 227(b)(1)(C), now makes it unlawful:

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, **an unsolicited advertisement**, unless —
> (i) **the unsolicited advertisement** is from a sender with an established business relationship with the recipient; [and]
>
> \* \* \*
>
> (iii) **the unsolicited advertisement** contains a notice meeting the requirement under 2(D) . . . .

47 U.S.C. § 227(b)(1)(C) (emphasis added). Subsection 227(b)(3) provides for a private right of action as follows:

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1

> A person or entity may, if otherwise permitted by the laws or rules of
> court of a State, bring in an appropriate court of that state —
> (A) an action **based on a violation of this subsection** or the
> regulations prescribed **under this subsection** to enjoin **such
> violation,**
> (B) an action to recover for actual monetary loss from such a
> violation, or to receive $500 in damages for each **such violation,**
> whichever is greater, or
> (C) both such actions.

*Id.* (emphasis added).

In 2006, to implement the 2005 amendments to the statute, the FCC

amended its regulations under the TCPA. The regulation relevant here, 47 C.F.R.

§ 64.1200 ("the Opt-Out Regulation"), provides as follows:

> (a) No person or entity may:
>
> * * *
>
> (3) Use a telephone facsimile machine, computer, or other device to
> send an **unsolicited** advertisement to a telephone facsimile machine,
> unless —
> (i) The unsolicited advertisement is from a sender with an [EBR] **with
> the recipient**; and
> (ii) The sender obtained the number of the telephone facsimile
> machine through [certain specified ways]; and
> (iii) The advertisement contains [an opt-out notice meeting certain
> specified requirements].
> (iv) A facsimile advertisement **that is sent to a recipient**[5] that has
> provided prior express invitation or permission to the sender must

---

[5] Plaintiffs have taken the non-sensical position that even people who never received the allegedly violative facsimiles have a claim under the FCC regulations presumably because Balboa <u>attempted</u> to send them a facsimile without a compliant opt-out notice (MSJ at 7). The FCC's regulations make clear that the facsimile actually has to have been received. Otherwise, the word "recipient" is rendered meaningless. By contrast, Plaintiffs rely upon a Georgia state court decision that addresses the sending of junk faxes – rather than compliance with opt-out requirements. *See A Fast Sign Co v. American Home Servs., Inc.*, 2012 WL 5381254 (Ga., Nov. 21, 2012). Many courts have held to the contrary, which only makes sense where where the regulations at issue specifically refer to

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT**

include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section. . . .

47 C.F.R. § 64.1200 (emphasis added).

## IV.   LEGAL ANALYSIS

### A.   The Application of the Opt-Out Regulation to Solicited Facsimiles Is Outside the Scope of the TCPA, And Therefore Plaintiffs' Motion Should Be Denied As A Matter of Law.

#### 1.   The *Chevron* standard.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Id.; see also FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32 (1981) (finding that the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent); *Zimmerman v. State of Ore. Dept. of Justice*, 170 F.3d 1169, 1173 (9th Cir.

"recipients" and where there can be no possible harm caused to a potential recipient who never actually received a facsimile that lacked a compliant opt-out notice. Accordingly, the Court should deny Plaintiffs' request to assess damages based on the number of faxes that Balboa allegedly attempted to send rather than on the number actually received within the United States. *All Am. Painting LLC v. Financial Solutions*, 315 S.W. 3d. 719, 725 (Mo. 2010) (finding standing because plaintiffs received faxes); *Levitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143 *7 (D. Md. May 25, 2007) (to establish claim under TCPA, "plaintiff must have received a facsimile); *Civil Design Solutions, Inc. v. Olympia Funding, Inc.*, 2007 Pa. Dist. & Ct. Dec. LEXIS 346 at *5 (All. Cty. Aug. 2, 2007) (must show receipt of a fax); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 U.S. Dist. LEXIS 133567 at *25 (W.D. Mich. Sept. 19, 2012) (fax must be successfully sent); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (same).

