1  Nancy M. Barnes, Esq.
   (*admitted pro hac vice*)
2  Thompson Hine LLP
   3900 Key Center
3  127 Public Square
   Cleveland, OH 44114-1291
4  Tel: (216) 566-5578; Fax: (216) 566-5800
   E-mail: Nancy.Barnes@thompsonhine.com
5
6  Lance A. Brewer, Esq.  CBN 125759
   BREWER & BREWER
   4533 MacArthur Boulevard, Suite 707
7  Newport Beach, California 92660
   Tel: (714) 424-6300; Fax: (714) 424-4313
8  E-mail: Lbrewer@brewer-brewer.com
9
   Attorneys for Defendant
10 BALBOA CAPITAL CORPORATION

11                  UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

13 MICHAEL A. VANDERVORT and  )
   U.S. SAMPLE SERVICES, INC., on )
14 behalf of themselves and all others )   Case No.:  SACV 11-1578-JST(JPRx)
   similarly situated,          )   Hon. Josephine Staton Tucker
15                              )
                 Plaintiffs,    )   **DEFENDANT'S STATEMENT OF**
16                              )   **GENUINE ISSUES OF FACT IN**
                                )   **OPPOSITION TO PLAINTIFFS'**
17        vs.                   )   **MOTION FOR SUMMARY**
                                )   **JUDGMENT**
18                              )
   BALBOA CAPITAL              )   Date:  January 11, 2013
19 CORPORATION,                )   Time:  2:30 P.M.
                                )   Judge: Hon. Josephine Staton Tucker
20              Defendant.      )
                                )
21                              )
                                )
22                              )
                                )
23                              )
                                )
24                              )
25
26
27
28

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 56-1 of the Local Rules of this Court, and Section l0(c)(i) of this Court's Initial Standing Order, Defendant Balboa Capital Corporation ("Balboa") submits this Statement of Genuine Issues in Opposition to Plaintiffs' Motion for Summary Judgment.

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 1.  Balboa is in the business of, among other things, providing financing to companies that wish to purchase equipment for their businesses.  Bellin Decl., Exh. 5, pp. 120:12-121:17; Exh. 6, pp. 24:23-25:3. | Undisputed |
| 2.  One of the marketing methods used by Balboa from October 12, 2007 through February, 2011 was advertising by fax. Bellin Decl., Exh. 5, p. 24:13-16; Exh. 7, p. 78:5-18; Exh. 4, exhs. 1, 2, 3, 4 thereto. | Undisputed |
| 3.  Balboa retained a fax broadcasting company, Profax, Inc., to transmit Balboa's fax advertisements.  Bellin Decl., Exh. 3, p. 12:1-6; Exh. 7, pp. 73:19-25, 77:14-78:4; Exh. 6, p. 10:14-22. | Undisputed |

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 4.  Jake Dacillo, a Marketing Project Manager at Balboa, began managing the company's fax advertising program in November 2008.  Bellin Decl., Exh. 7, pp. 9:10-12, 9:16-11:17. | Undisputed |

