Nancy M. Barnes, Esq.
(*admitted pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Tel: (216) 566-5578; Fax: (216) 566-5800
E-mail: Nancy.Barnes@thompsonhine.com

Lance A. Brewer, Esq. CBN 125759
BREWER & BREWER
4533 MacArthur Boulevard, Suite 707
Newport Beach, California 92660
Tel: (714) 424-6300; Fax: (714) 424-4313
E-mail: Lbrewer@brewer-brewer.com

Attorneys for Defendant
BALBOA CAPITAL CORPORATION

# THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all other similarly situated,<br><br>            Plaintiffs,<br>    vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>            Defendant. | CASE NO. : SACV11-01578 JST(JPRx)<br><br>**DEFENDANT BALBOA CAPITAL CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 11, 2013<br>Time: 2:30 p.m.<br>Judge: Hon. Josephine Staton Tucker |

# <u>TABLE OF CONTENTS</u>

I.    UNDISPUTED MATERIAL FACTS  ..................................................... 1

II.   THE TCPA AND JFPA  ...................................................................... 3

III.  LEGAL ANALYSIS  ........................................................................... 5

    A.   The Application of the FCC's Opt Out Regulation
        to Solicited Facsimiles Is Outside the
        Scope of and Contradicts the TCPA Itself,
        And Therefore Balboa's Motion Should
        Be Granted As A Matter of Law As To
        The Recipients of Solicited Faxes  .................................................. 5

        1.    The TCPA is Unambiguous
            And Does Not Apply To Solicited
            Facsimiles  ....................................................................... 5

        2.    Congressional Intent Is Clear and Unambiguous ............... 6

        3.    The Only Federal Court to Address The
            The Issue on a Dispositive Motion Agrees
            That Recipients of Solicited Advertisements
            Have No Claim  ................................................................ 9

        4.    There Is No Private Right Of Action
            Under The Regulations For Solicited
            Faxes Because There Is No Violation
            Of The Statute  ............................................................... 11

    B.   The Hobbs Act Has No Application Here
        Because Balboa Is Not Seeking To Invalidate
        the FCC Regulation or An FCC Order  .......................................... 13

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

C.     There Is Nothing Improper About Balboa's
       Argument That Solicited Faxes Are Not Subject
       to the Requirements of the Opt-Out
       Regulations ................................................................ 14

       1.     The Law of the Case Doctrine
              Does Not Apply ............................................... 14

       2.     Merit Rulings in Class Certification
              Are Not Dispositive ........................................ 15

C.     Balboa's Opt-Out Substantially Complies
       With the Regulation ................................................... 17

       1.     Substantial Compliance is Sufficient .............. 19

D.     Plaintiffs Have Failed to Raise Any Genuine
       Issue of Material Fact Which Supports
       Their Claim Under California Law ............................. 21

V.     CONCLUSION ............................................................ 25

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Baker v. G.C. Servs. Corp.*, 677 F.2d. 775 (9th Cir. 1982) ................................. 18

*Been v. O.K. Indus., Inc.*, 495 F.3d.
    1217 (10th Cir. 2007) ................................................................... 15

*Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011) .................................... 16

*Chamber of Commerce v. Lockyer*, 2006 U.S. Dist. LEXIS 8324
    E.D. Cal. Feb. 27, 2006) ..............................................21-22, 23, 24

*Charvat v. Telelytics, LLC*,
    2006 Ohio 4632 (10th Dist. 2006) .......................................... 24

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) .................................................................. 5

*Cholakyan v. Mercedes-Benz USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) .......................................... 16

*Cicero v. U.S. Four, Inc.*, Franklin App. No. 07AP-310,
    2007 Ohio 6600 ....................................................................... 10

*Cincinnati Tel. Co. v. Public Utilities Comm'n of Ohio*,
    466 N.E.2d. 848 (Ohio 1984) ................................................ 14

*City of Los Angeles v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ................................................. 15

*Collins v. Locks & Keys of Woburn, Inc.*,
    2009 TCPA Rep. 1936 (Mass. Super.
    July 3, 2009) .......................................................................... 13

*Cort v. Ash*, 422 U.S. 66 (1975) ..................................................................... 12

*Dunbar v. Google, Inc.*, 2012 U.S. Dist. LEXIS
    177058 (N.D. Cal. Dec. 12, 2012) ....................................... 14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Fackelman v. Micronix*, 2012 Ohio 5513
    (Cuy. Cty. App. Nov. 29, 2012) ................................................ 11

*FCC v. ITT World Comm. Inc.*,
    466 U.S. 463 (1984) ................................................ 14

*FEC v. Democratic Senatorial Campaign
Committee*, 454 U.S. 27 (1981) ................................................ 6

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000) ................................................ 22

*Holster v. Gatco*, 618 F.3d 214 (2d. Cir. 2010) ................................................ 23

*Hovila v. Tween Brands, Inc.*, 2010 WL 1433417
    (W.D. Wash. 2010) ................................................ 23

*In the Matter of Response Card Marketing, Inc.*,
    27 F.C.C.R. 3895 (Apr. 10, 2012) ................................................ 5, 20

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d. 24 (2d. Cir. 2006) ................................................ 17

*In re NOS Communications*, 495 F.3d. 1052 (9th Cir. 2007) ................................................ 23

*In re Rail Freight Fuel Surcharge Litig.*,
    2012 U.S. Dist. LEXIS 97178
    (D.D.C. June 21, 2012) ................................................ 17

*In re Response Card Marketing, Inc.*,
    27 FCCR 3895 (April 10, 2012) ................................................ 9, 19

*Ketch, Inc. v. Heubel Material Handling Inc.*,
    2011 WL 1807329 (W.D. Okla. 2011) ................................................ 2, 10

*Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702
    (D. D.C. June 15, 2007) ................................................ 2

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114
   (D. Wisc. March 9, 2009) ........................................................ 10, 17, 20-21

*Leyse v. Clear Channel Broadcasting, Inc.*,
   697 F.3d. 360 (6th Cir. 2012) .................................................... 13-14

*Magana Cathcart McCarthy v. CB Richard Ellis, Inc.*,
   94 Cal. Rptr. 3d. 109 (Cal. Ct. App. 2009) ................................ 20

*Medical West Ballas Pharmacy, Ltd. v. Anda, Inc.*,
   2011 WL 1481007 (Mo. Cir. 2011) ........................................... 13

*Meilleur v. AT&T, Inc.*, 2011 WL 5592647
   (W.D. Wash. 2011) ...................................................................... 23

*Messner v. Northsore Univ. HealthSystem*,
   669 F.3d. 802 (7th Cir. 2012) .................................................... 17

