Nancy M. Barnes, Esq.
(*admitted pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Tel: (216) 566-5578; Fax: (216) 566-5800
E-mail: Nancy.Barnes@thompsonhine.com

Lance A. Brewer, Esq.  CBN 125759
BREWER & BREWER
4533 MacArthur Boulevard, Suite 707
Newport Beach, California 92660
Tel: (714) 424-6300; Fax: (714) 424-4313
E-mail: Lbrewer@brewer-brewer.com

Attorneys for Defendant
BALBOA CAPITAL CORPORATION

# THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. VANDERVORT and U.S. SAMPLE SERVICES, INC., on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>BALBOA CAPITAL CORPORATION,<br><br>    Defendant. | CASE NO. : SACV11-01578 JST(JPRx)<br><br>**DEFENDANT BALBOA CAPITAL CORPORATION'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 11, 2013<br>Time:  2:30 p.m.<br>Judge: Hon. Josephine Staton Tucker |

1

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Plaintiffs' Claim For Violation Of The TCPA Fails Because Defendant's Opt-Out Is Effective And Substantially Complies With The Regulation, And Because The TCPA Only Applies To Unsolicited Faxes.**

| DEFENDANT'S UNDISPUTED MATERIAL FACTS & EVIDENCE | PLAINTIFFS' RESPONSE AND DEFENDANT'S REPLY |
|---|---|
| 1. Plaintiffs received a single fax from Balboa on May 21, 2010 ("the Fax"). <br><br> Dkt. 18, Exh. 1 | Undisputed. |
| 2. The contents of the Fax are undisputed, including the fact that it did contain a conspicuous opt-out notice on the bottom which read: "To opt out from future faxes, go to www.removemyfaxnumber.com and enter PIN 14641 or call 877-284-7885. The recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful." ("the Opt-Out"). <br><br> Dkt. 18, Exh. 1 | Disputed -- The contents of the Fax are undisputed, but a genuine issue of fact remains as to whether the opt-out notice on the bottom of the Fax is "conspicuous." (Bellin Decl., Exh. 1, exh. 1 thereto). <br><br> **Reply:** *Plaintiffs offer no evidence to dispute the fact that the opt-out notice is conspicuous. Moreover, Plaintiff Michael Vandervort himself testified that he was able to read the notice and that there was nothing about the notice that hampered his ability to* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *read it.*  Barnes Reply Decl. Exh. 1 (Vandervort Dep.) 114:2-16.[1] *Further, the notice appears immediately below the border surrounding the body of the Fax, uses a font size and type similar to that in the body of the Fax, and is not obstructed by any other text or graphics.*  Barnes Reply Decl. ¶3. |
| 3.  Balboa is a company that provides equipment leasing and financing to its customers.<br><br>Barnes Decl. Exh. 3 ("Byrne Dep.") 120:12-121:17. | Undisputed. |
| 4.  As a part of its marketing efforts, Balboa uses a number of methods to identify potential customers that might be interested in its products and services. | Undisputed. |

[1] In an effort to avoid burdening the Court with additional paper, the Declaration of Nancy M. Barnes in Support of Defendant's Reply in Support of its Motion for Summary Judgment ("Barnes Reply Decl."), submitted with this filing, only attaches evidence that was not submitted with the Barnes Declaration in Support of Defendant's Motion for Summary Judgment (except that duplicative pages are submitted for ease of reference where a citation spans multiple pages, some of which were previously provided).  Citations to the "Barnes Decl." refer to evidence submitted with Defendant's original Motion for Summary Judgment, and citations to the "Barnes Reply Decl." refer to evidence submitted with the Declaration filed herewith.

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Barnes Decl. Exh. 4 ("Dacillo Dep.") 47:01-48:20. | |
| 5. These methods include the use of direct mail, cold calls, and referrals from vendors who sell equipment.<br><br>Dacillo Dep. 47:01–48:20; Byrne Dep. 65:4-19; Barnes Decl. Exh. 2 ("Blundo Dep.") 7:10-8:8, 8:14-18; Barnes Decl. Exh. 6 ("Nguyen Dep.") 39:3-12. | Undisputed. |
| 6. In the past, Balboa used fax marketing to target communications to its active database.<br><br>Dacillo Dep. 9:22-11:17; Barnes Decl. Exh. 9 ("Byrne Decl.") ¶ 2. | Undisputed. |
| 7. The active database is defined as those companies who had either done business with Balboa, had submitted an application and therefore who were in the process of attempting to do business with Balboa or had expressed interest in doing business with Balboa in the future. | Disputed – The active database included persons who contacted Balboa in response to Balboa's marketing efforts, other than "cold calling," and indicated that they wanted to learn more information about Balboa's products or services ("Marketing Group"). (Bellin Decl., |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dacillo Dep. 18:22-20:4, 49:6-50:5; Barnes Decl. at Exh. 7 ("Takeuchi Dep.") 15:2-16:13; Barnes Decl. Exh. 5 ("Horwich Dep.") 75:6-22; Nguyen Dep. 38:17-40:2; Byrne Decl. ¶ 2.

Exh. 7, pp. 18:25-19:6). The active database also included persons who Balboa sales representatives cold called and who, during the cold call, indicated (a) an interest in Balboa's products/services; (b) an equipment type that they were looking to finance or an equipment price they had in mind; or (c) a time frame in which they anticipated making the equipment purchase ("the Cold Call Group"). (Bellin Decl. Exh. 7, pp. 19:7-22, 38:3-20).