8

1999) (where Congress unambiguously expressed its intent that Title II of the ADA did not apply to employment, Attorney General's regulations to the contrary carried no weight).

"If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron* at 843, n.9. "It is well settled that the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987) (internal citation and quotation marks omitted). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Another "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (*quoting Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Courts also read statutory terms in light of the purpose of the statute. *Wilderness Soc'y v. U.S. Fish & Wildlife Service*, 353 F.3d 1051, 1060 (9th Cir. 2003).[6] If, under these canons, or other traditional means of determining Congress's intentions, the Court is able to determine that Congress spoke clearly, it need not look to the FCC's interpretations. *See id.* at 1061.

### 2.    Congressional Intent Is Clear and Unambiguous.

When passing the JFPA, the intent of Congress could not be more clear with respect to activities relating to faxes. In each instance, Congress repeatedly and exclusively referred to **unsolicited** fax advertisements when discussing its intent or the scope of the JFPA. For example, when outlining the purpose of the JFPA, the Senate Report provides as follows:

---

[6] See also substituted opinion at 2003 U.S. App. LEXIS 27248, *19-20.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

> Create a limited statutory exception to the current prohibition against the faxing of <u>unsolicited advertisements</u> to individuals without their `prior express invitation or permission' by permitting such transmission by senders of commercial faxes to those with whom they have an established business relationship (EBR).
>
> Require that senders of faxes with <u>unsolicited advertisements</u> (i.e., `junk faxes') provide notice <u>of a recipient's</u> ability to opt out of receiving any future faxes containing <u>unsolicited advertisements</u> and a cost-free mechanism <u>for recipients to opt out</u> pursuant to that notice.

*See* Sen. Rep. 109-076 at 1 (emphasis added) (attached as Exh. 15 to Barnes Decl.).   In addition, the Senate Report indicated the intent of the JFPA:

> [The bill] would amend current law and regulations relating to <u>unsolicited advertisements</u> sent via telephone facsimile machine. The bill would direct the Federal Communications Commission (FCC) to issue regulations to control <u>such advertisements</u> and would require the FCC and the Government Accountability Office to issue reports to the Congress on the effectiveness of those regulations. The FCC currently enforces laws relating to <u>unsolicited advertisements</u>, including assessing and collecting civil penalties for violations of such laws.

*Id.* at 8 (emphasis added).  The Senate Report provides further insight into congressional intent because it documents proposed changes that were made to the opt-out requirements by amendment.

> On April 13, 2005, the Committee held an Executive Session chaired by Senator Stevens at which [the JFPA] was considered. Senator Boxer offered two amendments. The first amendment would have amended section 2(c)(3) to require that <u>senders of unsolicited advertisements notify recipient</u> consumers or businesses of their ability to make a request to the sender of the <u>unsolicited advertisement</u> at any time of the day, seven days a week, to opt out of future solicitations. The bill as introduced allows for such a request to be made only during regular business hours. . . . The amendments were adopted by voice vote.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1  *Id.* at 7  (emphasis added).  This legislative history makes clear that the intent of

2  Congress was to restrict, limit or prohibit activities relating to the sending of

3  unsolicited facsimile advertisements.  There is absolutely no indication

4  whatsoever that Congress intended the TCPA or JFPA or related regulations to

5  apply to solicited facsimiles advertisements.

6       Moreover, the text of the statute itself embodies this purpose and

7  limitation.  In each and every instance, the statute unambiguously and explicitly

8  refers only to unsolicited facsimile advertisements.