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 5.  Mr. Dacillo was responsible for writing the copy (other than the purported opt-out notice) and creating the art for the fax advertisements.  Bellin Decl., Exh. 7, pp. 11:18-12:1, 14:20-24; Exh. 6, p. 10:8-13. | Undisputed from the time that Mr. Dacillo began working on fax marketing at Balboa in November 2008.  *See* Plaintiffs' Uncontroverted / Incontrovertible Fact No. 4. |
| 6.  On the bottom of each of Balboa's fax advertisements was an opt-out notice, the exact wording for which was provided by Profax to Balboa and which was put on the fax advertisements by Profax before Profax transmitted them. Bellin Decl., Exh. 7, pp. 14:2-15:9, 64:1-8; Exh. 3, p. 5:6-20; Exh. 4, pp. 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2. | Undisputed |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 7. The language of the opt-out notice on all of Balboa's fax advertisements was identical from 2007 through 2011. Bellin Decl., Exh. 7, 14:2-13, 15:10-24; Exh. 4, 116:24-117:16. | Disputed. ProFax could not confirm that the notice on the Fax sent to Plaintiffs on May 21, 2010 ("the Fax") was substantially similar to other faxes that were sent by Balboa. Barnes Decl. Exh. 1 (Barnett Dep.) 91:10-20, 95:25-96:11, 119:16-120:2. Moreover, ProFax admitted that its opt-out language evolved over time. *Id.* 113:3-10. In addition, Jake Dacillo could not confirm whether the opt-out notice on the Fax was the same as the notices on other faxes sent by Balboa. Barnes Decl. Exh. 6 (Dacillo Dep.) 14:14-15:13. Because Dacillo sent the fax template to Profax without any opt-out language and Profax then applied the language before sending the faxes, Dacillo did not see all of the faxes after the opt-out was applied. *Id.* 63:19-64:8. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 8. The opt out notice on Balboa's fax advertisements from 2007 through 2011 read as follows: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN #14641 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and that failure to comply within 30 days is unlawful." Bellin Decl., Exh. 8, exhs. C, D thereto; Exh. 7, pp. 70:1-11, 71:15-72:4 & exhs. A, B, C, D thereto; Exh. 14, first, second, third and last fax advertisements following copy of TCPA attached to complaint. | Disputed in part. While it is undisputed that the Fax contained this opt-out notice, ProFax could not confirm that the notice on the Fax was substantially similar to other faxes that were sent by Balboa. Barnett Dep. 91:10-20, 95:25-96:11, 119:16-120:2. Moreover, ProFax admitted that its opt-out language evolved over time. *Id.* 113:3-10. In addition, Jake Dacillo could not confirm whether the opt-out notice on the Fax was the same as the notices on other faxes sent by Balboa. Dacillo Dep. 14:14-15:13. Because Dacillo sent the fax template to Profax without any opt-out language and Profax then applied the language before sending the faxes, Dacillo did not see all of the faxes after the opt-out was applied. *Id.*. 63:19-64:8. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 9.  After Mr. Dacillo created a fax advertisement, he would provide it, along with a list of contact information for sales leads from Balboa's CRM system, to Erica Blundo, who also works at Balboa. Ms. Blundo would then send the fax advertisement and the list to Profax for transmission of the fax advertisement. Bellin Decl., Exh. 7, pp. 51:17-52:16, 59:2-8, 64:17-22, 84:12-16; Exh. 6, pp. 10:8-22, 13:11-16, 14:19-21, 15:16-16:9. | Undisputed |
| 10.  Ms. Blundo worked in the Irvine California headquarters of Balboa and directed Profax, from that California office, to transmit Balboa's fax advertisements.  Bellin Decl., Exh. 7, pp. 65:2-12; Exh. 6, p. 25:4-16; Exh. 5, p. 137:2-15. | Undisputed |
| 11.  Balboa caused Profax to send out thousands of fax advertisements on its behalf from 2008 through 2011.  Bellin Decl., Exh. 3, interrogatory response 19; Exh. 7, p. 77:10-22. | Undisputed |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 12. The fax sent to Plaintiffs and the three additional faxes that Plaintiffs identified were Balboa fax advertisements, and those fax advertisements contained identical opt-out notices to that contained on the fax advertisement that Plaintiffs received. Bellin Decl., Exh. 7, pp. 13:17-14:1, 70:1-72:4 & exhs. A, B, C & D thereto. | Undisputed |
| 13. The dates in the date field on Balboa's fax advertisements were the dates that Profax's system actually sent out the faxes. Bellin Decl., Exh. 6, pp. 50:24-51:8, Exh. 7, p. 58:3-13. | Undisputed that Balboa's witnesses testified that this was their understanding of the dates in the date field. *See* Bellin Decl., Exh. 6, pp. 50:24-51:8, Exh. 7, p. 58:3-13. |
| 14. The dates in the "Released" and "Closed" fields on Profax's bills were the actual dates that the faxes for that particular fax job billed were transmitted. Bellin Decl., Exh. 4, pp. 48:2-49:10; 75:12-17. | Undisputed |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 15. The only faxes that Profax transmitted on behalf of Balboa from 2007 through 2011 were faxes that advertised Balboa's goods and/or services. Bellin Decl., Exh. 7, pp. 77:14-78:5. | Undisputed |
| 16. Profax's bills to Balboa show that on March 17, 2010, Profax caused to be sent at least 95,040 (2,581 plus 3,532 plus 44,462 plus 44,465) fax advertisements on behalf of Balboa, 61,865 (2,128 plus 2,481 plus 27,936 plus 29,320) of which were received. Bellin Decl., Exh. 4, exh. 3 thereto, pp. PL-000392, PL000394-96; Exh. 7, pp. 69:23-25, 82:12-18, 83:8-20. | Undisputed |