*Miller v. Painters Supply & Equip. Co.*,
   2011 Ohio App. LEXIS 3327 (8th Dist.) ................................... 11

*Mims v. Arrow Financial Services, LLC*,
   132 S.Ct. 740 (2012) ................................................................... 12

*Nack v. Walburg*, No. 4:10cv00478 AGF,
   2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan. 28, 1011) ............. 5, 10, 11, 13

*Patriotic Veterans Inc. v. State of Indiana*,
   821 F. Supp. 2d. 1074 (S.D. Ind. 2011) ..................................... 24

*Penzer v. Transportation Ins. Co.*,
   545 F.3d. 1303 (11th Cir. 2008) ................................................ 17

*Rural Iowa Ind. Tel. Ass'n. v. Iowa Util. Bd.*,
   362 F.3d 1027 (8th Cir. 2004) ................................................... 14

*Saf-T-Guard Int'l Inc. v. Vanguard Energy Servs, LLC*,
   2012 U.S. Dist. LEXIS 174222 (N.D. Ill.
   Dec. 6, 2012) ............................................................................... 10

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d. 946 (9th Cir. 2009) .................................................................... 9

*Stenehjem v. FreeEats.com, Inc.,* 712 N.W.2d. 828
    (N.D. 2006) .......................................................................... 23

*TSA Stores, Inc. v. Dept. of Agriculture and Consumer Servs.,*
    957 So.2d. 25 (Fla. App. 2007) .................................................... 23

*Transamerica Mortgage Advisors, Inc. (TAMA v.*
    *Lewis,* 444 U.S. 11 (1979) ........................................................ 11

*U.S. v. Laerdal Mfg. Corp.,* 73 F.3d 852
    (9th Cir. 1995) ............................................................................ 2

*U.S. v. Smith,* 389 F.3d 944 (9th Cir. 2004) .................................... 14, 15

*United States v. Houser,* 804 F.2d. 565 (9th Cir. 1986) ........................ 15

*United Steel, Paper & Forestry, Rubber, Mfg.*
    *Energy, Allied Indus. & Serv. Workers Int'l*
    *Union, ALF-CIO v. ConocoPhilips Co.,*
    593 F.3d. 802 (9th Cir. 2010) ................................................. 15

*Utah Div. of Consumer Protection v. Flagship Capital,*
    125 P.3d. 894 (Utah 2005) ..................................................... 23

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) .................. 15, 16

*Wyeth v. Levine,* 555 U.S. 555 (2009) ............................ 15, 16, 22, 24

*Zimmerman v. State of Ore Dept. of Justice,*
    170 F.3d. 1169 (9th Cir. 1999) ................................................. 6

**Other Authorities**

15 U.S.C. § 1692g ........................................................................ 18

28 U.S.C. § 2342 . ................................................................... 13, 14

vi

47 C.F.R. § 64.1200(a)(3)(iv) ............................................................... 10, 11

71 Fed. Reg. at 25,969 ...................................................................... 19

Junk Fax Protection Act .................................................... 3, 6, 11, 13, 22

Sen. Rep. 109-076 ............................................................................ 7

Telephone Consumer Protection Act ("TCPA"),
       47 U.S.C. § 227 ........................................................... Passim

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Michael Vandervort ("Vandevort") and U.S. Sample Services ("U.S. Sample") (collectively, "Plaintiffs") have failed to establish a genuine issue of material fact with respect to the Motion for Summary Judgment filed by Defendant Balboa Capital Corporation ("Balboa").  As a result, the Court should grant Defendant's Motion finding that: 1) class members who received solicited facsimile advertisements have no claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as a matter of law; 2) that Balboa's opt-out language substantially complied with the TCPA and thus, all class members' claims should be dismissed; and 3) that Plaintiffs' individual claims under California law are preempted and should be dismissed.

## II.   UNDISPUTED MATERIAL FACTS

While the majority of issues that the Court must address in this Motion are ones of pure law, Plaintiffs have tried to create some artificial issues of fact – most of which are not material,[1] or frankly, even disputes.  These are addressed in detail in Defendant Balboa Capital Corporation's Reply to Plaintiffs' Statement of Genuine Issues of Fact in Support of Defendant's Motion for Summary Judgment ("RSOF") filed herewith, but the most salient points are addressed below.

- With respect to the facts that relate to Plaintiffs' California claim, Plaintiffs admit that there are no disputed facts (RSOF 47-53).
- Plaintiffs claim that there is a dispute regarding whether the opt out on the facsimile transmitted to Plaintiffs ("the Fax") was "conspicuous" as required by the regulations, but they offer no evidence in support of this supposed dispute.  Moreover, a review of the Fax itself reveals that all of the language contained on the fax is readable and legible, and it is distinct from the rest of

---

[1] For purposes of Balboa's Motion, the number of faxes and which faxes contained an opt out similar to Plaintiffs' Fax is not material to this Motion, but it is in dispute.  *See* Balboa's Opposition to Plaintiff's Motion for Summary Judgment.

1

the ad copy.  Because Plaintiffs have offered nothing to dispute this fact, the Court should find it to be undisputed.  (RSOF 2)

- Plaintiffs offer no evidence to dispute the fact that Balboa employees followed no set script when speaking with customers and they did sometimes ask for permission to fax.  Additionally, Jake Dacillo specifically testified about obtaining consent to fax.  Plaintiffs try to refute these facts by pointing out that Balboa had no policy of asking for permission (which does not refute the statement) and arguing that employees sometimes asked for permission to fax an application.  This evidence does not raise a material issue about whether some recipients consented to receiving faxes.  (RSOF 15-16).

In addition, Plaintiffs have agreed (or have quibbled in a way that fails to meet the requirements of Rule 56) that many of the relevant facts in this matter are undisputed.  For example, only one Fax was sent to Plaintiffs (RSOF 1); Balboa no longer uses fax marketing (RSOF 8);[2] it relied upon ProFax to provide it with compliant opt-out language and to transmit faxes to its clients or prospects (RSOF 21-22); ProFax assisted with the opt out process and provided lists of people who opted out to Balboa (RSOF 26); Vandervort cannot recall and does not deny that he had phone calls with Balboa in 2006 and that he did provide fax numbers to a vendor on occasion (RSOF 33, 35); Balboa's business records indicate that Vandervort opted out on June 16, 2010  and a notation was promptly made on his account, and he never received another fax from Balboa (RSOF 38, 39, 40); Plaintiffs cannot identify a single recipient who received a fax after opting out (RSOF 42); and Plaintiffs agreed that by following simple instructions, recipients were able to opt out of receiving future faxes. (RSOF 45).  The bottom line is that

---

[2] As a result, there is no basis for injunctive relief.  *U.S. v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995); *see also Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702, *7 (D.D.C. June 15, 2007).