**Reply:** *Plaintiffs' response does not dispute the fact as stated. All of the persons described in Plaintiffs' so called "Marketing Group" and "Cold Call Group" are persons who have "expressed interest in doing business with Balboa in the future." Further, to the extent Plaintiffs are attempting to limit the definition of the active database to only members of the "groups" that Plaintiffs have artificially created, that proposition is not supported by the limited testimony*

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *they cite from Jake Dacillo; nowhere does Dacillo state that the active database excludes companies that had done business with Balboa in the past or had submitted an application to Balboa. Moreover, Plaintiffs' response offers nothing to contradict Balboa's direct evidence that the active database includes companies that had done business with Balboa in the past or had submitted an application to Balboa.* Takeuchi Dep. 16:11-13; Barnes Reply Decl. Exh. 3 ("Byrne Decl.") ¶ 2. |
| 8.  Balboa no longer uses fax marketing.<br><br>Byrne Dep. 99:4-18, 102:13-15; Byrne Decl. ¶2; Dacillo Dep. 86:23-87:13. | Undisputed. |
| 9.  Balboa did engage in a fax marketing campaign at one time.<br><br>Dacillo Dep. 9:22-11:17; Byrne Decl. ¶ 2. | Undisputed. |
| 10.  Balboa's faxes were specifically targeted communications to clients or active prospects in Balboa's database. | Disputed – Balboa's definition of "active" in fact no. 7 is inaccurate. |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Byrne Decl. ¶2; Dacillo Dep. 47:1-22, 49:6-50:17. | **Reply:** *See Reply to fact no. 7.* |
| 11. At no time did Balboa ever acquire or use "a cold fax list." | Disputed – Balboa has not defined what is a "cold fax list." |
| Byrne Decl. ¶2; Dacillo Dep. 47:1-22. | **Reply:** *As the evidence cited by Balboa illustrates, "cold fax list" refers to a list of persons to which Balboa would send faxes despite having no connection to them. In any event, there is no evidence that Balboa ever acquired or used any type of fax list and Plaintiffs have submitted no evidence in response. Therefore, the fact should be deemed undisputed.* |
| 12. Balboa never sent faxes to anyone who was not either: 1) an existing customer; or 2) had submitted an application and therefore who were in the process of attempting to do business with Balboa; or 3) had expressed interest in doing business with Balboa in the future. <br><br> Byrne Decl. ¶2; Dacillo Dep. 18:22-20:4, 47:8-22, 50:6-17; Horwich Dep. | Disputed – Balboa sent fax advertisements to persons who were "activated," i.e., active in Balboa's CRM system. (Bellin Decl. Ex. 7, p. 52:3-16). The active database consisted of persons who contacted Balboa in response to Balboa's marketing efforts, other than cold calling, and indicated that they wanted to learn more information about Balboa's products or services. (Bellin |

7

| 39:13-40:6. | Decl. Exh. 7, p. 18:25-19:6).  The active database also included persons who Balboa sales representatives cold called and who, during the cold call, indicated (a) an interest in Balboa's products/services; (b) an equipment type that they were looking to finance or an equipment price they had in mind; or (c) a time frame in which they anticipated making the equipment purchase (Bellin Decl. Exh. 7, p. 19:7-22, 38:3-20). |
|---|---|
| | **Reply:**  *Plaintiffs' response does not dispute the fact as stated.  All of the persons described in Plaintiffs' so called "Marketing Group" and "Cold Call Group" are persons who have "expressed interest in doing business with Balboa in the future."  Further, to the extent Plaintiffs are attempting to limit the definition of the active database to only members of the "groups" that Plaintiffs have created, that proposition is not supported by the limited testimony they cite from Jake Dacillo; nowhere does Dacillo* |

DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | *state that the active database excludes companies that had done business with Balboa in the past or had submitted an application to Balboa. Moreover, Plaintiffs' response offers nothing to contradict Balboa's direct evidence that the active database includes companies that had done business with Balboa in the past or had submitted an application to Balboa.* Takeuchi Dep. 16:11-13; Byrne Decl. ¶ 2. |
| 13.  As a part of its marketing efforts, Balboa tracks its activities in a CRM database called SalesLogix.<br><br>Byrne Decl. ¶ 5; Dacillo Dep. 24:2-17; Horwich Dep. 14:7-14, 15:9-16:3. | Undisputed. |
| 14.  If a prospect expressed interest in doing business with Balboa either immediately or in the future through Balboa's direct mail, or cold calling efforts, the prospect would be entered into the "active" SalesLogix CRM database.<br><br>Dacillo Dep. 18:22-20:4, 49:6-12; | Disputed – The active database consisted of persons who contacted Balboa in response to Balboa's marketing efforts, other than cold calling, and indicated that they wanted to learn more information about Balboa's products or services.  (Bellin Decl. Exh. 7, pp. 18:25-19:6).  The active database also included persons |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| Nguyen Dep. 38:17-40:2, 69:10-20; Takeuchi Dep. 15:2-20; Horwich Dep. 75:6-22. | who Balboa sales representatives cold called and who, during the cold call, indicated (a) an interest in Balboa's products/services; (b) an equipment type that they were looking to finance or an equipment price they had in mind; or (c) a time frame in which they anticipated making the equipment purchase. (Bellin Decl. Exh. 7, pp. 19:7-22, 38:3-20).<br><br>**Reply:** *Plaintiffs' response does not dispute the fact as stated. All of the persons described in Plaintiffs' response are persons who have "expressed interest in doing business with Balboa either immediately or in the future." Plaintiffs offer no evidence to refute that a prospect who expressed an interest as described by Balboa would be entered into the active database.* |
| 15. During these communications, Balboa employees did not follow a set script, but they did sometimes ask prospects for permission to fax. | Disputed - Balboa did not request or obtain permission to send fax advertisements to persons in the "Marketing Group" of contacts, but would send those persons fax |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Horwich Dep. 10:12-14, 22:20-22, 45:4-13; 46:12-15, 69:1-70:3; Byrne Dep. 43:1-4; Dacillo Dep. 20:5-18; Barnes Decl. Exh. 10(a), ¶4; Barnes Decl. Exh. 10(b), ¶4; Barnes Decl. Exh. 10(c), ¶4; Barnes Decl. Exh. 10(d), ¶4; Barnes Decl. Exh. 10(e), ¶4; Barnes Decl. Exh. 10(f), ¶4; Barnes Decl. Exh. 10(g), ¶4; Barnes Decl. Exh. 10(h), ¶4; Barnes Decl. Exh. 10(i), ¶4; Barnes Decl. Exh. 10(j), ¶4; Barnes Decl. Exh. 10(k), ¶4; Barnes Decl. Exh. 10(l), ¶4; Barnes Decl. Exh. 10(m), ¶4; Barnes Decl. Exh. 10(n), ¶4; Barnes Decl. Exh. 10(o), ¶4; Barnes Decl. Exh. 10(p), ¶4; Barnes Decl. Exh. 10(q), ¶4.

advertisements merely because they had expressed interest in Balboa's products or services.  (Bellin Decl. Ex. 7, pp. 21:24-23:13).  Jered Takeuchi and Peter Nguyen, who were two of the three branch Managers who oversaw cold calling for Balboa from 2008 through 2011, were not aware prior to the instant lawsuit that Balboa had ever been involved in fax advertising, and all three branch managers (the third being Dan Horwich) were not aware of any Balboa policy under which Balboa's cold callers would be instructed to ask for permission for Balboa to send fax advertisements.  (Bellin Decl., Exh. 17, pp. 7:16-22, 27:11-15; Exh. 18, pp. 21:9-15, 29:17-30:5, 31:16-24).  However, cold callers were instructed to ask, and sometimes did ask, for permission to fax over a credit application to persons they contacted. (Bellin Decl., Exh. 18, p. 32:6-12).

**Reply:**  *Plaintiffs' response does not dispute the fact as stated.  Nothing in*

| | |
|---|---|
| | *Plaintiffs' response contradicts the fact that Balboa employees did, in fact, sometimes ask prospects for permission to fax. That fact is not refuted by the fact that Balboa also sent faxes to people who had merely expressed an interest, or that Balboa had no policy directing employees to ask for permission, or that Balboa also sought permission to send credit applications. Because Plaintiffs' response fails to create a genuine issue of material fact, it should be deemed "undisputed."* |
| 16.  Jake Dacillo specifically testified about obtaining consent for faxing.<br><br>Dacillo Dep. 20:5-18. | Disputed – Dacillo testified that Balboa did not request or obtain permission to send fax advertisements to persons in the Marketing Group, but would send those persons fax advertisements merely because they expressed interest in Balboa's products or services.  (Bellin Decl., Exh. 7, pp. 21:24-23:13).<br><br>**Reply:**  *Plaintiffs' response does not dispute the cited testimony of Jake Dacillo. The fact that Balboa sent* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

|  | *some faxes to people who had merely expressed an interest does not contradict Dacillo's testimony that Balboa did obtain permission to fax from some other persons, including persons that Balboa contacted through cold-calling.  As a result, Fact 16 should be deemed undisputed.* |
|---|---|
| 17.  While it cannot be determined that everyone who was entered into the active database gave explicit permission to receive communication by way of a fax, it is quite clear that these customers and prospective customers of Balboa were implicitly giving permission to receive communication, including faxes, from Balboa.<br><br>Dacillo Dep. 20:14-23:7; Byrne Dep. 48:4-50:10; Barnes Decl. Exh. 11(a), ¶5; Barnes Decl. Exh. 11(b), ¶5; Barnes Decl. Exh. 11(c), ¶5; Barnes Decl. Exh. 11(j), ¶5; Barnes Decl. Exh. 11(k), ¶5; Barnes Decl. Exh. 11(l), ¶5; Barnes Decl. Exh. 11(m), ¶5. | Disputed – Dacillo testified that Balboa did not request or obtain permission to send fax advertisements to persons in the Marketing Group, but would send those persons fax advertisements merely because they expressed interest in Balboa's products or services.  (Bellin Decl., Ex. 7, pp. 21:24-23:13).  There is no evidence that everyone who was activated in Balboa's database implicitly gave consent to receive fax advertisements.  Even if they had, that would be of no moment since the TCPA requires that senders obtain explicit invitation or permission to send fax advertisements.  47 U.S.C. § 227(a)(5). |