9

10  (1) Prohibitions
It shall be unlawful for any person within the United States, or any

11  person outside the United States if the recipient is within the United

12  States—
    (C) to use any telephone facsimile machine, computer, or other

13      device to send, to a telephone facsimile machine, <u>an unsolicited</u>

14      <u>advertisement</u>, unless—
        (i) <u>the unsolicited advertisement</u> is from a sender with an

15          established business relationship with the recipient; [and]

16                     *  *  *

17          (iii) the <u>unsolicited advertisement</u> contains a notice

18          meeting the requirements under paragraph (2)(D),
        except that the exception under clauses (i) and (ii) shall

19          not apply with respect to an <u>unsolicited advertisement</u>

20          sent to a telephone facsimile machine by a sender to

21          whom a request has been made not to send <u>future</u>
        <u>unsolicited advertisements</u> to such telephone facsimile

22          machine that complies with the requirements under

23          paragraph (2)(E); or

24  D) shall provide that a notice contained in an <u>unsolicited</u>

25  <u>advertisement</u> complies with the requirements under this
subparagraph only if—

26      (i) the notice is clear and conspicuous and <u>on the first</u>

27      <u>page of the unsolicited advertisement</u>;
    (ii) the notice states that the recipient may make a request

28      to the sender of the <u>unsolicited advertisement</u> not to send

11

any <u>future unsolicited advertisements</u> to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

\*  \*  \*

(h) Junk fax enforcement report

The Commission shall submit an annual report to Congress regarding the enforcement during the past year of the provisions of this section relating to <u>sending of unsolicited advertisements</u> to telephone facsimile machines, which report shall include—

(1) the number of complaints received by the Commission during such year alleging that a consumer received <u>an unsolicited advertisement</u> via telephone facsimile machine in violation of the Commission's rules;

(2) the number of citations issued by the Commission pursuant to section 503 of this title during the year to enforce any law, regulation, or policy relating to <u>sending of unsolicited advertisements</u> to telephone facsimile machines.

47 U.S.C. § 227 (emphasis added).

Because the statute is clear that it only applies to unsolicited faxes, the Court need look no further when addressing the TCPA claims raised by Class members who received solicited fax advertisements.   Contrary to Plaintiffs' repeated assertions, (MSJ at 8-9, 11-12), the FCC's interpretations in *Response Card* are of no moment here.[7]  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (noting that if Congressional intent is clear, then that is the end of the matter).   Under the TCPA, the Class members who are recipients of solicited

---

[7] Indeed, Response Card did not address the applicability of the regulations to solicited facsimiles.

12

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

facsimiles have no claim.  The Court need not look to the FCC's own interpretation or its regulations, because the statute itself is clear and unambiguous.

If a fax is "solicited" or there is otherwise consent to receive it, there simply cannot be a TCPA violation.  47 U.S.C. § 227(b)(1)(C) (making it unlawful for a person to "use any telephone facsimile machine" to send an "unsolicited advertisement"); *see also Nack v. Walburg*, No. 4:10cv00478 AGF, 2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan. 28, 2011) ("This Court concludes, however, that 47 C.F.R. §64.1200(a)(3)(iv) does not apply to the facts of this case, which does not involve an "unsolicited" fax advertisement."); *Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114, *16 ("the statute refers to unsolicited fax advertisements, not solicited fax advertisements like the fax advertisements defendant sent to plaintiff"); *Cicero v. U.S. Four, Inc.*, Franklin App. No. 07AP-310, 2007 Ohio 6600, ¶ 42 (TCPA only applies to unsolicited faxes).  Likewise, "the [federal regulation] in question, 47 C.F.R. § 64.1200(a)(3)(iv), purports, on its face, to apply only to unsolicited faxes." *Nack*, 2011 U.S. Dist. LEXIS 8266, *11 (rejecting assertion that all faxes, whether solicited or unsolicited, must contain opt-out language).  "Simply put, the above provisions, and the opt-out notice requirements thereunder, do not apply to fax transmissions unless they constitute unsolicited advertisements." *Miller v. Painters Supply & Equip. Co*, 2011 Ohio App. Lexis 3327, ¶19 (8th Dist.); *see also Fackelman v. Micronix*, 2012 Ohio 5513 (Cuy. Cty. Nov. 29, 2012).