7

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 17.  From 2007 through 2011, Balboa, from California, caused Profax to send a total of 1,666,008 fax advertisements on Balboa's behalf, more than 95 percent of which were transmitted to persons throughout the United States, resulting in a total of 1,582,707 transmitted. 1,025,136 of those faxes were received, of which 973,879 were received in the United States.  Bellin Decl., Exh. 16 (containing a spreadsheet calculating the total number of faxes sent on all relevant dates based on Profax's bills (Exh. 4, bills attached as exhs. 1-4 thereto)); Exh. 7, pp. 68:21-69:25; 77:14-78:5, 82:12-18, 83:8-86-21 & exhs. A, B, C, H, I, J, K thereto (by stipulation (Exh. 9), exhs. H, I, J, K to this deposition are the same documents as exhs. 1-4 to the Barnett deposition (Exh. 4)); Exh. 5, pp. 79:25-80:9, 81:5-23, 83:5-9, 95:24-98:23, 137:2-138:3 & exhs. H, I, J, K thereto (by stipulation (Exh. 9), exhs. H, I, J, K to this deposition are the same documents as exhs. 1-4 to the Barnett deposition (Exh. 4)); Exh. 4, pp. 34:13-23, 42:7-44:20, | Disputed.  There is no record of who received the faxes at issue or where the recipients were located, including what percentage of recipients were located outside of the United States.  Barnes Decl. Exh. 14 (Byrne Decl. in Support of Def's Opp. to Pl.'s MSJ), ¶¶2-4; Dacillo Dep. 25:7-12; 69:13-22; Barnett Dep. 95:25-96:11; 101:9-104:6. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 49:11-50:5, 54:20-55:11, 59:22-60:4, 63:16-65:5, 66:17-67:17, 73:11-74:24, 76:12-17 & exhs. 1, 2, 3, 4 thereto. | |
| 18.  Among the fax advertisements that Balboa, from California, caused to be transmitted by Profax in 2010, was the unsolicited fax advertisement ("the Junk Fax") received at Plaintiffs' fax machine in Plaintiffs' office in Geneva, Ohio concerning Balboa's leasing services. Bellin Decl., Exh. 8, pp. 36:14-17, 37:8-13, 67:4-10, 108:19-22, 114:17-116:5 & exhs. C, D thereto; Exh. 10, p. 1, ¶ 4; Exh. 1, exh. 1 thereto. | Disputed in part.  The Fax Plaintiffs received at their fax machine in their office in Geneva, Ohio was not "unsolicited" because Plaintiffs had an existing business relationship ("EBR") with Balboa at the time the Fax was sent.  Barnes Decl. Exh. 9 (Byrne Decl. in Support of Def.'s Mot. for Summary Judg.) ¶6, Exhibit A. *See also* Additional Material Facts 50-55 below. Finally, because the Fax was not "unsolicited," Balboa objects to Plaintiffs' description of the Fax as "the Junk Fax." |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 19.  The Junk Fax, which was designed by Mr. Dacillo, contained the name "Michael Vandervort" in the "To:" field, "U.S. Sample Services, Inc." in the "Company:" field under Vandervort's name, and Sample's fax number under that.  Bellin Decl., Exh. 8, pp. 21:10-14, 22:8-18 & exhs. C, D thereto; Exh. 7, pp. 13:15-14:1, 15:25-16:25; Exh. 1, exh. 1 thereto. | Undisputed except for the use of the term "Junk Fax." |