2

the opt out notice was effective and achieved its statutory purpose, and there is no evidence to the contrary.[3]

## II.    THE TCPA AND JFPA

Balboa recognizes that it has laid out the language of the statute and the regulations in both its original Motion and its Opposition to Plaintiffs' Motion for Summary Judgment.  Nevertheless, it includes a portion of that text again here because the statutory language is – and must be – the ultimate basis for the Court's decision on this Motion.  A painstaking analysis of the language of the TCPA as modified by the Junk Fax Protection Act ("JFPA"), reveals a very simple truth about Congressional intent – Congress never intended to legislate or regulate the conduct of people who send solicited facsimile advertisements.

Since the very beginning of federal junk fax legislation – more than twenty years ago – Congress has consistently legislated and revised a statute that only applies to unsolicited facsimile advertisements.[4]  In 2005, Congress, enacted the JFPA which amended the TCPA and codified the EBR exception that the FCC had adopted prior to 2003.  Section 227(b)(1)(C), now makes it unlawful:

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, **an unsolicited advertisement,** unless —
>
> (i) **the unsolicited advertisement** is from a sender with an established business relationship with the recipient; [and]
>
> * * *

---

[3] Plaintiffs have conceded that the issues relating to EBRs and implicit consent provided by Vandervort and class members is irrelevant for purposes of this Motion. *See* Opp. at 4, n. 4.

[4] If Congress had wished to do so, it was more than capable of amending the TCPA by simply adding two words "and solicited" to the law.  It did not do so despite substantially re-working the statute when it passed the JFPA in 2005.  This omission cannot be brushed aside and ignored as Plaintiffs advocate.  The failure to include those words evinces the clear intent of Congress.

3

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

> (iii) **the unsolicited advertisement** contains a notice meeting the requirement under 2(D) . . . .

47 U.S.C. § 227(b)(1)(C) (emphasis added).  Subsection 227(b)(3) furthermore provides for a private right of action as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that state —
> (A) an action **based on a violation of this subsection** or the **regulations prescribed under this subsection** to enjoin **such violation,**[5]
> (B) an action to recover for actual monetary loss from **such a violation,** or to receive $500 in damages for each **such violation,** whichever is greater, or
> (C) both such actions.

*Id.* (emphasis added).

Moreover, when Congress provided the FCC with the authority to make regulations regarding the TCPA, it stated the following:

> 2) **Regulations; exemptions and other provisions**
>
> The Commission shall prescribe regulations <u>to implement the requirements of this subsection.</u>[6] In implementing the requirements of this subsection, the Commission—
>
> > (D) shall provide that **a notice contained in an unsolicited advertisement** complies with the requirements under this subparagraph only if . . . .

47 U.S.C. § 227 (emphasis added).

As set forth above, the language of the statute is unambiguous as is Congressional intent.  Plaintiffs' repeated invitation to this Court to put blinders on

---

[5] Plaintiffs carefully use ellipses when quoting this section of the statute to avoid the full import of the language as drafted by Congress. *See* Opp. at 19.

[6] Again, Plaintiffs fail to quote the entire section of the statute because to include subsection (D) would undermine their argument that there is a private right of action for recipients of solicited facsimiles. *Cf. id.* with Opp. at 20.

4

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

and focus its attention solely on the regulations or the FCC's interpretations or orders simply invites error. Where the statute and Congressional intent are clear, the Court need look no farther. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984) (holding that if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress).

## III.   LEGAL ANALYSIS

### A.   The Application of the FCC's Opt-Out Regulation to Solicited Facsimiles Is Outside the Scope of and Contradicts the TCPA Itself, And Therefore Balboa's Motion Should Be Granted As A Matter of Law As To The Recipients of Solicited Faxes.

#### 1.   The TCPA is Unambiguous And Does Not Apply To Solicited Facsimiles.

Plaintiffs have a fundamental misunderstanding of the interplay between statutory interpretation, agency regulations and interpretations, the Hobbs Act and the deference that courts provide under *Chevron*. In Plaintiffs' world, once an agency has spoken on a topic – in this case, through the *In the Matter of Response Card Marketing, Inc.*, 27 F.C.C.R. 3895 (Apr. 10, 2012) ("Response Card") Order and its amicus brief in the *Nack* case – courts must end their review and simply defer to that agency interpretation. *See* Opp. 12-13. Rather than working through the full analysis required under *Chevron*, Plaintiffs expeditiously and self-servingly want to skip the first critical step, which is to determine what the statute says and whether it is at all ambiguous. *Chevron*, 467 U.S. at 842-43.

Given the voluminous and repeated references to "unsolicited facsimiles" in the statutory language of the TCPA and – in stark contrast—the absolute dearth of references to "solicited facsimiles," a court need look no further than the statute itself to determine that there can be no violation of the TCPA with respect to solicited facsimiles. Furthermore, with respect to the regulations promulgated

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

under that same statute, there can be no private right of action for violations of regulations that do not themselves constitute violations of the statute. The fact that the agency has come to a different interpretation regarding its own regulations or the scope of its authority is of absolutely no consequence to this Court. The statute itself is absolutely unambiguous – and Plaintiffs have raised no argument to the contrary. Accordingly, the language of the statute controls. *See id.; FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32 (1981) (finding that the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent); *Zimmerman v. State of Ore. Dept. of Justice*, 170 F.3d 1169, 1173 (9th Cir. 1999) (where Congress unambiguously expressed its intent that Title II of the ADA did not apply to employment, Attorney General's regulations to the contrary carried no weight).

## 2. Congressional Intent Is Clear and Unambiguous.

When passing the JFPA,[7] the intent of Congress could not be more clear with respect to activities relating to faxes. In each instance, Congress repeatedly and exclusively referred to **unsolicited** fax advertisements when discussing its intent or the scope of the JFPA. For example, when outlining the purpose of the JFPA, the Senate Report provides as follows:

> Create a limited statutory exception to the current prohibition against the faxing of unsolicited advertisements to individuals without their 'prior express invitation or permission' by permitting such transmission by senders of commercial faxes to those with whom they have an established business relationship (EBR).

> Require that senders of faxes with unsolicited advertisements (i.e., 'junk faxes') provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements and a cost-free mechanism for recipients to opt out pursuant to that notice.