13

| | **Reply:** *Plaintiffs' response does not dispute the fact as stated. The fact that Balboa sent some faxes to people who had merely expressed an interest does not contradict the fact that Balboa did obtain permission to fax from some other persons, including persons that Balboa contacted through cold-calling. While Plaintiffs summarily state that "[t]here is no evidence" that everyone in the active database implicitly gave consent, Balboa has offered evidence that everyone in its active database gave at least implicit permission (or in some cases express permission).* E.g., Byrne Dep. 48:4-50:10; Dacillo Dep. 20:5-23:7. |
|---|---|
| 18. During the time that it did fax marketing, Balboa relied upon ProFax, Inc., a fax communication service located in New York, to transmit the faxes and provide opt-out language.<br><br>Dacillo Dep. 10:15-12:15; Blundo Dep. 11:10-12:15; Byrne Decl. ¶3. | Undisputed. |
| 19. Balboa retained ProFax as a | Disputed – There is no competent |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| reputable firm in the fax communication industry.<br><br>Byrne Decl. ¶3. | evidence that ProFax is a "reputable" firm in the fax communications industry.<br><br>**Reply:** *In the Declaration cited in support of this fact, Patrick Byrne states that he has personal knowledge of the matters set forth in that Declaration.  Byrne Decl. ¶1. Moreover, Plaintiffs offer no evidence to refute the fact that Profax was a reputable firm or that Mr. Byrne believed them to be reputable.* |
| 20.  ProFax was well-versed in the requirements of the TCPA and it kept abreast of developments in TCPA laws and regulations and changed its practices to ensure compliance with the law.<br><br>Barnes Decl. Exh. 1 ("Barnett Dep.") 109:18-110:7, 111:3-19, 116:24-117:21. | Disputed – ProFax was aware of the TCPA, and on one occasion, in 2006, changed the opt-out notice it provided to its clients as a result of a change in FCC regulations.  (Bellin Decl., Exh. 4, pp. 109:18-110:7, 111:3-19, 116:24-117:21).<br><br>**Reply:** *Plaintiffs' response does not dispute the fact as stated. Nothing in Plaintiffs' response refutes the fact that ProFax was well-versed regarding the TCPA's requirements or that it kept abreast of developments in* |

15

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*TCPA law and changed its practices accordingly.*

*Further, the evidence does not support Plaintiffs' statement that the opt-out notice changed "on one occasion, in 2006."   Andrew Barnett testified that "[w]ith specific FCC rule changes, there may have been an evolution in the language used as an opt-out notice."* Barnes Reply Decl. Exh. 1 (Barnett Dep.) 116:24-117:6. *While he believed the language evolved when the FCC made a rule change in 2006, he could not recall the exact date or even what year it was.*  Id. 117:7-21. *Further, Barnett could not recall whether the opt-out language changed additional times between the time of the FCC rule change and 2011.*  Id.  118:2-5. *Lastly, he did not know whether the opt-out language on the Fax was identical to that on all of the faxes ProFax transmitted for Balboa or the language used on other faxes transmitted by ProFax between 2007 and 2011.*  Id. 118:13-120:2.

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 21. Balboa relied upon ProFax to provide it with compliant opt-out language and to ensure compliance with the TCPA.<br><br>Byrne Dep. 41:2-7; Dacillo Dep. 12:5-8, 15:10-19, 63:19-64:8. | Undisputed. |
| 22. For its part, ProFax transmitted faxes to the clients or prospects that Balboa identified.<br><br>Dacillo Dep. 64:17-22; Blundo Dep. 11:10-12:15; Barnett Dep. 15:16-21, 40:8-16. | Undisputed. |
| 23. While it appeared that the opt-out language on the Fax Plaintiffs received was provided by ProFax, ProFax could not confirm that the notice on the Fax was substantially similar to other faxes that were sent by Balboa.<br><br>Barnett Dep. 91:10-20, 95:25-96:11, 119:16-120:2. | Disputed – On the bottom of each fax advertisement that ProFax sent on Balboa's behalf was an opt-out notice, the exact wording for which was provided by ProFax to Balboa and which ProFax put on the fax advertisements before transmitting them.  (Bellin Decl., Exh. 7, pp. 14:2-15:9, 64:1-8; Exh. 3, p. 5:6-20; Exh. 4, pp. 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2).  ProFax's representative, Andrew Barnett, confirmed that he recalled his |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

company's changing the opt-out notice it gave its customers only once, "when the FCC made rule changes in 2006. I can't recall the exact date." (Bellin Decl., Exh. 4, p. 117:12-25). Because that 2006 date is prior to the 2008 date when Balboa itself states that it began fax advertising, Mr. Barnett's testimony, as well as the bills from his employer, ProFax, to Balboa, overwhelmingly demonstrate that the same opt-out notice appeared on all of Balboa's fax ads. (Bellin Decl., Exh. 4, pp. PL 1-446).

Moreover, Jake Dacillo admitted that the opt-out language on Exhibit 1 to the first amended complaint was in fact provided by ProFax, that it "looks familiar," and that he is not aware of its ever being changed. (Bellin Decl., Exh. 7, pp. 14:7-13, 15:2-4, 14:11-13, 15:10-24). Dacillo also acknowledged that the fax sent to Plaintiffs and the three additional faxes that Plaintiffs have located are Balboa fax advertisements, and that those fax ads

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

contain identical opt-out notices to that contained on the fax advertisement that Plaintiffs received. (Bellin Decl., Exh. 7, pp. 13:17-14:1, 70:1-72:4 & exhs. A-D).  Thus, the undisputed evidence is that the language of the purported opt-out notice on Balboa's fax advertisements stayed the same from 2007 through 2011.  (Bellin Decl., Exh. 1, exh. 1 thereto; Exh. 8, exhs. C & D thereto; Exh. 7, pp. 70:1-11, 71:15-72:4 & exhs. A, B, C, D thereto; Exh. 14 (first, second, thrid and last fax advertisements following copy of TCPA attached to complaint)).