The only federal court to decisively address the question presented here: namely, whether the FCC's opt-out requirements applied to *solicited* facsimiles came to the conclusion that no TCPA violation could be asserted by recipients of solicited facsimiles. *Nack*, 2011 U.S. Dist. LEXIS 8266 at *15-16.  At the summary judgment stage, the plaintiff conceded that the defendant sent him the fax at issue with his permission.  *Id*. at *3-4.  Accordingly, his only remaining claim

was that the fax violated the statute because it lacked a notice provision -- a claim that the court dismissed. *Id.* at *9-10. Because Plaintiff could not show lack of consent, the court rightfully dismissed the plaintiff's entire case under the TCPA. *See also Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114, *4 (finding that the plaintiffs had consented to receive the fax and that the fax was therefore not covered by the TCPA: "By sending its fax number to defendant, plaintiff cannot assert that the fax advertisements it received from defendant were 'unsolicited,' so as to fall within the category of fax advertisements regulated under 47 U.S.C. § 227."); *Fackelman v. Micronix*, 2012 Ohio 5513 ¶ 10 (8th Dist. Nov. 29, 2012) (following *Nack* and finding that TCPA only applies to unsolicited faxes and thus claim for violation of opt out regulation fails).

The *Nack* court interpreted 47 C.F.R. § 64.1200(a)(3)(iv) to harmonize it with the statute by finding that subsection (iv), on its face, applies only to unsolicited faxes. *Id.* at *11. The *Nack* court quoted the May 3, 2006 Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967 (May 3, 2006), in which the FCC states several times that its rule requiring an opt-out notice applies to all unsolicited fax advertisements. *Id.* at *12 (citing 71 Fed. Reg. at 25970, 25976). Additionally, the FCC had stated: "[t]he Commission notes that the opt-out notice requirement only applies to communications that constitute unsolicited advertisements." *Id.* (citing and quoting 71 Fed. Reg. at 25971). Because the TCPA only applies to unsolicited faxes, Plaintiffs' Motion for Summary Judgment should be denied as to members of the Class who received solicited facsimiles. *Id.* at *15-16.

### 3.   There Is No Private Right Of Action Under The Regulations For Solicited Faxes Because There Is No Violation Of The Statute.

The question of whether a statute creates a private cause of action is one of statutory construction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*,

14

444 U.S. 11, 15 (1979). In determining whether the TCPA, as amended by the JFPA, creates a private right of action against a person who sent an advertising fax with the recipient's specific express permission, a court should consider such factors as whether the plaintiff falls within the class the statute sought to benefit, whether there is legislative intent to create a private right of action, and whether the cause of action is consistent with the legislative scheme. *Cort v. Ash*, 422 U.S. 66, 78 (1975). In this case, the claims asserted on behalf the recipients of solicited faxes do not meet this test. Rather, under the TCPA, as amended by the JFPA, Congress created a private cause of action in favor of those parties who receive an "unsolicited fax advertisement" and against fax senders who send "unsolicited fax advertisements." Specifically, a cause of action exists for violating the statutory subsection (which only applies to unsolicited faxes) and the regulations set forth and prescribed under that same subsection which again only refers to unsolicited facsimile advertisements. Accordingly, even if the Court finds that the regulations were violated by Balboa, the private right of action is limited to violations of the statute or regulations that address violations of the statute. Nothing in the TCPA gave the FCC the right to create a private right of action with respect to solicited facsimiles, an area that Congress itself did not choose to restrict.

## B.   Balboa's Opt-Out Substantially Complies With The Regulation.

Plaintiffs' Motion for Summary Judgment should be denied as to all Class members because the Fax's Opt-Out is sufficient under the TCPA as a matter of law. When it promulgated regulations to address the new opt-out notice requirement, the FCC announced:

> The Commission is persuaded that rules specifying the font type, size and <u>wording of the notice</u> might interfere with fax senders' ability to design notices that serve their customers. However, the Commission makes some additional determinations about the opt-out notice so that facsimile recipients have the information necessary to avoid future un-wanted faxes.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

*Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25,969 (May 3, 2006) (to be codified at 47 CFR pt. 64) (emphasis supplied). The only federal court to address the strict compliance issue relied on this very language in finding that "[t]he commission's comments make it clear that a proper opt-out notice need not contain any specific wording." *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 18114, *13-*18 (W.D. Wis. Mar 9, 2009) (dismissing TCPA claim and rejecting plaintiff's hypertechnical argument that a failure to include a notice about 30-day compliance and failing to warn recipients that any request had to be made in a specific form to be honored was not required for compliance with the regulation).