10

| Allegedly Uncontroverted / Incontrovertible Fact | Defendant's Response |
|---|---|
| 20. The opt-out notice on the bottom of the Junk Fax was the same as the opt-out notice on all of the other fax advertisements from 2007 through 2011 that Balboa caused to be sent out to other persons. Bellin Decl., Exh. 8, pp. exhs. C, D thereto; Exh. 7, pp. 14:2-13, 15:10-24 & exhs. A, B, C, D thereto; Exh. 4, pp. 116:24-117:16. | Disputed. ProFax could not confirm that the notice on the Fax sent to Plaintiffs was substantially similar to other faxes that were sent by Balboa. Barnett Dep. 91:10-20, 95:25-96:11, 119:16-120:2. Moreover, ProFax admitted that its opt-out language evolved over time. *Id.* 113:3-10. In addition, Jake Dacillo could not confirm whether the opt-out notice on the Fax was the same as the notices on other faxes sent by Balboa. Dacillo Dep. 14:14-15:13. Because Dacillo sent the fax template to Profax without any opt-out language and Profax then applied the language before sending the faxes, Dacillo did not see all of the faxes after the opt-out was applied. *Id.*. 63:19-64:8. |

# ADDITIONAL MATERIAL FACTS

| Additional Material Fact | Supporting Evidence |
|---|---|
| 21.  Plaintiffs received a single fax from Balboa on May 21, 2010 ("the Fax"). | Dkt. 18, Exh. 1 |
| 22.  The contents of the Fax are undisputed, including the fact that it did contain a conspicuous opt-out notice on the bottom which read:  "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885.  The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful."   ("the Opt-Out"). | Dkt. 18, Exh. 1 |
| 23.  Balboa is a company that provides equipment leasing and financing to its customers. | Barnes Decl. Exh. 3 ("Byrne Dep.") 120:12-121:17. |
| 24.  As a part of its marketing efforts, Balboa uses a number of methods to identify potential customers that might be interested in its products and services. | Barnes Decl. Exh. 4 ("Dacillo Dep.") 47:01-48:20. |
| 25.  These methods include the use of direct mail, cold calls, and referrals from vendors who sell equipment. | Dacillo Dep. 47:01–48:20; Byrne Dep. 65:4-19; Barnes Decl. Exh. 2 ("Blundo Dep.") 7:10-8:8, 8:14-18; |

| | Barnes Decl. Exh. 6 ("Nguyen Dep.") 39:3-12. |
|---|---|
| 26.  In the past, Balboa used fax marketing to target communications to its active database. | Dacillo Dep. 9:22-11:17; Barnes Decl. Exh. 9 at ¶ 2. |
| 27.  The active database is defined as those companies who had either done business with Balboa, had submitted an application and therefore who were in the process of attempting to do business with Balboa or had expressed interest in doing business with Balboa in the future. | Dacillo Dep. 18:22-20:4, 49:6-50:5; Barnes Decl. at Exh. 7 ("Takeuchi Dep.") 15:2-16:13; Barnes Decl. Exh. 5 ("Horwich Dep.") 75:6-22; Nguyen Dep. 38:17-40:2; Barnes Decl. Exh. 9 at ¶ 2. |
| 28.  Balboa no longer uses fax marketing. | Byrne Dep. 99:4-18, 102:13-15; Barnes Decl. Exh. 9 at ¶2; Dacillo Dep. 86:23-87:13. |
| 29.  Balboa did engage in a fax marketing campaign at one time. | Dacillo Dep. 9:22-11:17; Barnes Decl. Exh. 9 at ¶ 2. |
| 30.  Balboa's faxes were specifically targeted communications to clients or active prospects in Balboa's database. | Barnes Decl. Exh. 9 at ¶2; Dacillo Dep. 47:1-22, 49:6-50:17. |
| 31.  At no time did Balboa ever acquire or use "a cold fax list." | Barnes Decl. Exh. 9 at ¶2; Dacillo Dep. 47:1-22. |
| 32.  Balboa never sent faxes to anyone who was not either: 1) an existing customer; or 2) had submitted an application and therefore who were in the process of attempting to do | Barnes Decl. Exh. 9 at ¶2; Dacillo Dep. 18:22-20:4, 47:8-22, 50:6-17; Horwich Dep. 39:13-40:6. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| business with Balboa; or 3) had expressed interest in doing business with Balboa in the future. | |
| 33.  As a part of its marketing efforts, Balboa tracks its activities in a CRM database called SalesLogix. | Barnes Decl. Exh. 9 at ¶ 5; Dacillo Dep. 24:2-17; Horwich Dep. 14:7-14, 15:9-16:3. |
| 34.  If a prospect expressed interest in doing business with Balboa either immediately or in the future through Balboa's direct mail, or cold calling efforts, the prospect would be entered into the "active" SalesLogix CRM database. | Dacillo Dep. 18:22-20:4, 49:6-12; Nguyen Dep. 38:17-40:2, 69:10-20; Takeuchi Dep. 15:2-20; Horwich Dep. 75:6-22. |
| 35.  During these communications, Balboa employees did not follow a set script, but they did sometimes ask prospects for permission to fax. | Horwich Dep. 10:12-14, 22:20-22, 45:4-13; 46:12-15, 69:1-70:3; Byrne Dep. 43:1-4; Dacillo Dep. 20:5-18; Barnes Decl. Exh. 10(a), ¶4; Barnes Decl. Exh. 10(b), ¶4; Barnes Decl. Exh. 10(c), ¶4; Barnes Decl. Exh. 10(d), ¶4; Barnes Decl. Exh. 10(e), ¶4; Barnes Decl. Exh. 10(f), ¶4; Barnes Decl. Exh. 10(g), ¶4; Barnes Decl. Exh. 10(h), ¶4; Barnes Decl. Exh. 10(i), ¶4; Barnes Decl. Exh. 10(j), ¶4; Barnes Decl. Exh. 10(k), ¶4; Barnes Decl. Exh. 10(l), ¶4; Barnes Decl. Exh. 10(m), ¶4; Barnes Decl. Exh. 10(n), ¶4; Barnes Decl. |