---

[7] We have focused on the JFPA because those amendments provided the genesis for the opt-out requirements.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*See* Sen. Rep. 109-076 at 1 (emphasis added) (attached as Exh. 15 to Barnes Decl. in support of Opposition to Plaintiff's Motion for Summary Judgment).   In addition, the Senate Report indicated the intent of the JFPA:

> [The bill] would amend current law and regulations relating to
> unsolicited advertisements sent via telephone facsimile machine. The
> bill would direct the Federal Communications Commission (FCC) to
> issue regulations to control such advertisements and would require the
> FCC and the Government Accountability Office to issue reports to the
> Congress on the effectiveness of those regulations. The FCC currently
> enforces laws relating to unsolicited advertisements, including
> assessing and collecting civil penalties for violations of such laws.

*Id.* at 8 (emphasis added).  The Senate Report provides further insight into congressional intent because it documents proposed changes that were made to the opt-out requirements by amendment.

> On April 13, 2005, the Committee held an Executive Session chaired
> by Senator Stevens at which [the JFPA] was considered. Senator
> Boxer offered two amendments. The first amendment would have
> amended section 2(c)(3) to require that senders of unsolicited
> advertisements notify recipient consumers or businesses of their
> ability to make a request to the sender of the unsolicited advertisement
> at any time of the day, seven days a week, to opt out of future
> solicitations. The bill as introduced allows for such a request to be
> made only during regular business hours. . . . The amendments were
> adopted by voice vote.

*Id.* at 7  (emphasis added).  This legislative history makes clear that the intent of Congress was to restrict, limit or prohibit activities relating to the sending of unsolicited facsimile advertisements.  There is absolutely no indication whatsoever that Congress intended the TCPA or JFPA or related regulations to apply to solicited facsimiles advertisements.

7

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Moreover, the text of the statute itself embodies this purpose and limitation. In each and every instance, the statute unambiguously and explicitly refers only to unsolicited facsimile advertisements.

(1) Prohibitions
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—

>> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; [and]

> * * *

>> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D), except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or

> D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if—

>> (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;
>> (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
>> (iii) the notice sets forth the requirements for a request under subparagraph (E);

8
**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

* * *

(h) Junk fax enforcement report
The Commission shall submit an annual report to Congress regarding the enforcement during the past year of the provisions of this section relating to <u>sending of unsolicited advertisements</u> to telephone facsimile machines, which report shall include—
> (1) the number of complaints received by the Commission during such year alleging that a consumer received <u>an unsolicited advertisement</u> via telephone facsimile machine in violation of the Commission's rules;
> (2) the number of citations issued by the Commission pursuant to section 503 of this title during the year to enforce any law, regulation, or policy relating to <u>sending of unsolicited advertisements</u> to telephone facsimile machines.

47 U.S.C. § 227 (emphasis added).

Because the statute is clear that it only applies to unsolicited faxes, the Court need look no further when addressing the TCPA claims raised by Class members who received solicited fax advertisements.   Contrary to Plaintiffs' repeated assertions, the FCC's interpretations in *Response Card* are of no moment here.[8] *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (noting that if Congressional intent is clear, then that is the end of the matter).   Under the TCPA, the Class members who are recipients of solicited facsimiles have no claim. The Court need not look to the FCC's own interpretation or its regulations, because the statute itself is clear and unambiguous.

### 3.   The Only Federal Court to Address The Issue on a Dispositive Motion Agrees That Recipients of Solicited Advertisements Have No Claim.

In an effort to avoid the application of the only federal case to explicitly decide in a dispositive motion the issue of whether the opt-out requirements apply

---

[8] Indeed, *Response Card* did not address the applicability of the regulations to solicited facsimiles.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

to solicited facsimiles, Plaintiffs self-servingly characterize that case and its progeny as "outliers" while citing to four unreported cases – which presumably are not "outliers" under Plaintiffs' self-designated hierarchy because they agree with Plaintiffs' position.[9]

The *Nack* court went through a careful analysis of this issue and came to the conclusion that if a fax is "solicited" or there is otherwise consent to receive it, there simply cannot be a TCPA violation. *Nack v. Walburg*, No. 4:10cv00478 AGF, 2011 U.S. Dist. LEXIS 8266 (E.D. Mo. Jan. 28, 2011)[10] ("This Court concludes, however, that 47 C.F.R. §64.1200(a)(3)(iv) does not apply to the facts of this case, which does not involve an "unsolicited" fax advertisement."); 47 U.S.C. § 227(b)(1)(C) (making it unlawful for a person to "use any telephone facsimile machine" to send an "unsolicited advertisement"); *see also Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114, *16 (D. Wisc. March 9, 2009) ("the statute refers to unsolicited fax advertisements, not solicited fax advertisements like the fax advertisements defendant sent to plaintiff"); *Cicero v. U.S. Four, Inc.*, Franklin App. No. 07AP-310, 2007 Ohio 6600, ¶ 42 (TCPA only applies to unsolicited faxes); *Saf-T-Guard Int'l Inc. v. Vanguard Energy Servs, LLC*, 2012 U.S. Dist. LEXIS 174222 at *17 & 20 (N.D. Ill. Dec. 6, 2012) (certifying a class of recipients who received unsolicited facsimiles that did not contain an opt-out and noting that

---

[9] The federal case cited by Plaintiffs, *Ketch, Inc. v. Heubel Material Handling Inc.*, 2011 WL 1807329 (W.D. Okla. 2011), merely decides a motion to amend under the liberal standard of Rule 15 whereas the *Nack* decision is based on a dispositive motion in which the court addresses the merits of the claims.

[10] One is left to wonder why the 8th Circuit Court of Appeal has not yet rendered a decision in the *Nack* case. According to Plaintiffs' theory of jurisprudence, the FCC has weighed in with an amicus brief which supposedly decides the matter. *See* Opp. at 19. If the decision were as simple as Plaintiffs portray, it should not take the court ten months to render a decision when the FCC filed its amicus brief in February 2012. What Plaintiffs fail to appreciate, apparently, is that courts frequently disregard or rule against the interpretations provided by agencies in amicus briefs and other rulings.

10

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

it was "skeptical" that plaintiffs could prevail on an opt-out claim if the fax was solicited).  Likewise, the *Nack* court found that "the [federal regulation] in question, 47 C.F.R. § 64.1200(a)(3)(iv), purports, on its face, to apply only to unsolicited faxes." *Nack*, 2011 U.S. Dist. LEXIS 8266, *11 (rejecting assertion that all faxes, whether solicited or unsolicited, must contain opt-out language). "Simply put, the above provisions, and the opt-out notice requirements thereunder, do not apply to fax transmissions unless they constitute unsolicited advertisements." *Miller v. Painters Supply & Equip. Co*, 2011 Ohio App. Lexis 3327, ¶19 (8th Dist.); *see also Fackelman v. Micronix*, 2012 Ohio 5513 (8th Dist. Nov. 29, 2012) (following *Nack* and finding that TCPA only applies to unsolicited faxes and thus claim for violation of opt out regulation fails).