**Reply:**  *Plaintiffs' response does not dispute the fact as stated. Nothing in Plaintiffs' response refutes Defendant's statement that ProFax could not confirm whether the opt-out notice on the Fax was similar to that on other  faxes ProFax sent on behalf of Balboa.  All of the testimony Plaintiffs cite from Jake Dacillo has no bearing on this fact as stated by*

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

|  | *Balboa.* |
|---|---|
|  | *Further, the evidence does not support Plaintiffs' statement that the opt-out notice changed "only once, 'when the FCC made rule changes in 2006.'"* Andrew Barnett testified that "[w]ith specific FCC rule changes, there may have been an evolution in the language used as an opt-out notice." Barnett Dep. 116:24-117:6. *While he believed the language evolved when the FCC made a rule change in 2006, he could not recall the exact date or even what year it was.* Id. 117:7-21. *Further, Barnett could not recall whether the opt-out language changed additional times between the time of the FCC rule change and 2011.* Id. 118:2-5. *Similarly, he did not know whether the opt-out language on the Fax was identical to that on all of the faxes ProFax transmitted for Balboa or the language used on other faxes transmitted by ProFax between 2007 and 2011.* Id. 118:13-120:2. |
| 24. Moreover, ProFax admitted that | Disputed – On the bottom of each fax |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| its opt-out language evolved over time.<br><br>Barnett Dep. 113:3-10. | advertisement that ProFax sent on Balboa's behalf was an opt-out notice, the exact wording for which was provided by ProFax to Balboa and which ProFax put on the fax advertisements before transmitting them.  (Bellin Decl., Exh. 7, pp. 14:2-15:9, 64:1-8; Exh. 3, p. 5:6-20; Exh. 4, pp. 94:24-95:8, 95:16-20, 96:12-16, 112:21-113:2).  ProFax's representative, Andrew Barnett, confirmed that he recalled his company's changing the opt-out notice it gave its customers only once, "when the FCC made rule changes in 2006.  I can't recall the exact date."  (Bellin Decl., Exh. 4, p. 117:12-25).  Because that 2006 date is prior to the 2008 date when Balboa itself states that it began fax advertising, Mr. Barnett's testimony, as well as the bills from his employer, ProFax, to Balboa, overwhelmingly demonstrate that the same opt-out notice appeared on all of Balboa's fax ads.  (Bellin Decl., Exh. 4, pp. PL 1-446). |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Moreover, Jake Dacillo admitted that the opt-out language on Exhibit 1 to the first amended complaint was in fact provided by ProFax, that it "looks familiar," and that he is not aware of its ever being changed. (Bellin Decl., Exh. 7, pp. 14:7-13, 15:2-4, 14:11-13, 15:10-24). Dacillo also acknowledged that the fax sent to Plaintiffs and the three additional faxes that Plaintiffs have located are Balboa fax advertisements, and that those fax ads contain identical opt-out notices to that contained on the fax advertisements that Plaintiffs r received. (Bellin Decl., Exh. 7, pp. 13:17-14:1, 70:1-72:4 & exhs. A-D). Thus, the undisputed evidence is that the language of the purported opt-out notice on Balboa's fax advertisements that ProFax had provided stayed the same from 2007 through 2011. (Bellin Decl., Exh. 1, exh. 1 thereto; Exh. 8, exhs. C&D thereto; Exh. 7, pp. 70:1-11, 71:15-72:4 & Exhs. A, B, C, D thereto; Exh. 14 (first, second, third and last fax advertisements following

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

copy of TCPA attached to complaint)).

**Reply:** *Plaintiffs' response does not dispute the fact as stated. Nothing in Plaintiffs' response refutes Defendant's statement that <u>ProFax admitted that its opt out language evolved over time</u>. All of the testimony Plaintiffs cite from Jake Dacillo has no bearing on this fact as stated by Balboa.*

*Further, the evidence does not support Plaintiffs' statement that the opt-out notice changed "only once, 'when the FCC made rule changes in 2006.'" Andrew Barnett testified that "[w]ith specific FCC rule changes, there may have been an evolution in the language used as an opt-out notice."* Barnett Dep. 116:24-117:6. *While he believed the language evolved when the FCC made a rule change in 2006, he could not recall the exact date or even what year it was.* Id. 117:7-21. *Further, Barnett could not recall whether the opt-out language changed*