### 1. No Specific Wording Is Required.

Congress and the FCC have outlined the requirements pertaining to the required opt-out notice to be placed on unsolicited faxes but have declined to require inclusion of specific wording. *See* 47 U.S.C. § 227 (b)(1)(C); 47 C.F.R. § 64.1200(a)(3)(iii). The notice and the language at the bottom of the Fax contain all of the essential components required by § 227 (b)(1)(C) and § 64.1200(a)(3)(iii) and achieve the objectives of the requirement – namely, making the opt-out process "apparent to a reasonable consumer." *Id.* Specifically, the bottom paragraph on the first page of the Fax states, "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful." Just above this language is the fax number for Balboa.[8]

As required by the FCC, Balboa's notice serves the purpose of the statute by giving recipients of a fax an easy mechanism for avoiding future faxes. *See* 71

---

[8] Nothing in the Regulations or the TCPA states that all information must be contained in a single paragraph.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Fed. Reg. at 25,969.  The notice on the Fax was at the bottom of the page and included a toll free number as well as a website (both of which prompted recipients to provide their fax number, (DS 62), to contact as an opt-out mechanism and was conspicuous and easily readable.  Just above the notice was a fax number at which the Plaintiffs also could have opted out of receiving the faxes.  Finally, the notice clearly lays out how a reasonable consumer can opt-out of receiving faxes and therefore satisfies the intentions and requirements of the statute.

### 2.    Substantial Compliance is Sufficient.

Because they have no caselaw to support their claim that the Opt-Out does not substantially meet the requirements of the Regulation, Plaintiffs rely upon an FCC Forfeiture Order, *In re Response Card Marketing, Inc. ("Response Card"),* 27 FCCR 3895 (April 10, 2012),[9] that does not address the facts presented here.  In the Order, the FCC found a company's brief opt-out notice lacking.  Unlike the Opt-Out at issue here, Response Card failed to include its opt-out language on the first page of its facsimile as required, and did not include a statement that failure to comply within thirty days was unlawful. *Id.* at ¶¶ 7&8.  Moreover, in contrast to Balboa's Fax, there was no indication that the company's contact information or that a fax number was provided on the first page of the facsimile. *Id.*  Finally, the opt-out did not include a website address. *Id.* at ¶8.  Given these blatant shortcomings, it is no wonder that the FCC issued this Forfeiture Order.  Nevertheless, there is no indication that the FCC would make the same finding in this case where there is truly substantial compliance and the party at issue effectively opted out. *See Magana Cathcart McCarthy v. CB Richard Ellis, Inc.,* 94 Cal. Rptr. 3d 109, 112 (Cal. Ct. App. 2009) (noting trial court's ruling that

---

[9] The *Response Card* matter notably did not involve solicited fax advertisements. Thus, the Order fails to address the applicability of these rules to solicited advertisements.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

"substantial compliance is a defense to a claim of failure to comply with the opt-out mechanisms of the statute").

By contrast and more on point is *Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114 (D. Wisc. March 9, 2009), where the plaintiff challenged the wording of the opt-out provision on the defendant's fax as insufficient because it did not contain the precise wording used in the regulations regarding compliance within 30 days. While the court agreed that the opt-out notice did not replicate the regulation's language, it also held that despite this technical deficit, the notice was sufficient to satisfy the TCPA's substantive concerns and granted the motion to dismiss. *Id.* at *15-18. Similarly, Balboa's Opt-Out substantially complies with requirements of the regulations. The Opt-Out both satisfies the purpose of the regulations -- which is to allow recipients of unsolicited faxes an opportunity to decline to receive more faxes—and is effective in that it prevents the sending of future faxes to people who opt out -- which Mr. Vandervort did in fact do.