| | |
|---|---|
| | Exh. 10(o), ¶4; Barnes Decl. Exh. 10(p), ¶4; Barnes Decl. Exh. 10(q), ¶4. |
| 36.  Jake Dacillo specifically testified about obtaining consent for faxing. | Dacillo Dep. 20:5-18. |
| 37.  While it cannot be determined that everyone who was entered into the active database gave explicit permission to receive communication by way of a fax, it is quite clear that these customers and prospective customers of Balboa were implicitly giving permission to receive communication, including faxes, from Balboa. | Dacillo Dep. 20:14-23:7; Byrne Dep. 48:4-50:10; Barnes Decl. Exh. 11(a), ¶5; Barnes Decl. Exh. 11(b), ¶5; Barnes Decl. Exh. 11(c), ¶5; Barnes Decl. Exh. 11(j), ¶5; Barnes Decl. Exh. 11(k), ¶5; Barnes Decl. Exh. 11(l), ¶5; Barnes Decl. Exh. 11(m), ¶5. |
| 38.  During the time that it did fax marketing, Balboa relied upon ProFax, Inc., a fax communication service located in New York, to transmit the faxes and provide opt-out language. | Dacillo Dep. 10:15-12:15; Blundo Dep. 11:10-12:15; Barnes Decl. Exh. 9 at ¶3. |
| 39. Balboa retained ProFax as a reputable firm in the fax communication industry. | Barnes Decl. Exh. 9 at ¶3. |
| 40.  ProFax was well-versed in the requirements of the TCPA and it kept abreast of developments in TCPA laws and regulations and changed its | Barnett Dep. 109:18-110:7, 111:3-19, 116:24-117:21. |