> **4.    There Is No Private Right Of Action Under The Regulations For Solicited Faxes Because There Is No Violation Of The Statute.**

Plaintiffs have studiously avoided directly addressing one of the purely legal questions that faces this Court.  Can Plaintiffs collect damages for an alleged violation of an FCC regulation that applies to solicited facsimiles when that regulation does not relate to a violation of the statute itself because the statute repeatedly and exclusively refers only to unsolicited facsimiles?  The answer to that question is a resounding no.  To answer otherwise is to completely contradict the language of the statute itself and to hinder the intent of Congress.

The question of whether a statute creates a private cause of action is one of statutory construction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). In determining whether the TCPA, as amended by the JFPA, creates a private right of action against a person who sent an advertising fax with the recipient's specific express permission, a court should consider such factors as: 1) whether the plaintiff falls within the class the statute sought to benefit; 2) whether there is legislative intent to create a private right of action; 3)

and whether the cause of action is consistent with the legislative scheme. *Cort v. Ash*, 422 U.S. 66, 78 (1975).  In each instance, the answer is no for recipients of solicited faxes.

Section 227(b)(3)(A) of the TCPA provides that there is a private right of action "based on a <u>violation of this subsection</u> or the regulations prescribed <u>under this subsection</u> to enjoin such violation." *Id.* (emphasis added).  Balboa has never suggested that there can be no private right of action for violations of the TCPA or the regulations that address those same violations.  Rather, Balboa has simply asked the Court to look to the statutory language to determine whether there is a private right of action for violations of regulations that fall outside the scope of the subsection set forth in the statute.

In *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012), a case perpetually cited by Plaintiffs, the Supreme Court makes no finding with respect to this precise question.  Rather, *Mims* simply settles the question of whether federal courts have federal question jurisdiction over TCPA claims – a subject not at issue here.  *See id.* at 747.  In resolving this uncertainty, the Supreme Court noted that the TCPA did provide for a private right of action, but it never discussed the scope of such an action and whether it would apply to the right to bring an action for a violation of a regulation that sought to enjoin conduct was beyond the scope of the statute itself.  In fact, when the Court discussed the scope of the TCPA, it noted that it principally applied to four practices – including a statement that the "Act proscribes sending **unsolicited** advertisements to fax machines. § 227(b)(1)(C)." *Id.* at 745 (emphasis added).  Accordingly, in interpreting the very section of the TCPA that provides for a private right of action, the Supreme Court noted that the Act applied to unsolicited fax advertisements.

There is no question that the FCC requires an opt out on solicited faxes pursuant to its regulations.  That has never been the dispute and Balboa does not challenge that regulation.  The question is whether Balboa can be held liable for

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

statutory damages under Section 227(b)(1)(C) of the TCPA if it violated that regulation.[11]

In this case, the claims asserted on behalf of the recipients of solicited faxes do not meet this test. Rather, under the TCPA, as amended by the JFPA, Congress created a private cause of action in favor of those parties who receive an "unsolicited fax advertisement" and against fax senders who send "unsolicited fax advertisements." Specifically, a cause of action exists for violating the statutory subsection (which only applies to unsolicited faxes) and the regulations set forth and prescribed under that same subsection which again only refers to unsolicited facsimile advertisements. Accordingly, even if the Court finds that the regulations were violated by Balboa, the private right of action provided by Congress is limited to violations of the statute or regulations that address violations of the statute. Nothing in the TCPA established a private right of action with respect to solicited facsimiles, an area that Congress itself did not choose to restrict.

**B.    The Hobbs Act Has No Application Here Because Balboa Is Not Seeking To Invalidate the FCC Regulation or An FCC Order.**

The Hobbs Act, 28 U.S.C. § 2342, has no application to this analysis. Section 2342 only applies where the action's central object is to "enforce or undercut an FCC order." *Leyse v. Clear Channel Broadcasting, Inc.*, 697 F.3d. 360, 373 (6th Cir. 2012) (concluding that court had jurisdiction because central

---

[11] Plaintiffs point to two bare-bones orders in support of their theory. For example, in the two-page order granting class certification, the *Collins* court noted that there was no evidence of consent on the record. *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 at 1 (Mass. Super. July 3, 2009). Accordingly, it did not need to address the issue presented here. Similarly, in the unpublished decision of *Medical West Ballas Pharmacy, Ltd. v. Anda, Inc.*, 2011 WL 1481007 (Mo. Cir. 2011), the state court issued its ruling in the context of a motion to dismiss in which it noted that the complaint alleged that no faxes were sent with express consent and it had to accept that allegation as true. *Id.* at 1. The court went in *dicta* to misstate what Section 227(b)(2)(D) "instructs." *Id.* at 2. In any case, these scanty opinions stand in stark contrast to *Nack* and its progeny.

13

purpose of case was to seek damages and injunction from private party and the FCC was not a party to the case); *cf. FCC v. ITT World Comm. Inc.*, 466 U.S. 463, 468-69 (1984) (holding that Hobbs Act applied to action where FCC was party and purpose was to undercut FCC order). Balboa is not asking the Court to enjoin, set aside or suspend the FCC regulation at issue. Indeed, the FCC is not a party to this litigation. Rather, Balboa is asking the Court to simply hold that the regulation, while wholly valid, does not apply to the facts of this case with respect to recipients of solicited facsimiles or where there has been substantial compliance. *See Cincinnati Tel. Co. v. Public Utilities Comm'n of Ohio*, 466 N.E.2d 848, 853 (Ohio 1984) (implementing depreciation rates that were allegedly inconsistent with FCC order and finding no Hobbs Act violation because FCC order was not being enjoined, suspended, set aside or invalidated). When neither party seeks to readjudicate an order conclusively decided by the FCC, the Hobbs Act has no application. *See Rural Iowa Ind. Tel. Ass'n. v. Iowa Util. Bd.*, 362 F.3d. 1027, 1030 (8th Cir. 2004).