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *additional times between the time of the FCC rule change and 2011.  Id. 118:2-5.  Similarly, he did not know whether the opt-out language on the Fax was identical to that on all of the faxes ProFax transmitted for Balboa or the language used on other faxes transmitted by ProFax between 2007 and 2011.  Id. 118:13-120:2.* |
| 25.  In order to ensure compliance with the TCPA, Balboa maintained a filter within its SalesLogix CRM database that prevented customers or prospects from receiving faxes if they had opted out or indicated that they did not want to receive faxes.<br><br>Byrne Dep. 71:13-72:1; Dacillo Dep. 51:25-52:16, 54:6-55:17; Blundo Dep. 80:24-81:17. | Disputed – Although it is undisputed that Balboa used a SalesLogix CRM database, and that the database provided a "do not fax" box on customer entries, there is no evidence that Balboa used either the database or the "do not fax" box to ensure compliance with the TCPA, or that either item did in fact prevent customers or prospects from receiving any faxes.<br><br>**Reply:**  *Plaintiffs offer no evidence to dispute the fact that Balboa's filter prevented those who had opted out from receiving additional faxes. Plaintiffs' response essentially asks that Balboa be required to prove a* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

|  |  |
|---|---|
|  | *negative, but they offer no evidence to rebut this fact.* |
|  | *In any event, the evidence cited by Balboa establishes that Balboa used the "do not fax" filter in the SalesLogix CRM database to prevent faxes being sent to persons who had opted out. Specifically, Jake Dacillo testified that, when a person opted out, Balboa would update the SalesLogix CRM database accordingly by checking "do not fax" box. Dacillo Dep. 55:9-17. Erica Blundo further testified that checking the "do not fax" box would remove a customer or prospect from future fax lists. Blundo Dep. 81:7-17. Patrick Byrne similarly stated that, when an opt-out request was received, the "do not fax" box would be marked, and Balboa then would not send any future faxes to the relevant company. Byrne Decl. ¶7.* |
| 26.  ProFax assisted with this opt out process and provided Balboa with lists of people who had opted out through | Undisputed. |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| the opt-out mechanisms it provided.<br><br>Dacillo Dep. 54:6-9; Byrne Dep. 71:11-16; Blundo Dep. 79:9-81:17. | |
| 27.  In addition, account representatives who were notified by customers that they did not wish to receive faxes would indicate that fact in the customer's record in the SalesLogix CRM database.<br><br>Byrne Dep. 54:6-18; Horwich Dep. 50:1-11; Nguyen Dep. 34:7-23; Takeuchi Dep. 26:16-27:9. | Undisputed. |
| 28.  Plaintiffs bring this action based upon receipt of a single-page fax dated May 21, 2010.  The Fax was sent because Balboa had an Existing Business Relationship ("EBR") with Plaintiffs, and who were thus in the active SalesLogix CRM database.<br><br>Byrne Decl. ¶6, Exhibit A. | Disputed – Although it is undisputed that Plaintiffs' individual claim is based on a fax dated May 21, 2010 this lawsuit is certified as a class action involving thousands of class members' receiving faxes from Balboa.  In addition, Plaintiffs' dispute that any EBR existed between them and Balboa.  Plaintniff Vandervort testified that he does not recall whether he has ever spoken with anyone from Balboa, and that no employee of plaintiff Sample spoke |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | with anyone from Balboa.  (Bellin Decl., Exh. 8, pp. 112:18-113:19).<br><br>**Reply:**  *Plaintiffs' response does not dispute the fact as stated.  Plaintiffs' failure to recall whether they had spoken with anyone at Balboa does not contradict Balboa's statement and evidence that Plaintiffs did in fact have an EBR with Balboa.  Plaintiffs do not offer any evidence to refute that they had an EBR with Balboa.* |
| 29.  In addition, after Plaintiffs received the Fax, they took advantage of the opt-out mechanism identified on the Fax.<br><br>Horwich Dep. 59:10-60:14, Ex. 3; Byrne Decl. ¶7, Exhibit A; Barnes Decl. Exh. 8 ("Vandervort Dep.") 83:24-85:6 (admitting that he may have opted out). | Disputed – Plaintiffs did not recall using any opt-out mechanism identified on the fax.  (Bellin Decl., Exh. 8, pp. 83:24-84:11, 85:2-6, 85:25-86:4).<br><br>**Reply:**  *Plaintiffs' response does not dispute the fact as stated.  Plaintiffs' failure to recall using the opt-out mechanism does not contradict Balboa's statement that Plaintiffs did so.  Moreover, Michael Vandervort specifically testified that, for a period of time during 2009 and 2010, he did call to opt-out after receiving some fax* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *advertisements.* Barnes Reply Decl. Exh. 2 (Vandervort Dep.) 35:12-36-9; 84:12-85:6. *Vandervort also admitted that he may have opted out.* Id. 83:24-87:14. *Plaintiffs do not offer any evidence to refute Balboa's evidence that Plaintiffs took advantage of the opt-out.* |