Furthermore, Plaintiff has no evidence that he or any other person ever received additional faxes after calling the toll-free number or logging on to the website. DS 61. Although it is true the last paragraph on the Fax did not include a fax number within its immediate text, it was located merely one inch above the text at the bottom of the page. Nothing in the regulations indicates that all of the information needs to be in a single paragraph.

The Opt-Out language also admittedly did not recite step-by-step instructions for opting out of future faxes, but if recipients followed the directions provided (as Mr. Vandervort did), they would be prompted to provide their fax number and PIN. This mechanism satisfies the requirements. *See Landsman* aty **17-18. There is no question that the mechanisms provided offered recipients a meaningful and reasonable opportunity both to revoke any consent that was given and to stop receiving faxes in the future.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

### 3. Including All Information Demanded by Plaintiffs Would Undermine the Finding of the FCC.

Taken to its logical extreme, Plaintiffs' requested language would end up dominating the content of the entire fax. Section 47 C.F.R. § 64.1200 (a)(3)(v) reads as follows:

> (v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if-
> (A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;
> (B) The request is made to the telephone number, facsimile number, Web site address or e-mail address identified in the sender's facsimile advertisement; and
> (C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

Should the notice include all of this detailed information (as set forth above) as demanded by Plaintiffs, the opt-out notice would come to dominate any fax sender's message – taking up nearly a half page in space (in order to be conspicuous), and hindering the sender's ability to design advertisements that serve their customers, contrary to the interpretation of the FCC. *See* 71 FR 25967-01, 25,969.

Moreover, the opt-out fully complied with the requirements outlined on the FCC's own website. Because there are no genuine issues of material fact with respect to Balboa's substantial compliance, the Court should deny summary judgment on this claim as to both Plaintiffs and the Class.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**C.     The Hobbs Act Has No Application Here Because Balboa Is Not Seeking To Invalidate the FCC Regulation or Order.**

The Hobbs Act has no application to this analysis.[10]  Balboa is not asking the Court to enjoin, set aside or suspend the FCC regulation at issue.  Indeed, the FCC is not a party to this litigation.  Rather, Balboa is asking the Court to simply hold that the regulation, while wholly valid, does not apply to the facts of this case with respect to recipients of solicited facsimiles or where there has been substantial compliance.  *See Cincinnati Tel. Co. v. Public Utilities Comm'n of Ohio*, 466 N.E.2d 848, 853 (Ohio 1984) (implementing depreciation rates that were allegedly inconsistent with FCC Order and finding no Hobbs Act violation because FCC Order was not being enjoined, suspended, set aside or invalidated).

**D.     Plaintiffs Have No Claim Under California Law.**

Plaintiffs cannot prevail on a claim under Cal. Bus. & Prof. Code, sec. 17538.43(b), which provides that:

> It is unlawful for a person or entity, if either the person or entity or the recipient is located within California, to use any telephone facsimile machine, computer, or other device to send, or cause another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine.

While this state law is more restrictive than the TCPA, its scope and application are severely limited such that Plaintiffs have no cognizable claim.

---

[10] The Hobbs Act, 28 U.S.C. § 2342, establishes the jurisdiction of the federal courts of appeals, stating, "[t]he court[s] of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of — (1) all final orders of the [FCC] made reviewable by section 402(a) of title 47." Title 47 U.S.C. § 402(a), in turn, states, "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."

20

It is undisputed that ProFax, Inc. sent the Fax from New York.  DS 67.
Because the Fax was not transmitted <u>from</u> California[11] <u>to</u> a California resident,
there is no violation of the state statute with respect to Plaintiffs.[12]  *See Chamber of
Commerce of the U.S. v. Lockyer*, 2006 U.S. Dist. LEXIS 8324 (E.D. Cal. Feb. 27,
2006).  Specifically, the *Lockyer* court examined the question of whether
California's state fax law was preempted by the TCPA and ruled that the law's
application was limited solely to <u>intrastate</u> fax transmission.  *Id.* at *23.  Moreover,
the court found that, "to the extent California attempts to regulate the interstate
transmission of unsolicited facsimile advertisements through SB 833, it has
exceeded its jurisdiction rendering that portion of the statute violative of the
Supremacy Clause and, therefore, constitutionally infirm."  *Id.*