| | |
|---|---|
| practices to ensure compliance with the law. | |
| 41.  Balboa relied upon ProFax to provide it with compliant opt-out language and to ensure compliance with the TCPA. | Byrne Dep. 41:2-7; Dacillo Dep. 12:5-8, 15:10-19, 63:19-64:8. |
| 42.  For its part, ProFax transmitted faxes to the clients or prospects that Balboa identified. | Dacillo Dep. 64:17-22; Blundo Dep. 11:10-12:15; Barnett Dep. 15:16-21, 40:8-16. |
| 43.  While it appeared that the opt-out language on the Fax Plaintiffs received was provided by ProFax, ProFax could not confirm that the notice on the Fax was substantially similar to other faxes that were sent by Balboa. | Barnett Dep. 91:10-20, 95:25-96:11, 119:16-120:2. |
| 44.  Moreover, ProFax admitted that its opt-out language evolved over time. | Barnett Dep. 113:3-10. |
| 45.  In order to ensure compliance with the TCPA, Balboa maintained a filter within its SalesLogix CRM database that prevented customers or prospects from receiving faxes if they had opted out or indicated that they did not want to receive faxes. | Byrne Dep. 71:13-72:1; Dacillo Dep. 51:25-52:16, 54:6-55:17; Blundo Dep. 80:24-81:17. |
| 46.  ProFax assisted with this opt out process and provided Balboa with lists | Dacillo Dep. 54:6-9; Byrne Dep. 71:11-16; Blundo Dep. 79:9-81:17. |

16

| | |
|---|---|
| of people who had opted out through the opt-out mechanisms it provided. | |
| 47.  In addition, account representatives who were notified by customers that they did not wish to receive faxes would indicate that fact in the customer's record in the SalesLogix CRM database. | Byrne Dep. 54:6-18; Horwich Dep. 50:1-11; Nguyen Dep. 34:7-23; Takeuchi Dep. 26:16-27:9. |
| 48.  Plaintiffs bring this action based upon receipt of a single-page fax dated May 21, 2010.  The Fax was sent because Balboa had an Existing Business Relationship ("EBR") with Plaintiffs, and who were thus in the active SalesLogix CRM database. | Barnes Decl. Exh. 9 at ¶6, Exhibit A. |
| 49.  In addition, after Plaintiffs received the Fax, they took advantage of the opt-out mechanism identified on the Fax. | Horwich Dep. 48:7-49:18, 50:12-16, 59:10-60:14, Ex. 3; Barnes Decl. Exh. 9 at ¶7, Exhibit A; Barnes Decl. Exh. 8 ("Vandervort Dep.") 83:24-85:6 (admitting that he may have opted out). |
| 50.  Plaintiffs make no effort to dispute the fact that they had an EBR with Balboa. | *Cf.* Vandervort Decl. filed in support of Class Certification (Dkt. 42-29) ¶4. |
| 51.  Balboa's records demonstrate that Plaintiff responded to a direct mail inquiry, was assigned to a sales representative who made repeated | Barnes Decl. Exh. 9 at ¶¶5-6 & Ex. A. |

| | |
|---|---|
| calls to Plaintiff, and was activated in the database based on his inquiry. | |
| 52.  Moreover, Plaintiffs' fax number is readily available to anyone who wants it:  it is displayed on the Internet on their company website; in industry directories; and on company letterhead and business cards. | Vandervort Dep. 28:9-19, 39:16-42:10. |
| 53.  While Vandervort does not specifically recall the phone calls with Balboa that occurred in 2006, unsurprisingly, he cannot deny that they occurred since the calls were made more than five years ago. | Vandervort Dep. 112:12-25. |
| 54.  In addition, Balboa's business records include contemporaneous notations of three phone calls as well as Plaintiffs' response to a direct mail inquiry requesting information about Balboa services. | Barnes Decl. Exh. 9 at ¶6, Ex. A. |
| 55.  In addition, Vandervort admitted that he provided his fax number to vendors if asked. | Vandervort Dep. 111:3-6. |
| 56.  The Fax Plaintiffs received contained the Opt-Out. | Dkt. 18, Exh. 1 |
| 57.  The Opt-Out provided a toll-free mechanism that was available 24 hours a day and seven days a week. | Barnett Dep. 107:17-108:9. |