**C.    There Is Nothing Improper About Balboa's Argument That Solicited Faxes Are Not Subject to the Requirements of the Opt-Out Regulations.**

**1.    The Law of the Case Doctrine Does Not Apply.**

Without explicitly stating it, Plaintiffs appear to contend under a "law of the case" theory that Balboa may not raise in its Motion for Summary Judgment the issue of whether the TCPA (and the private right of action thereunder) applies to solicited faxes. *See* Opp. at 17. "While law of the case doctrine generally establishes a presumption against reopening issues already decided, the 'doctrine is not an inexorable command, nor is it a limit to a court's power.'" *Dunbar v. Google, Inc.*, 2012 U.S. Dist. LEXIS 177058, *25-26 (N.D. Cal. Dec. 12, 2012) (quoting *U.S. v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (internal quotations, alterations, and citations omitted)). Rather, the application of the doctrine is

14

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

discretionary. Law of the case doctrine should not be construed as "imping[ing] upon a district court's power to reconsider its own interlocutory order[s] provided that the district court has not been divested of jurisdiction over the order." *Id.* at *26 (*quoting United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)); *see also Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007) (holding that, under law of the case doctrine, "district courts generally remain free to reconsider their earlier interlocutory orders"); *Smith*, 389 F.3d at 949 (stating that "[t]he law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction" (*quoting City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001)). Accordingly, because the Court's Order on Class Certification is an interlocutory order, it is not subject to the law of the case doctrine.

## 2. Merits Rulings in Class Certification Are Not Dispositive.

Moreover, while the determination that the Court made in ruling on the Motion for Class Certification touched on the merits of the case (as provided for in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)), those limited merit rulings were made in the context of determining whether Plaintiffs had met the standards for Rule 23 and class certification. In deciding class certification, the primary question is not whether plaintiffs have stated a cause of action that will ultimately prevail on the merits, but whether the party seeking certification has met the requirements of Rule 23. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

Nor is the Court's order on class certification a final ruling on the merits of the case. As the Supreme Court itself recognized:

> . . . Perhaps the most common example of considering a merits question at the Rule 23 stage arises in class-action suits for securities fraud. Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting

15

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

only individual members" would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation. But the problem dissipates if the plaintiffs can establish the applicability of the so-called "fraud on the market" presumption, which says that all traders who purchase stock in an efficient market are presumed to have relied on the accuracy of a company's public statements. To invoke this presumption, the plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market, *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. ___, ___, 131 S. Ct. 2179, 180 L. Ed. 2d 24, 2011 U.S. LEXIS 4181 (2011), **an issue they will surely have to prove again at trial in order to make out their case on the merits**.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552, n.6 (2011) (emphasis added). As set forth above, the Supreme Court, in addressing the analysis of the legal merits in the context of a Rule 23 motion, clearly contemplated that courts would have to address those same merits again at trial or in a dispositive motion. *Id.*

In the decisions that have come after *Dukes*, courts have dealt with the issue of whether class determinations are dispositive of the entire legal action and found to the contrary. For example, the Third Circuit held that courts need not address at the class certification stage any merits inquiry that is unnecessary to the Rule 23 determination and that <u>any findings made for class certification purposes do not bind the fact-finder on the merits</u>. *Behrend v. Comcast Corp.*, 655 F.3d 182, 190 (3d Cir. 2011); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 542 (C.D. Cal. 2012) (noting that "[b]ecause a decision to certify a class <u>is far from a conclusive judgment on the merits</u> of the case," any Daubert analysis conducted in connection with class certification should be for purposes of that proceeding only) (internal citations omitted) (emphasis added). In addition, the Seventh Circuit recently observed that a district court must resolve factual disputes necessary to class certification, but that "the court should not turn the class

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *see also In re Rail Freight Fuel Surcharge Litig.*, 2012 U.S. Dist. LEXIS 97178 at *81, n. 8 (D.D.C. June 21, 2012) (noting that findings were for purpose of class certification and not a finding on the merits at trial); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 39 (2d Cir. 2006) (ruling on class certification no more binding than ruling on preliminary injunction). Accordingly, Balboa respectfully requests that the Court consider its arguments regarding the intent of Congress and the express language of the statute when determining for purposes of this Motion whether class members who received solicited facsimiles are entitled under the law to an opt-out notice.[12]

### C.    Balboa's Opt-Out Substantially Complies With The Regulation.

The fact that the TCPA is a "strict liability statute" does not equate to a conclusion that a fax advertiser must strictly comply with all provisions of the TCPA (and the related FCC regulations). Indeed, the case cited by Plaintiffs for this proposition, *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008), contains no such holding. *Id.* (addressing whether insurance provided coverage in light of the fact that intentional misconduct was not required to find liability under the TCPA); *cf. Landsman & Funk, P.C.*, 2009 U.S. Dist. LEXIS 18114 at *9 (finding no violation of regulations even though the opt-out in question did not contain a statement that a response to an opt out request must be made within 30 days, and furthermore failed to state that the opt out request must include the specific requirements listed in the regulation).

---

[12] Numerous commentators have pointed out the practical problem that this represents for everyday businesses who can no longer fax over a menu, for example, at the explicit request of a customer for fear of running afoul of the restrictions that Plaintiffs seek to impose on anyone who faxes.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs try unsuccessfully to analogize the situation of a recipient of a Balboa fax to that of a debtor who receives notice of a debt-collection proceeding in which the debtor is not informed (as the statute requires) that he has the option of contesting the debt. *See* Opp. at 11, n.6 & *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777-78 (9th Cir. 1982) (finding that the "language of the notice is simply not sufficient to put a debtor on notice that he could dispute a portion of the debt. A debtor who does owe a valid obligation to the creditor but could dispute finance charges, interest, or have some valid defense, might not be put on notice that he could dispute these additional charges."). By contrast, there is no evidence that either Plaintiffs or any class member could not understand the text of the opt-out notice on the Fax or follow what Plaintiffs have admitted are "simple instructions" that permitted recipients to opt-out of receiving future faxes. (RSOF 45). As a result, Plaintiffs' analogy simply does not apply.[13]

Plaintiffs also apparently misapprehend Balboa's argument with respect to the efficacy of its opt-out procedures. Balboa is not suggesting that Plaintiffs must demonstrate that the opt-out mechanism was ineffective with respect to some individual class member in order to prevail on their claims. *Cf.* Opp. at 14, n.8. Rather, Balboa is simply making the point that it substantially complied in that its opt-out notice met the intent of Congress and the FCC. It provided an opt-out that was effective (i.e., no evidence that anyone tried to opt out and was unsuccessful),

---

[13] The FDCPA statute spells out the text that must be included in the debt validation notice, (15 U.S.C. §1692g), and what Plaintiffs call "strict construction" is simply a cut-and-paste of the black-letter statutory requirements. By contrast, the TCPA does not dictate the exact wording or appearance of the opt-out notice, and even the FCC has explicitly declined to do so. The cases Plaintiffs cite do not stand for the over-reaching proposition that strict liability statutes are always strictly construed. In fact, one case addresses the bona fide error defense in the FDCPA, which runs counter to Plaintiffs' theory that the TCPA and FDCPA are analogous and are always strictly construed.

18

and moreover, recipients only had to follow simple instructions to opt out of receiving future faxes. *See* RSOF 45 (undisputed by Plaintiffs). Of the hundreds of thousands of faxes sent, Plaintiffs cannot identify a single instance where a recipient wanted to, but could not, opt out of future faxes. Moreover, Plaintiffs have failed to identify a single instance where a recipient opted out and later received another fax. RSOF 41.

Moreover, as required by the FCC,[14] Balboa's notice serves the purpose of the statute by giving recipients of a fax an easy mechanism for avoiding future faxes. *See* 71 Fed. Reg. at 25,969. The notice on the Fax was at the bottom of the page and included a toll free number as well as a website to contact as an opt-out mechanism and was conspicuous and easily readable. Dkt. 18, Exh. 1; RSOF 2. Just above the notice was a fax number at which the Plaintiffs also could have opted out of receiving the faxes. Dkt. 18, Exh. 1; RSOF 43. All of these mechanism were available 24 hours a day. RSOF 44. Finally, the notice clearly lays out how a reasonable consumer can opt-out of receiving faxes and therefore satisfies the intentions and requirements of the statute. RSOF 45-46.

### 1.   Substantial Compliance is Sufficient.

Because they have no caselaw to support their claim that the Opt-Out does not substantially meet the requirements of the Regulation, Plaintiffs rely upon *Response Card*, an FCC Forfeiture Order that does not address the facts presented here.[15] In the Order, the FCC found a company's brief opt-out notice lacking. As

---

[14] While it is true that the FCC's website does not claim to be the final, authoritative guide as to what a sender must do to comply with the law, (*see* Opp. at 16, n. 10), it is curious that the resource that most laypeople would use to determine if their opt-out language complies would fail to include allegedly critical information – without which no opt-out could possibly be compliant with the FCC regulations. One would think that such essential components would be included in the agency's own publications. *See* RSOF 46.

[15] The *Response Card* matter notably did not involve solicited fax advertisements. Thus, the Order fails to address the applicability of these rules to solicited

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

an initial matter, here is no indication that the respondent even raised the issue of "substantial compliance." Moreover, Plaintiffs disingenuously suggest that the *Response Card* opt out is "very similar to Balboa's." (Opp. at 11). To the contrary, *Response Card* failed to include its opt-out language on the first page of its facsimile as required. *Id.* at ¶¶ 7&8. In addition, it did not include a statement that failure to comply with an opt out request within thirty days was unlawful. *Id.* Moreover, in contrast to Balboa's Fax, there was no indication that the company's contact information or fax number was provided on the first page of the facsimile. *Id.* Finally, the opt-out did not include a website address. *Id.* at ¶8. Given these blatant shortcomings, it is no wonder that the FCC issued this Forfeiture Order. Nevertheless, there is no indication that the FCC would make the same finding in this case where there is truly substantial compliance and the party at issue effectively opted out. *See Magana Cathcart McCarthy v. CB Richard Ellis, Inc.*, 94 Cal. Rptr. 3d 109, 112 (Cal. Ct. App. 2009) (noting trial court's ruling that "substantial compliance is a defense to a claim of failure to comply with the opt-out mechanisms of the statute").[16]

By contrast and more on point is *Landsman & Funk*, 2009 U.S. Dist. LEXIS 18114,[17] where the plaintiff challenged the wording of the opt-out provision on the defendant's fax as insufficient because it did not contain the precise wording used

---

advertisements. To be clear, Defendant does not seek to overturn this Order which was issued in a completely separate proceeding.

[16] A measure of Plaintiffs' apparent desperation to malign Balboa and undermine the Defendant's credibility with the Court is their suggestion that Balboa misrepresented the holding of *Magana*. *See* Opp. at 14. Balboa made no such misrepresentation and indicated that the appellate court **noted** the trial court's ruling that substantial compliance was a defense. There was no suggestion or even implication that the appellate court reached the same finding. Plaintiffs' spurious accusations of alleged misrepresentation are scattered throughout their brief in an attempt to distract the Court from the legal issues that are fatal to Plaintiffs' claims.

[17] Apparently no appeal was taken from this decision and accordingly, it remains good law.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

in the regulations regarding compliance within 30 days.  While the court agreed that the opt-out notice did not replicate the regulation's language, it also held that despite this technical deficit, the notice was sufficient to satisfy the TCPA's substantive concerns and granted the motion to dismiss.  *Id.* at *15-18.  Similarly, Balboa's Opt-Out substantially complies with requirements of the regulations.  The Opt-Out both satisfies the purpose of the regulations -- which is to allow recipients of unsolicited faxes an opportunity to decline to receive more faxes – and is effective in that it prevents the sending of future faxes to people who opt out -- which Mr. Vandervort did in fact do.  RSOF 29, 38-41.

Furthermore, Plaintiff has no evidence that he or any other person ever received additional faxes after calling the toll-free number or logging on to the website.  RSOF 40-41.  Although it is true that the last paragraph on the Fax did not include a fax number within its immediate text, it was located merely one inch above the text at the bottom of the page.  RSOF 2; Dkt. 18, Exh. 1.  The Opt-Out language also admittedly did not recite step-by-step instructions for opting out of future faxes, but if recipients followed the simple directions provided (as Mr. Vandervort did), they would be prompted to provide their fax number and PIN.  RSOF 42.  This mechanism satisfies the requirements.  *See Landsman,* at **17-18.  There is no question that the mechanisms Balboa provided offered recipients a meaningful and reasonable opportunity both to revoke any consent that was given and to stop receiving faxes in the future.

### D.    Plaintiffs Have Failed to Raise Any Genuine Issue of Material Fact Which Supports Their Claim Under California Law.

Plaintiffs have admitted that all of the facts relating to the California claim are all undisputed.  *See* SOF 47-53.  Plaintiffs cannot prevail under Cal. Bus. & Prof. Code, sec. 17538.43(b) because the claim is preempted by the TCPA. Plaintiffs' arguments to the contrary regarding preemption are completely unavailing.  While they valiantly try to avoid the explicit holding of *Chamber of*

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Commerce of the U.S. v. Lockyer*, 2006 U.S. Dist. LEXIS 8324 (E.D. Cal. Feb. 27, 2006), they fail to address the most fundamental flaw in their theory for why the California Code is not pre-empted by the TCPA with respect to interstate facsimiles.  Namely, the California Code[18] conflicts with and stands as an obstacle to the purposes of Congress in passing the JFPA.  *Lockyer*, at *22.  In the five pages of their Opposition that they spend addressing the *Lockyer* decision, they never tackle the issue of conflict preemption head-on.  Instead, they explain that there is no presumption of preemption (Opp. at 22-24);[19] that persons could comply with both the TCPA and the California Code (Opp. at 24);[20] that there is no express preemption (Opp. at 24);[21] that the FCA saves conflicting states laws (Opp. at 24-

---

[18] When considering Congress's intent in not specifically preempting the California Act, it is important to note that the California law did not become effective until January 1, 2006 – well after the enactment of the JFPA.

[19] It is true that the *Lockyer* court did not make a presumption against preemption under the Federal Communications Act when deciding that case, *see* 2006 U.S. Dist. LEXIS 8324 at *17, but as *Wyeth v. Levine*, 555 U.S. 555 (2009), points out, even if that presumption applies, the Court still has to determine whether Congress's intent was such that it intended to supersede the state laws and regulations.

[20] While this is one part of the test for conflict preemption, it is not the sole test. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 899 (2000) (finding that implied preemption exists where it is either impossible for party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment of the purpose and objections of Congress).

[21]    The TCPA does include a saving clause.  *See* 47 U.S.C. § 227(e)(1).

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

25);[22] and that courts have "consistently" rejected *Lockyer*. (Opp. at 25).  What Plaintiffs fail to tell the Court – when they cite a string of state and largely unreported federal cases that deal solely with <u>telephone</u> restrictions – is that none of these allegedly conflicting or negative "authorities" address the dispute raised here:[23] namely, whether a state law that attempts to regulate interstate faxes and prohibit the faxing of advertisements pursuant to an EBR conflicts with the purposes of Congress.  *Cf. Holster v. Gatco*, 618 F.3d 214, 218 (2d Cir. 2010) (addressing whether state rules regarding class actions applied to telemarketing case); *Meilleur v. AT&T, Inc.*, 2011 WL 5592647 (W.D. Wash. 2011) (finding rules regarding auto-dialing were not preempted because state statute was virtually identical to TCPA and not in conflict); *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, **6-11 (W.D. Wash. 2010) (no conflict with auto-dial law); *TSA Stores Inc. v. Dept. of Agriculture and Consumer Servs.*, 957 So.2d 25, 27-29 (Fla. App. 2007) (no conflict with automated dialing machines); *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 712 N.W.2d 828, 836, 839-40 (N.D. 2006) (finding no conflict in auto-dial case); *Utah Div. of Consumer Protection v. Flagship Capital*, 125 P.3d 894, 900, 901 (Utah 2005) (no conflict with state law on telemarketing).  Because

---

[22] Contrary to Plaintiffs' misleading characterization, *In re NOS Communications*, 495 F.3d 1052, 1058 (9th Cir. 2007), does not stand for the proposition that "Congress did not intend state laws to be preempted by the FCA," (Opp. at 24-25). Rather, the court's language *verbatim* was that "there is no indication that Congress intended **every** state law cause of action within the scope of the FCA to be preempted." *Id.* (emphasis added).  The import of this statement as explained by the 9th Circuit was that there was no complete field preemption. *Id.*  The 9th Circuit made no ruling in *NOS Communications* that state laws could not be preempted by the TCPA as the result of a conflict preemption. Rather, the court held that the state law claims are preempted to the extent that they attempt to challenge the terms of the filed-rate doctrine.  "Where the measure of damages requires comparing the rates charged under the filed-rate with the rate that allegedly should have been charged, <u>the state claims are preempted</u>." *Id.* at 1060 (emphasis added).

23

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have failed to raise a genuine issue of material fact or cite any caselaw that contradicts *Lockyer's* finding of an actual conflict with the respect to the issues of fax EBRs and the TCPA, the Court should grant Defendant's Motion as to the California claim.

When the *Lockyer* court went through its analysis with respect to Congressional intent, it determined that that Congress recognized the balancing act between business's legitimate marketing efforts and the burden on consumers of junk faxes. *Id.* at \*21-22. It also recognized that a patchwork of regulations on this front was not workable and explicitly rejected the suggestion from some groups that there be an opt-in scheme similar to the one proposed under the California law. As the Court in *Wyeth* directs, the ultimate inquiry is whether the state law conflicts with the manifest intent of Congress. The *Lockyer* court determined that it did. *Id.* at 22; *see also Charvat v. Telelytics, LLC*, 2006 Ohio 4623 at ¶¶32, 35 (10th Dist. 2006); *Patriotic Veterans Inc. v. State of Indiana*, 821 F. Supp. 2d 1074, 1078-79 (S.D. Ind. 2011).

Balboa is not suggesting that the Federal Communications Act or the TCPA completely preempts all state law. In this instance, however, when the California law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress because it eliminates the established business relationship exception that Congress expressly codified in the Junk Fax Protection Act and nullifies Congress's decision that unsolicited facsimile advertisements be governed by an "opt-out" rather than an "opt-in" scheme, it simply cannot stand. Accordingly, because Vandervort did not receive an intrastate fax in California, his claim under California law must fail.

---

[23] This explains why Balboa "does not utter a word" about them in its Motion. *See* Opp. at 3.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## V.    CONCLUSION

For the reasons set forth herein and as supported by the papers filed herewith and the authorities cited herein,[24] as well as the reasons set forth in Balboa's Motion for Summary Judgment and supporting papers, Defendant Balboa respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and dismiss all claims against Balboa and award such other relief as it deems appropriate.

Dated:  December 28, 2012          THOMPSON HINE, LLP


                                   /s/ Nancy M. Barnes
                                   NANCY M. BARNES
                                   Attorney for Defendant
                                   BALBOA CAPITAL CORPORATION

---

[24]    In addition, Balboa has filed a response to Plaintiffs' Evidentiary Objections.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# PROOF OF SERVICE

STATE OF OHIO, COUNTY OF CUYAHOGA

I am employed in the aforesaid County, and State of Ohio; I am over the age of eighteen years and not a party to the within action; my business address is 3900 Key Center, 127 Public Square, Cleveland, Ohio  44114.

On December 28, 2012, I served the following documents:

**DEFENDANT BALBOA CAPITAL CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

  XX   BY ELECTRONIC SERVICE:  by electronic filing with the Clerk of the Court using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an email address of record who have filed a Notice of Consent to Electronic Service in this action.

upon all interested parties as follows:

Aytan Y. Bellin, Esq.
Bellin & Associates, LLC
85 Miles Avenue
White Plains, NY  10606

Roger Furman, Esq.
7485 Henefer Avenue
Los Angeles, CA  90045

Joseph Compoli, Esq.
612 East 185th Street
Cleveland, OH  44119

Lance A. Brewer, Esq.
Brewer & Brewer
4533 MacArthur Boulevard
Suite 707
Newport Beach, CA  92660

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under the penalty of

26

perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2012, at Cleveland, Ohio.

By:   *s/Nancy M. Barnes*
        Nancy M Barnes
        Declarant

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**