| 30. Plaintiffs make no effort to dispute the fact that they had an EBR with Balboa.<br><br>*Cf.* Vandervort Decl. filed in support of Class Certification (Dkt. 42-29) ¶4. | Disputed -- Plaintiffs did not recall whether they had spoken with anyone from Balboa. (Bellin Decl., Exh. 8, pp. 112:18-113:19).<br><br>**Reply:** *Plaintiffs' response does not dispute the fact as stated. Plaintiffs' failure to recall whether they had spoken with anyone at Balboa does not contradict Balboa's statement that Plaintiffs do not dispute that they had an EBR with Balboa. Plaintiffs still do not offer any evidence to refute the fact that they had an EBR with Balboa.* |
| 31. Balboa's records demonstrate that Plaintiff responded to a direct mail inquiry, was assigned to a sales representative who made repeated | Disputed – Plaintiffs did not recall whether they had spoken with anyone from Balboa. (Bellin Decl., Exh. 8, pp. 112:18-113:19). |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| calls to Plaintiff, and was activated in the database based on his inquiry.<br><br>Byrne Decl. ¶¶5-6 & Ex. A. | **Reply:** *Plaintiffs' response does not dispute the fact as stated. Plaintiffs' failure to recall whether they had spoken with anyone at Balboa does not contradict Balboa's statement regarding what its business records demonstrate.* |
| 32. Moreover, Plaintiffs' fax number is readily available to anyone who wants it: it is displayed on the Internet on their company website; in industry directories; and on company letterhead and business cards.<br><br>Vandervort Dep. 28:9-19, 39:16-42:10. | Undisputed. |
| 33. While Vandervort does not specifically recall the phone calls with Balboa that occurred in 2006, unsurprisingly, he cannot deny that they occurred since the calls were made more than five years ago.<br><br>Vandervort Dep. 112:12-25. | Undisputed. |
| 34. In addition, Balboa's business records include contemporaneous | Undisputed, except it is unknown whether Balboa's notations were |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| notations of three phone calls as well as Plaintiffs' response to a direct mail inquiry requesting information about Balboa services.<br><br>Byrne Decl. ¶6, Ex. A. | contemporaneous with the events they purport to describe.<br><br>**Reply:**  *In the Declaration cited in support of this fact, Patrick Byrne, a person with knowledge, states that the records are generated at or near the time of the events they memorialize.* Byrne Decl. ¶5. *Moreover, Plaintiffs offer no evidence to refute this fact.* |
| 35.  In addition, Vandervort admitted that he provided his fax number to vendors if asked.<br><br>Vandervort Dep. 111:3-6. | Disputed – Vandervort admitted that he would, on occasion, provide his fax number to a vendor.  (Bellin Decl., Exh. 8, pp. 111:3-6).<br><br>**Reply:**  *Plaintiffs' response does not dispute the fact as stated.* |
| 36.  The Fax Plaintiffs received contained the Opt-Out.<br><br>Dkt. 18, Exh. 1 | Disputed.  The contents of the Fax are undisputed, but a genuine issue of fact remains as to whether the opt-out notice on the bottom of the Fax is "conspicuous."<br><br>**Reply:**  *Plaintiffs offer no evidence to dispute that the opt-out notice is conspicuous.  Moreover, Plaintiff Michael Vandervort himself testified* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *that he was able to read the notice and that there was nothing about the notice that hampered his ability to read it.*  Barnes Reply Decl. Exh. 1 (Vandervort Dep.) 114:2-16.  *Further, the notice appears immediately below the border surrounding the body of the fax, uses a font size and type similar to that in the body of the fax, and is not obstructed by any other text or graphics.*  Barnes Reply Decl. ¶3. |
| 37.  The Opt-Out provided a toll-free mechanism that was available 24 hours a day and seven days a week.<br><br>Barnett Dep. 107:17-108:9. | Disputed – The notice on the bottom of the fax provided a toll free number, that operated 24 hours a day, that requested the caller to enter a fax number and a pin number.  (Bellin Decl., Exh. 4, p. 107:17-108:9).  However, nowhere is there testimony to the effect that the fax number provided on the fax operated 24 hours a day.<br><br>**Reply:**  *Plaintiffs' response does not dispute the fact as stated.  Balboa merely states that the opt-out provided "a toll-free mechanism" that was available 24 hours a day.  Plaintiffs'* |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | *response admits that the toll free number was available 24 hours a day.* |
|---|---|
| 38.  Balboa's records indicate that Vandervort opted out of receiving faxes on June 16, 2010.<br><br>Horwich Dep. 59:10-60:14, Ex. 3; Byrne Decl. ¶ 7, Ex. A. | Undisputed. |
| 39.  A notation was promptly made on Plaintiffs' account of the opt out request.<br><br>Byrne Decl. ¶7, Exhibit A. | Undisputed. |
| 40.  Plaintiffs admit that they received no additional faxes after opting out.<br><br>Vandervort Dep. 110:10-111:2, 111:11-18. | Undisputed. |
| 41.  Plaintiffs cannot identify any putative class member who ever received a fax after opting out.<br><br>Barnes Decl. Exh. 12, Pls' Resp. to Def's Requests for Admission, No. 13, p. 5. | Undisputed. |
| 42.  Recipients could call the toll free number or go to the website, either of | Undisputed. |

32

DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| which would prompt them to simply enter their fax number and the PIN contained in the opt-out notice.<br><br>Barnett Dep. 84:14-19, 85:8-86:11, 107:17-108:25; Byrne Dep. 113:8-20. | |
| 43.  A recipient could also fax an opt-out request directly to Balboa at the number provided on the fax.<br><br>Byrne Dep. 113:8-114:14. | Disputed – The Fax specifies that the fax number in its body was to be used for "quick quote request[s]," not for opt-out requests; and the opt-out notice at the bottom of the Fax does not authorize making opt-out requests by fax.  (Bellin Decl., Exh. 1, exh. 1).<br><br>**Reply:**  *Plaintiffs' response does not dispute the fact as stated.  Nothing in Plaintiff's response refutes Balboa's direct evidence that a recipient could, in fact, opt-out by faxing a request directly to Balboa at the number on the fax.* |
| 44.  These methods were available 24 hours a day.<br><br>Barnett Dep. 108:7-9. | Disputed – The notice on the bottom of the fax provided a toll free number, that operated 24 hours a day, that requested the caller to enter a fax number and a pin number.  (Bellin Decl., Exh. 4, p. 107:17-108:9). |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | However, nowhere is there testimony to the effect that the fax number provided on the fax operated 24 hours a day. |
| --- | --- |
| | **Reply:** *Plaintiffs offer no evidence to dispute the fact that the fax number operated 24 hours a day.* |
| 45.  By following the simple instructions, recipients would be able to opt out of receiving future faxes.<br><br>Barnett Dep. 108:16-25. | Undisputed. |
| 46.  The Opt-Out notice fully complied with the requirements outlined on the FCC's own website.<br><br>Barnes Decl. Exh. 13 ("FCC website") (FCC's own website says nothing about the elements that Plaintiffs claim are lacking.) | Disputed.  The Opt-Out notice does not comply with the FCC's requirements at least insofar as it (1) does not provide a fax number to which recipients can fax opt-out requests, (2) does not inform recipients that they must include their own fax numbers in their opt-out requests, and (3) does not contain a provision stating that a valid opt-out request will be effective so long as the person making the request does not subsequently expressly consent to receiving fax advertisements. |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Reply:** *Plaintiffs' response does not dispute the fact as stated. Plaintiffs offer no evidence to refute that the notice complied with the requirements <u>outlined on the FCC's own website</u>. The website provides that a fax advertisement "must provide notice and contact information on the fax that allows recipients to 'opt-out' of future faxes. The notice must: (i) "be clear and conspicuous and on the first page of the advertisement;" (ii) "state that the recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful; and" (iii) "include a telephone number, fax number, and cost-free mechanism (including a toll-free telephone number, local number for local recipients, toll-free fax number, website address or email address) to opt-out of faxes. These numbers and cost-free mechanism must permit consumers to make opt-out requests 24 hours a day, seven days a week."*

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Barnes Decl. Exh. 13.

*The opt-out notice and text on the Fax satisfied all of these requirements. The opt-out was clear and conspicuous and on the first page.* Dkt. 18, Exh. 1; Barnes Reply Decl. ¶3. *The notice contained the exact language from the FCC website stating that the "recipient may make a request to the sender not to send any future faxes and failure to comply with the request within 30 days is unlawful."* Dkt. 18, Exh. 1. *The notice included a website and a toll free number that permitted a consumer to opt-out 24 hours a day.* Dkt. 18, Exh. 1; Barnett Dep. 107:17-108:9. *In addition, recipients could opt out by faxing a request directly to Balboa at the fax number appearing immediately above the opt-out notice.* Dkt. 18, Exh. 1; Byrne Dep. 113:8-114:14. *The opt-out on the Fax therefore satisfied these requirements because it provided "<u>notice and contact information on the fax</u> that allows recipients to 'opt-out' of future*

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| | *faxes."* Barnes Decl. Exh. 13 (emphasis added). |

**Plaintiffs Have No Class Claim For Violation of Cal. Bus. & Prof. Code 17538.43(b). Plaintiffs' Individual Claim Fails Because Cal. Bus. & Prof. Code 17538.43(b) Applies Only To Intrastate Faxes And Neither Plaintiff Is A Resident Of California.**

| | |
|---|---|
| 47.  It is undisputed that ProFax, Inc. sent the Fax from New York.<br><br>Barnett Dep. 4:9-11; Byrne Decl. ¶4. | Undisputed. |
| 48.  It is undisputed that Plaintiffs are located in Ohio.<br><br>Vandervort Dep. 15:19-25, 107:11-14. | Undisputed. |
| 49.  Vandervort has admitted that he is not a resident of California.<br><br>Vandervort Dep. 106:25-107:6 | Undisputed. |
| 50.  Vandervort has admitted that the Fax was not received in California.<br><br>Vandervort Dep. 108:4-109:6 | Undisputed. |
| 51.  Vandervort has admitted that U.S. Sample Services is not incorporated in California. | Undisputed. |

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Vandervort Dep. 15:19-20, 107:20-22 | |
| 52.  Vandervort has admitted that U.S. Sample Services has no offices in California.<br><br>Vandervort Dep. 107:23-25 | Undisputed. |
| 53.  Vandervort has admitted that U.S. Sample Services is not licensed to do business in California.<br><br>Vandervort Dep. 15:21-25 | Undisputed. |

Dated:  December 28, 2012.

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# PROOF OF SERVICE

STATE OF OHIO, COUNTY OF CUYAHOGA

I am employed in the aforesaid County, and State of Ohio; I am over the age of eighteen years and not a party to the within action; my business address is 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114.

On December 28, 2012, I served the following documents:

## DEFENDANT BALBOA CAPITAL CORPORATION'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

____XX____ BY ELECTRONIC SERVICE: by electronic filing with the Clerk of the Court using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an email address of record who have filed a Notice of Consent to Electronic Service in this action.

upon all interested parties as follows:

Aytan Y. Bellin, Esq.
Bellin & Associates, LLC
85 Miles Avenue
White Plains, NY 10606

Roger Furman, Esq.
7485 Henefer Avenue
Los Angeles, CA 90045

Joseph Compoli, Esq.
612 East 185th Street
Cleveland, OH 44119

Lance A. Brewer, Esq.
Brewer & Brewer
4533 MacArthur Boulevard
Suite 707
Newport Beach, CA 92660

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under the penalty of

39

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2012, at Cleveland, Ohio.


By: _s/Nancy M. Barnes_
Nancy M Barnes
Declarant

**DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**