Vandervort has admitted that he is not a resident of California (DS 69); that
the Fax was not received in California (DS 70); that U.S. Sample Services is not
incorporated in California (DS 71); it has no offices in California (DS 72); and it is
not licensed to do business in California (DS 73).  As a result, Plaintiffs have no
claim under California law.  Plaintiffs argue that the Court should disregard the
only California federal court decision which directly addresses the constitutionality
of applying Cal. Bus & Prof. Code § 17538.43(b) to <u>interstate</u> facsimile
transmissions because – in Plaintiffs' opinion – the decision was wrongly decided.
(MSJ at 15).  Plaintiffs misleadingly suggest to the Court that courts around the
country have ruled that the TCPA does not preempt state law in the fax context,
(MSJ at 15), but every case they cite is a telephone case which does not address the
fax EBR conflict recognized in *Lockyer*.  *See Holster v. Gatco*, 618 F.3d 214, 218
(2d Cir. 2010) (addressing whether state rules regarding class actions applied to

---

[11] There is no dispute that Balboa is located in California, but that fact does not
change the analysis.
[12] Even if the Court finds that the faxes were sent from a California entity, it is
undisputed that Plaintiffs are located in Ohio.  (DS 18, 68).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT**

telemarketing case); *Meilleur v. AT&T, Inc.*, 2011 WL 5592647 (W.D. Wash. 2011) (finding rules regarding auto-dialing were not preempted because state statute was virtually identical to TCPA and not in conflict); *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, **6-11 (W.D. Wash. 2010) (no conflict with auto-dial law); *TSA Stores Inc. v. Dept. of Agriculture and Consumer Servs.*, 957 So.2d 25, 27-29 (Fla. App. 2007) (automated dialing machines); *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 712 N.W.2d 828, 836, 839-40 (N.D. 2006) (finding no conflict in auto-dial case); *Utah Div. of Consumer Protection v. Flagship Capital*, 125 P.3d 894, 900, 901 (Utah 2005) (no conflict with state law on telemarketing).  In fact, *Lockyer's* analysis applies here and the Motion should be denied.

### 1.    The TCPA Preempts The California Fax Law.

It is true that the *Lockyer* court did not make a presumption against preemption under the Federal Communications Act when deciding that case, *see* 2006 U.S. Dist. LEXIS 8324 at *17, but as *Wyeth v. Levine*, 555 U.S. 555 (2009), points out, even if that presumption applies, the Court still has to determine whether Congress's intent was such that it intended to supercede the state laws and regulations.  When the *Lockyer* court went through its analysis with respect to Congressional intent, it determined that that Congress recognized the balancing act between business's legitimate marketing efforts and the burden on consumers of junk faxes.  *Id.* at *21-22.  It also recognized that a patchwork of regulations on this front was not workable and explicitly rejected the suggestion from some groups that there be an opt-in scheme similar to the one proposed under the California law.  As the Court in *Wyeth* directs, the ultimate inquiry is whether the state law conflicts with the manifest intent of Congress.  The *Lockyer* court determined that it did.  *Id.* at 22; *see also Charvat v. Telelytics, LLC*, 2006 Ohio

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

4623 at ¶¶32, 35 (10th Dist. 2006); *Patriotic Veterans Inc. v. State of Indiana*, 821 F. Supp. 2d 1074, 1078-79 (S.D. Ind. 2011).

### 2. The California Law Is Preempted by the Savings Clause.

In addition, here, Congress included a savings clause that parses the authority to regulate the use of telephone equipment, including facsimile machines, between the States and the FCC. That savings clause provides as follows:

> STATE LAW NOT PREEMPTED.--Except for [certain specified provisions of the TCPA], nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive **intrastate** requirements or regulations on, or which prohibits--(A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements.

47 U.S.C. § 227(e)(1)(emphasis added). When dealing with the savings clause, the *Lockyer* Court specifically noted that it need not have been included if its only import was to permit states to enact more restrictive intrastate regulations, because they already had that right. *Lockyer* at *20. Thus, it would have been surplusage if interpreted that way. *Id.* at 20. Why include the word "intrastate" at all if the states are free to act as they want with respect to both interstate and intrastate regulations?

Plaintiffs rely upon *In re NOS Communications*, 495 F.3d 1052 (9th Cir. 2007), for the proposition that Congress did not preempt all state causes of action under the Federal Communications Act. Balboa does not disagree. In fact, the TCPA makes clear that states may enact more restrictive legislation with respect to intrastate facsimiles. In the case of the EBR fax exception enacted by Congress, however, it is clear that California's law conflicts with Congress's decision, which sought to both protect consumers and balance the costs of compliance for the business community.

### 3. The FCC Believes That State Laws Are Preempted.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The FCC has cautioned that more restrictive state efforts to regulate interstate calling would almost certainly conflict with its rules. 18 FCC Rcd 14014, 14063-14064 (FCC 2003). Moreover, it recognized that states traditionally have had jurisdiction over only intrastate calls, while the Commission has had jurisdiction over interstate calls. Congress enacted section 227 and amended section 2(b) to give the Commission jurisdiction over both interstate and intrastate telemarketing calls. Congress did so based upon the concern that states lack jurisdiction over interstate calls. Although section 227(e) gives states authority to impose more restrictive intrastate regulations, the FCC believes that it was the clear intent of Congress generally to promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations. The FCC therefore believes that any state regulation of interstate telemarketing calls that differs from its rules almost certainly would conflict with and frustrate the federal scheme and almost certainly would be preempted. 18 FCC Rcd 14014, 14063-14064 (FCC 2003).

Balboa is not suggesting that the Federal Communications Act or the TCPA completely preempts state law. In this instance, however, the California law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress because it eliminates the established business relationship exception that Congress expressly codified in the Junk Fax Protection Act and nullifies Congress' decision that unsolicited facsimile advertisements be governed by an "opt-out" rather than an "opt-in" scheme. Accordingly, because Vandervort did not receive an intrastate fax, his claim under California law must fail.

## V.   CONCLUSION

For the reasons set forth herein and as supported by the papers filed herewith and the authorities cited herein, Defendant Balboa respectfully requests that the

24

Court deny Plaintiffs' Motion for Summary Judgment in its entirety and dismiss all claims against Balboa and award such other relief as it deems appropriate.


Dated:  December 21, 2012               THOMPSON HINE, LLP



                                        /s/ Nancy M. Barnes
                                        NANCY M. BARNES
                                        Attorney for Defendant
                                        BALBOA CAPITAL CORPORATION

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# PROOF OF SERVICE

STATE OF OHIO, COUNTY OF CUYAHOGA

I am employed in the aforesaid County, and State of Ohio; I am over the age of eighteen years and not a party to the within action; my business address is 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114.

On December 21, 2012, I served the following documents:

**DEFENDANT BALBOA CAPITAL CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

__XX__   BY ELECTRONIC SERVICE:  by electronic filing with the Clerk of the Court using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an email address of record who have filed a Notice of Consent to Electronic Service in this action.

upon all interested parties as follows:

Aytan Y. Bellin, Esq.
Bellin & Associates, LLC
85 Miles Avenue
White Plains, NY 10606

Roger Furman, Esq.
7485 Henefer Avenue
Los Angeles, CA 90045

Joseph Compoli, Esq.
612 East 185th Street
Cleveland, OH 44119

Lance A. Brewer, Esq.
Brewer & Brewer
4533 MacArthur Boulevard
Suite 707
Newport Beach, CA 92660

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under the penalty of

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

perjury under the laws of the United States of America that the foregoing is true and correct.

       Executed on December 21, 2012, at Cleveland, Ohio.


                  By:    *s/Nancy M. Barnes*
                       Nancy M Barnes
                       Declarant

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**