18

| | |
|---|---|
| 58. Balboa's records indicate that Vandervort opted out of receiving faxes on June 16, 2010. | Horwich Dep. 59:10-60:14, Ex. 3; Barnes Decl. Exh. 9 at ¶ 7, Ex. A. |
| 59. A notation was promptly made on Plaintiffs' account of the opt out request. | Barnes Decl. Exh. 9 at ¶7, Exhibit A. |
| 60. Plaintiffs admit that they received no additional faxes after opting out. | Vandervort Dep. 110:10-111:2, 111:11-18. |
| 61. Plaintiffs cannot identify any putative class member who ever received a fax after opting out. | Barnes Decl. Exh. 12, Pls' Resp. to Def's Requests for Admission, No. 13, p. 5. |
| 62. Recipients could call the toll free number or go to the website, either of which would prompt them to simply enter their fax number and the PIN contained in the opt-out notice. | Barnett Dep. 84:14-19, 85:8-86:11, 107:17-108:25; Byrne Dep. 113:8-20. |
| 63. A recipient could also fax an opt-out request directly to Balboa at the number provided on the fax. | Byrne Dep. 113:8-114:14. |
| 64. These methods were available 24 hours a day. | Barnett Dep. 108:7-9. |
| 65. By following the simple instructions, recipients would be able to opt out of receiving future faxes. | Barnett Dep. 108:16-25. |
| 66. The Opt-Out notice fully complied with the requirements outlined on the FCC's own website. | Barnes Decl. Exh. 13 ("FCC website") (FCC's own website says nothing about the elements that Plaintiffs claim are lacking.) |

19

| | |
|---|---|
| 67.  It is undisputed that ProFax, Inc. sent the Fax from New York. | Barnett Dep. 4:9-11; Barnes Decl. Exh. 9 at ¶4. |
| 68.  It is undisputed that Plaintiffs are located in Ohio. | Vandervort Dep. 15:19-25, 107:11-14. |
| 69.  Vandervort has admitted that he is not a resident of California. | Vandervort Dep. 106:25-107:6 |
| 70.  Vandervort has admitted that the Fax was not received in California. | Vandervort Dep. 108:4-109:6 |
| 71.  Vandervort has admitted that U.S. Sample Services is not incorporated in California. | Vandervort Dep. 15:19-20, 107:20-22 |
| 72.  Vandervort has admitted that U.S. Sample Services has no offices in California. | Vandervort Dep. 107:23-25 |
| 73.  Vandervort has admitted that U.S. Sample Services is not licensed to do business in California. | Vandervort Dep. 15:21-25 |

## RESPONSE TO CONCLUSIONS OF LAW

To the extent that Balboa disagrees with Plaintiffs' "conclusions of law," Balboa's arguments are contained in its Motion for Summary Judgment and Brief in Opposition to Plaintiffs' Motion for Summary Judgment.  Moreover, this Court has specifically directed that "no legal argument should be set forth in this document," (Initial Standing Order, Dkt. 6, at 10), therefore Balboa will not address Plaintiffs' "conclusions of law" in this Response.

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**PROOF OF SERVICE**

STATE OF OHIO, COUNTY OF CUYAHOGA

I am employed in the aforesaid County, and State of Ohio; I am over the age of eighteen years and not a party to the within action; my business address is 3900 Key Center, 127 Public Square, Cleveland, Ohio  44114.

On December 21, 2012, I served the following documents:

**PLAINTIFFS' AMENDED PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

__XX__ BY ELECTRONIC SERVICE:  by electronic filing with the Clerk of the Court using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an email address of record who have filed a Notice of Consent to Electronic Service in this action.

upon all interested parties as follows:

| | |
|---|---|
| Aytan Y. Bellin, Esq.<br>Bellin & Associates, LLC<br>85 Miles Avenue<br>White Plains, NY  10606 | Roger Furman, Esq.<br>7485 Henefer Avenue<br>Los Angeles, CA  90045 |
| Joseph Compoli, Esq.<br>612 East 185th Street<br>Cleveland, OH  44119 | Lance A. Brewer, Esq.<br>Brewer & Brewer<br>4533 MacArthur Boulevard<br>Suite 707<br>Newport Beach, CA  92660 |

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under the penalty of

21

1  perjury under the laws of the United States of America that the foregoing is true

2  and correct.

3

4  Executed on December 21, 2012, at Cleveland, Ohio.

5

6

7  By: _s/Nancy M. Barnes_____

8  Nancy M Barnes
   Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S STATEMENT OF GENUINE ISSUES OF FACT IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT